**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALAIN MICHAEL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | |
| FAIRLIFE, LLC, MIKE MCCLOSKEY, and SUE MCCLOSKEY | ) ) ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Alain Michael ("Plaintiff"), through his undersigned attorneys, McMorrow Law, P.C. and Bursor & Fisher, P.A., brings this Class Action Complaint against Defendants Fairlife, LLC, Mike McCloskey, and Sue McCloskey (collectively, the "Defendants"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

**NATURE OF THE ACTION**

1.      Fairlife and its two co-founders, Mike and Sue McCloskey, charge a premium for their Milk Products[1] by plastering their "**promise**" – in bold lettering signed by Mike and Sue

---

[1] Milk Products refers to every variety and size of milk products sold by Defendant Fairlife, LLC nationwide, in all sizes, as described herein, with the exception of the Fairlife Yup!, Core Power, and Smart Snacks milk brands.  Milk Products includes, but is not limited to, Fairlife Whole with DHA ultra-filtered milk, Fairlife Chocolate Whole with DHA ultra-filtered milk, Fairlife 2% Reduced Fat with DHA ultra-filtered milk, Fairlife Whole ultra-filtered milk, Fairlife 2% Reduced Fat ultra-filtered milk, Fairlife Chocolate 2% Reduced Fat ultra-filtered milk, Fairlife 1% Reduced Fat ultra-filtered milk, and Fairlife Fat Free ultra-filtered milk.  The labels of the varieties of the Milk Products are substantially identical other than their flavor and fat content profile, and each contain the false representations discussed herein.

McCloskey, on the Products' labels – that Fairlife provides "**Extraordinary care and comfort for our cows**" and "**provide[s] extraordinary animal care**." They "promise" on the Products' labels that "exceptional care [is] taken every step of the way" and that, through selling their Milk Products, they are "making the world a better place." Right on the Products' labels, they urge customers to "visit our flagship farm in Indiana so you can see for yourself" the "[e]xtraordinary care and comfort" that their cows receive.[2] But Fairlife's and its founders' "promise" is a sham. Their cows do not receive "extraordinary care and comfort." As a matter of routine and practice, Fairlife's cows are tortured, kicked, stomped on, body slammed, stabbed with steel rebar, thrown off the side of trucks, dragged through the dirt by their ears, and left to die unattended in over 100-degree heat. Calves that do not survive the torture are dumped in mass graves. To add insult to injury, the abuse is rampant even at Fairlife's "flagship farm in Indiana" that customers are urged to visit on the Products' labels.

2.      Plaintiff and the class members he seeks to represent purchased numerous bottles of Defendants' Milk Products based on Defendants' misleading and false advertising and labeling of the Milk Products. Plaintiff and each of the class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and/or misleading practices set forth herein.

3.      Plaintiff seeks relief in this action individually, and on behalf of all purchasers of Defendant's Milk Products, for Defendants' fraud, negligent misrepresentation, unjust enrichment, and violations of various state consumer protection laws discussed herein.[3]

---

[2] Collectively, these representations are referred to as the "Animal Welfare Claims."

[3] Plaintiff reserves the right to add additional claims, including a claim for breach of express and implied warranties. On June 11, 2019, Plaintiff sent a notice letter by certified mail notifying Defendants of their breach of express and implied warranties regarding the Animal Welfare Claims. However, Plaintiff does not presently allege a cause of action for breach of warranty so that Defendants have sufficient time to respond to the notice letter pursuant to the relevant rules regarding notice.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendants' states of citizenship.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff and the Class's claims occurred in this District and because Defendants transact business and/or have agents within this District.

## PARTIES

6.      Plaintiff Alain Michael is a citizen of California, residing in Thousand Oaks, California.  Within the past two years, Mr. Michael purchased Defendant's Milk Products from Sprouts in California.  Mr. Michael purchased Fairlife Chocolate 2% Reduced Fact ultra-filtered milk in various sizes, including 11.5 ounces and 1.5 liters.  Prior to purchasing the Products, Mr. Michael reviewed the Milk Products' labels and relied on the following Animal Welfare Claims on the Products' labels:

1.5 Liter Label:

- "our promise"

- "The idea for this one-of-a-kind milk began at our kitchen table over 20 years ago.  It was an ambition to provide the world with better nutrition while making the world a better place.  Our fairlife® family farmers provide high quality, real milk, filtered for wholesome nutrition with exceptional care taken every step of the way."

- "Extraordinary care and comfort for our cows"

- "We'd love to have you visit our flagship farm in Indiana so you can see for yourself!"

- The "Mike & Sue McCloskey" signature, with "fairlife® co-founders, dairy farmers" just below it.

11.5 Ounce Label:

- "our promise"

- "We provide extraordinary animal care, and we can trace our milk back to the family farms that produced it, so you can confidently enjoy every sip."

- The "Mike & Sue McCloskey" signature, with "fairlife® co-founders, dairy farmers" just below it.

7.    In reliance on these representations, Mr. Michael paid a tangible increased cost for Defendants' Milk Products, which were worth less than represented because the statements were not true and were highly misleading. Accordingly, these representations were part of the basis of the bargain, in that Mr. Michael attributed value to these promises and would not have purchased the Products, or would not have purchased them on the same terms, if he knew the truth about Defendants' torture and abuse of their milk cows. Should Mr. Michael encounter any of Defendants' Milk Products in the future, he cannot rely on the truthfulness of the labels' statements, absent corrective advertising. If Defendants take corrective action of their treatment of cows and correct the Products' labels, Mr. Michael would consider buying the current formulations of the Products, as he is a regular milk purchaser.

8.    Defendant Fairlife, LLC ("Fairlife") is a Delaware corporation headquartered in Chicago, Illinois, at 1001 W Adams St., Chicago, IL 60607. Defendant Fairlife, LLC manufactures, advertises, sells, distributes, and markets the Milk Products as alleged herein nationwide, including in Illinois and California. Defendant Fairlife, LLC's misleading marketing, advertising, and labeling information concerning its "promise" and purported "extraordinary" treatment of its cows (and all other relevant labeling statements) were conceived, reviewed, approved, and otherwise controlled from Fairlife, LLC's Illinois headquarters. Fairlife, LLC's misleading marketing of its Milk Products was coordinated at, and emanated from, and was

developed at its Illinois headquarters. All critical decisions regarding the misleading labeling and marketing of the Milk Products were made in Illinois.

9.     Defendants Mike McCloskey and Sue McCloskey are the co-founders of Defendant Fairlife, LLC and remain involved in integral day-to-day decision-making concerning the marketing and labeling of the Milk Products. Defendants Mike McCloskey and Sue McCloskey make personal appearances on behalf of Fairlife, LLC throughout the United States, including in Illinois. Defendants Mike McCloskey and Sue McCloskey have continuous and pervasive contacts with the State of Illinois. Individually, or acting in concert with Fairlife, LLC, Defendants Mike McCloskey and Sue McCloskey are engaged in and direct the labeling, marketing, advertising, sale, promotion, and distribution of the Milk Products. Defendants Mike McCloskey and Sue McCloskey, individually or acting in concert with Fairlife, LLC, also have direct control and oversight over Defendants' treatment of cows at their various farms throughout the country, including at the "flagship" Indiana farm referenced on the Products' labels. Defendants Mike McCloskey and Sue McCloskey also act as spokespersons for the Products, and make a personal "promise," signed under their own names, on the Products' labels concerning each of the fraudulent and misleading statements at issue in this action, including the promise that Defendants provide "extraordinary care and comfort for [their] cows." Defendants Mike McCloskey and Sue McCloskey have promoted the misleading labeling at issue here on Fairlife, LLC's website and on Fairlife, LLC's social media platforms.

10.     At all relevant times, each Defendant acted in concert with, with the knowledge and approval of and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Consumers Are Willing To Pay A Price Premium For Animal Welfare Claims

11.     In recent years, meat and dairy manufacturers have begun making animal welfare claims on product labels to drive more sales, or to justify charging higher prices.  The reasoning is simple: consumers deeply care whether their food comes from animals that were humanely treated and received a high level of care and are willing to pay a price premium for food sourced from humane farms.  Defendants made the Animal Welfare Claims for this reason – to charge inflated prices and increase unit sales of their Milk Products.

12.     For instance, a recent survey from Technomic and the American Society for the Prevention of Cruelty to Animals ("ASPCA") found that: (1) 77 percent of consumers are concerned about animal welfare as it applies to their food, (2) more than two thirds of consumers pay some or a lot of attention to food labels regarding how the animal was raised, and (3) that over 70 percent of retailers stocking products with humane claims report increased sales.[4]

13.     In 2015, Wal-Mart, the nation's largest seller of food products, found through its own research that: (1) 77 percent of shoppers said they will increase their trust in a retailer that improves the treatment of livestock and that (2) 66 percent would increase their likelihood of shopping at a retail location that improves the treatment of livestock.[5]

14.     In 2014, the American Humane Association conducted a national survey of 5,900 consumers that found that: (1) 94.9 percent of consumers were "very concerned about farm animal welfare," that (2) 75.7 percent of consumers "stated that they were very willing to pay more for

---

[4] *See* https://www.grocerydive.com/news/grocery--consumers-are-willing-to-pay-a-premium-for-animal-welfare-certifications/533852/ (last accessed 6/10/2019).
[5] *See* https://foxbaltimore.com/news/local/wal-mart39s-push-on-animal-welfare-hailed-as-game-changer (last accessed 6/10/2019).

humanely raised meat, dairy and eggs," and that (3) a "humanely raised" label was ranked highest in importance over other common heath claims, such as "antibiotic free," "organic," or "natural."[6]

15.     In an aided question, consumers responding to a survey conducted for Demeter Communications' 2010 SegmenTrak study were asked to consider what they would like to know from farmers about food production that they currently do not know.  More than two thirds (68 percent) indicated they wanted to know more about ways farmers "ensure animal care," second only to "measures used to produce safe food."[7]

16.     In 2010, a study published in the Universities Federation for Animal Welfare found that "consumers desire high standards of animal care, even if it raises food prices."[8]

**Defendants Made Animal Welfare Claims A Central Tenet Of Products' Labeling**

17.     Defendants preyed on consumer desire for dairy products sourced from farms that ensure high levels of animal welfare by making Animal Welfare Claims a central tenet of their labeling campaign.  Defendants did so while systematically abusing and torturing their dairy cows.

18.     Defendants make virtually identical Animal Welfare Claims on every label of their Milk Products.

19.     An example of a 1.5 Liter label of the Milk Products is displayed below.  All versions of 1.5 Liter labels of the Milk Products, including the 1.5 Liter Milk Products purchased by Plaintiff, are substantively identical to the image depicted below:

---

[6] *See* https://www.americanhumane.org/app/uploads/2016/08/2014-humane-heartland-farm-survey.pdf (last accessed 6/10/2019).

[7] *See* http://demetercommunications.com/wp-content/uploads/2011/05/FINAL.Demeter.SegemenTrak.Full_Report.June2010.pdf (last accessed 6/10/2019).

[8] *See*  https://www.ingentaconnect.com/contentone/ufaw/aw/2010/00000019/00000003/art00015 (last accessed 6/10/2019).



20.     The label states:

**OUR PROMISE**

The idea for this one-of-a-kind milk began at our kitchen table over 20 years ago.  It was an ambition to provide the world with better nutrition while making the world a better place.  Our fairlife® family farmers provide high quality, real milk, filtered for wholesome nutrition while making the world a better place.  Our **fairlife**® family farmers provide high quality, real milk, filtered for wholesome nutrition with exceptional care taken every step of the way.

-8-

- **Extraordinary care and comfort for our cows**
- **Exceptional quality milk standards**
- **Traceability back to our farms**
- **Continual pursuit of sustainable farming**

We'd love to have you visit our flagship farm in Indiana so you can see for yourself!

*Mike & Sue McCloskey*

**fairlife**® co-founders, dairy farmers (emphasis in original)

21.     Just below the co-founders' signatures, the label displays an image of the "flagship farm in Indiana," where animal abuse at issue here was rampant.

22.     An example of a 11.5 ounce label of the Milk Products is displayed below.  All versions of 11.5 ounce labels of the Milk Products, including the 11.5 ounce Milk Products purchased by Plaintiff, are substantively identical to the image depicted below:



23.     The label states:

**OUR PROMISE**

We provide extraordinary animal care, and we can trace our milk back to the family farms that produced it, so you can confidently enjoy every sip.

*Mike & Sue McCloskey*

**fairlife**® co-founders, dairy farmers (emphasis in original)

24.     Just below the co-founders' signatures, the label displays an image of the "flagship farm in Indiana," where animal abuse at issue here was rampant.

25.     Defendants make an explicit "promise," in large bold lettering, even on the smaller 11.5 ounce labels of the Milk Products, that they provide "extraordinary animal care" or "extraordinary care and comfort for our cows" (on the 1.5 Liter labels).  The "promise" is signed on the Milk Products' labels by Defendants Mike McCloskey and Sue McCloskey.  However, as discussed herein, Defendants' "promise" is a farce.   Defendants' cows do not receive "extraordinary care," but are rather systematically abused and tortured.

**Defendants' Animal Welfare Claims Are False**

26.     As discussed above, the labels of the 1.5 Liter Milk Products urge consumers to "visit our flagship farm in Indiana so you can see for yourself" the purported "extraordinary care and comfort for our cows."  Between August and November 2018, Animal Recovery Mission ("ARM"), a nonprofit animal welfare group, had an investigator do just that – pay a visit to Defendants' flagship farm in Indiana to see how the cows are really treated.

27.     An ARM employee went undercover as a calf care employee at Fair Oaks Farms, Defendants' "flagship farm in Indiana" mentioned on the Milk Products' labels, between August and November of 2018.  During that time, the ARM employee videotaped systematic and horrific abuse of Defendants' cows at their "flagship farm."  Videos released by ARM documenting Defendants' systematic abuse of their cows can be found at https://vimeo.com/340292407 (4-

minute video) (last accessed 6/11/2019) and https://vimeo.com/340769169 (one-and-a-half-hour video) (last accessed 6/11/2019).

28. ARM's undercover employee reported (and recorded) observing the following abuses "on a virtually daily basis":

- Slapping, kicking, punching, pushing, throwing and slamming calves;

- Calves stabbed and beaten with steel rebar;

- Calves hit in the mouth and face with hard plastic milking bottles;

- Calves kneed in the spine;

- Calves subjected to extreme temperatures;

- Calves provided with improper nutrition;

- Calves denied medical attention; and

- Calves experiencing extreme pain and suffering, and in some cases permanent injury and death.

29. At Defendants' "flagship farm," the calves stay in filthy, overcrowded and hot conditions. Temperature readings show that it can be well over 100 degrees inside their hutches. Dead calves were dumped in mass grave sites by employees.[9]

30. Supervisors and owners at the "flagship farm" were aware of the conditions and took part in the abuse.[10]

31. In addition to the intense, systematic maltreatment and abuse of calves, the "flagship farm" provides effectively no treatment or care to mature, sick, or injured cows. Cows too sick to milk are shot with a small caliber weapon. Because the employees are not properly

---

[9] *See* https://www.cbsnews.com/news/after-undercover-video-exposes-animal-abuse-at-fair-oaks-farms-grocery-store-removes-products/ (last accessed 6/11/2019).
[10] *See id.*

trained, however, cows are left to die slow, painful deaths over the course of many hours from gunshot wounds to the head.[11]

32.     The following images are a true representation of the "care" that Defendants' cows actually receive:



Dumping Area For Dead Calves



Dead Calves Being Transported



---

[11] *See* https://animalrecoverymission.org/wp-content/uploads/2019/06/Operation_Fair_Oaks_Farms_Dairy_Adventure.pdf (last accessed 6/11/2019).

Calf's Head Being Stomped On By Full Weight Of Adult Man



Calves Left Throughout Summer In 113 Degree Temperature



**Defendants Admit That The Animal Abuse Practices Took Place At Their "Flagship Farm"**

33.    After the release of the ARM video, Defendant Mike McCloskey admitted that everything depicted in the video actually occurred at Defendants' "flagship farm."

34.    Defendant Mike McCloskey admitted that "after closely reviewing the released ARM video," he can confirm that employees at Fair Oaks Farm – the "flagship farm" – were "committing multiple instances of animal cruelty and despicable judgment." Defendant Mike McCloskey stated that he "take[s] full responsibility for the actions seen in the footage, as it goes

against everything that we stand for in regards to responsible **cow care and comfort**."[12] (emphasis added). In other words, while the labels of Defendants' Milk Products promised "**Extraordinary care and comfort for our cows**," Defendant Mike McCloskey admits that Defendants have failed to live up to that standard by "committing multiple instances of animal cruelty and despicable judgment." Nonetheless, although Defendant Mike McCloskey stated he took "full responsibility," he then went on to excuse the animal abuse by blaming a few bad apples, even though the abuse was rampant and known and approved by management.

35.     In a video posted to Defendant Fairlife, LLC's website, Defendant's Chief Operating Officer Tim Doelman issued a public statement on behalf of Defendant Fairlife, LLC:

> This week we saw appalling footage of animal abuse at Fair Oaks Farms, one of Fairlife's supplying dairy farms. This was something that never should have happened. It was wrong. Animal care is foundational to Fairlife. We have a responsibility to make sure that the dairy farms that supply our milk uphold the highest and most humane standards. We failed in doing that, and we are truly sorry. But sorry is not good enough, we offer you a commitment to improving practices that we now know were insufficient.[13]

36.     Mr. Doelman also admitted in the video that Fairlife conducted only one purportedly unannounced audit per year of its dairy farms.

## CLASS REPRESENTATIONS

37.     Plaintiff Michael brings this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of the below-defined Classes:

**National Class:** All persons in the United States that purchased the Milk Products.

---

[12] *See* https://fofarms.com/post/response/ (last accessed 6/11/2019).

[13] *See* https://fairlife.com/news/fairlife-statement-regarding-arm-video/ (last accessed 6/11/2019).

**Consumer Fraud Multi-State Subclass:** All persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington that purchased the Milk Products.[14]

**California Subclass:** All persons in the state of California that purchased the Milk Products.

38.     Collectively, the National Class, Consumer Fraud Multi-State Subclass, and California Subclass are referred to as the "Class" or "Classes." Excluded from the Class are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Class. Also excluded from the Class are persons or entities that purchased the Milk Products for purposes of resale.

39.     Plaintiff is a member of the Classes.

40.     Defendants sell millions of containers of the Milk Products. The Milk Products are available in major supermarkets nationwide, including in California and Illinois. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action

---

[14] The states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

by mail and/or publication through the distribution records of Defendants, third party retailers, and vendors.

41.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether the Milk Products are misbranded, and whether the labeling, marketing and promotion of the Milk Products is false, misleading, and fraudulent.

42.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false, misleading and misbranded labels, purchased the Milk Products, and suffered losses as a result of those purchases.

43.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

44.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

## Fraud

45.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

47.     As discussed above, Defendants made false and misleading Animal Welfare Claims on the labels of the Milk Products, and failed to disclose material information facts about the Milk Products, such as the fact that the milk is derived from cows that are systematically abused and tortured.

48.     The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Milk Products.

49.     The fraudulent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT II

## Violation of Illinois Consumer Fraud Act

50.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

-17-

52.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815

ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of

trade or commerce.  The ICFA is to be liberally construed to effectuate that purpose.

53.     Defendants intended that Plaintiff and each of the members of the Classes would

rely upon their deceptive conduct, including the Animal Welfare Claims, and a reasonable person

would in fact be misled by this deceptive conduct.

54.     As a result of Defendants' use or employment of unfair or deceptive acts or business

practices, Plaintiff and each of the other members of the Classes sustained damages in an amount

to be proven at trial.

55.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard

of the truth such that an award of punitive damages is appropriate.

## COUNT III

## Violation Of State Consumer Fraud Acts

56.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set

forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of the

Consumer Fraud Multi-State Subclass against Defendants.

58.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State

Subclass[15] prohibit the use of unfair or deceptive business practices in the conduct of trade or

commerce.

---

[15] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*);
Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*);
Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*);
Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York

59.     Defendants intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Subclass would rely upon their deceptive conduct, including the Animal Welfare Claims, and a reasonable person would in fact be misled by this deceptive conduct.

60.     Since Defendants' conduct showed malice, motive, and the reckless disregard of the truth, an award of punitive damages is appropriate.

## COUNT IV

### Violation Of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, *et seq*

### (Injunctive Relief Only)

61.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

63.     Plaintiff and California Subclass members are consumers who purchased the Milk Products for personal, family or household purposes.  Plaintiff and the California Subclass members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff and the California Subclass members are not sophisticated experts with independent knowledge of the standard of animal care on dairy farms, or Defendant's animal care practices.

64.     The Milk Products that Plaintiff and other California Subclass members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

65.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

---

(N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

66. Defendants' Animal Welfare Claims on the labels of the Milk Products are false, fraudulent, and/or misleading to a reasonable consumer because Defendants' cows are subjected to systematic abuse and torture.

67. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that they misrepresent the particular characteristics, benefits and quantities of the goods.

68. Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that they misrepresent the particular standard, quality or grade of the goods.

69. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that they advertise goods with the intent not to sell the goods as advertised.

70. Plaintiff and the California Subclass acted reasonably when they purchased the Milk Products based on their belief that Defendants' representations were true and lawful.

71. Plaintiff and the California Subclass suffered injuries caused by Defendants because: (a) they would not have purchased the Milk Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known

concerning Defendants' representations; (b) they paid a price premium for the Milk Products due to Defendants' misrepresentations; and (c) the Milk Products did not have the characteristics or quantities as promised.

72.     Under California Civil Code § 1780(a), Plaintiff and members of the California Subclass seek injunctive and equitable relief for Defendants' violations of the CLRA.  Plaintiff has mailed an appropriate demand letter consistent with California Civil Code § 1782(a).  If Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d).

## COUNT V

### Violation Of California's Unfair Competition Law,

### California Business & Professions Code §§ 17200, *et seq*.

73.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

75.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

76.     Defendants' Animal Welfare Claims on the labels of the Milk Products are false, fraudulent, and misleading to a reasonable consumer because Defendants' cows are subjected to systematic abuse and torture.

77.     Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA and the FAL and other applicable law as described herein.

78.     Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that Defendants' conduct is substantially injurious to consumers, offends public policy,

and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising is of no benefit to consumers, as it is untrue, misleading, and unlawful. Creating consumer confusion regarding the Animal Welfare Claims is of no benefit to consumers.

79. Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiff and the California Subclass to believe that the Animal Welfare Claims were true.

80. Plaintiff and the California Subclass members are not sophisticated experts with independent knowledge of the standard of animal care on dairy farms, or Defendants' animal care practices. Plaintiff and the California Subclass acted reasonably when they purchased the Milk Products based on their belief that Defendants' representations were true and lawful.

81. Plaintiff and the California Subclass suffered injuries caused by Defendants because: (a) they would not have purchased the Milk Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Milk Products due to Defendants' misrepresentations; and (c) the Milk Products did not have the characteristics or quantities as promised.

## COUNT VI

### Violation Of California's False Advertising Law,

### California Business & Professions Code §§ 17500, et seq.

82. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

84. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means

whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

85.     Defendants engaged in a scheme of offering mislabeled containers of the Milk Products for sale to Plaintiff and the California Subclass members by way of product packaging, labeling, and other promotional materials.  These materials misrepresented and/or omitted the true source, content, and nature of the mislabeled Milk Products.  Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the product packaging, labeling, and promotional materials were intended as inducements to purchase Defendants' Milk Products, and are statements disseminated by Defendants to Plaintiff and the California Subclass members.  Defendants knew that these statements were unauthorized, inaccurate, and misleading.

86.     Defendants' Animal Welfare Claims on the labels of the Milk Products are false, fraudulent, and misleading to a reasonable consumer because Defendants' cows are subjected to systematic abuse and torture.

87.     Defendants knew or should have known, through the exercise of reasonable care that the Milk Products were and continue to be misbranded, and that Defendants' representations about the Animal Welfare Claims were unauthorized, inaccurate, and misleading.

88.     Plaintiff and the California Subclass suffered injuries caused by Defendants because: (a) they would not have purchased the Milk Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Milk Products due to Defendants' misrepresentations; and (c) the Milk Products did not have the characteristics or quantities as promised.

## COUNT VII

### Unjust Enrichment

89.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

91.     Plaintiff and the other members of the Class conferred benefits on Defendants by purchasing the Milk Products.

92.     Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff and the other members of the Class' purchase of the Milk Products.  Retention of the monies under these circumstances is unjust and inequitable because Defendants' labeling of the Milk Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would not have purchased the Milk Products if the true facts were known.

93.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A.      Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Classes in an amount to be determined at trial;

C.      Award Plaintiff and the Classes their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D.      Grant restitution to Plaintiff and the Classes and require Defendants to disgorge their ill-gotten gains;

E.      Permanently enjoin Defendants from engaging in the unlawful conduct set forth herein; and

F.      Grant any and all such other relief as the Court deems appropriate.

Dated: June 11, 2019                     Respectfully submitted,

*/s/ Michael J. McMorrow*
Michael J. McMorrow
*mike@mjmcmorrow.com*
**MCMORROW LAW, P.C.**
118 North Clinton St.
Suite 108
Chicago, Illinois 60661
Phone: 312.265.0708

L. Timothy Fisher*
*ltfisher@bursor.com*
Yeremey Krivoshey*
ykrivoshey@bursor.com
Frederick J. Klorczyk III
*fklorczyk@bursor.com*
**BURSOR & FISHER, P.A.**
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Phone:  925.300.4455
Fax:  925.407.2700

Scott. A. Bursor*
*scott@bursor.com*
**BURSOR & FISHER, P.A.**
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Phone: 305.330.5512
Fax: 305.676.9006

* Admission *Pro Hac Vice* Pending

***Counsel For Plaintiff***
***And The Proposed Putative Classes***