# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| IN RE: FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) This Document Relates to All Cases<br><br>MDL No. 2909<br>Master Case No. 19-cv-3924<br>Judge Robert M. Dow, Jr. |

## MOTION FOR APPOINTMENT TO LEADERSHIP STRUCTURE

Syed Ali Saeed (hereinafter "Mr. Saeed") and his law firm, Saeed & Little, LLP (hereinafter "S&L Firm"), counsel for plaintiffs in *Sabeehullah et.al. v. Fairlife et.al.*, submit the following application in support of Mr. Saeed's appointment as Co-Lead Counsel in the *Fairlife Milk Products Marketing and Sales Practices Litigation* MDL ("Fairlife MDL"). S&L Firm proposes a leadership structure comprising of three co-lead counsels. More specifically, S&L Firm proposes that: (1) Syed Ali Saeed from Saeed and Little, LLP should be appointed as one of the three co-leads in the Fairlife MDL; and (2) the other two co-leads should be picked from the other well-qualified applicants who are also making submissions. The proposed leadership structure is streamlined and will ensure efficient and effective prosecution of these cases while allowing fair representation to interested groups within the larger class. S&L Firm employs multiple competent counsels who have a breadth of experience in complex and class action litigation. Consequently, S&L Firm will have the requisite capacity and expertise to adequately litigate this MDL.

I.  **Factual Background**

In June 2019, Animal Recovery Mission, a not-for-profit animal welfare organization out of Miami Beach, Florida, posted an exposé online reporting animal abuse towards calves and cows at Fair Oaks Farms, the "flagship farm" of the Fairlife brand. Following this new story, at least eight (8) lawsuits[1] were filed on behalf of consumers (collectively referred to as "Lawsuits") alleging damages incurred as a result of false and deceptive representations related to milk products sold under the "Fairlife" brand name ("Milk Products"). Amongst these filing, *Sabeehullah v. Fairlife, LLC.,* was the standout complaint because it was one of the earliest filings and included proposed class representatives from several states including Indiana, Michigan, California, Kentucky, and Virginia.

Although the allegations in these Lawsuits differ in some respects, all Plaintiffs commonly allege that Defendants[2] falsely and deceptively labeled, packaged, and/or marketed their Milk Products. Such false and deceptive representations include but are not limited to Defendant's express "promise" of providing extraordinary care and comfort for the animals that produce the Milk Products. As was recently discovered via media reports and investigations, Defendants' cows are systematically abused and tortured, and any policies and procedures instituted by the Defendants to curb animal abuse and ensure appropriate care were thoroughly inadequate. Consequently, Plaintiff and proposed class members have incurred damages and

---

[1] *Michael v. Fairlife, LLC, et al.*, No. 1:19-cv-3294 (N.D. Ill.); *Schwartz v. Fairlife, LLC*, No. 1:19-cv-3929 (N.D. Ill.); *Sabeehullah v. Fairlife, LLC, et al.*, No. 2:19-cv-00222 (N.D. Ind.); *Abowd v. Fairlife, LLC, et al.*, No. 1:19-cv-04009 (S.D. Ind.); *Salzhauer v. The Coca-Cola Company, et al.*, No. 1:19-cv-02709 (N.D. Ga.); *Henderson v. The Coca-Cola Company, et al.*, No. 1:19-cv-11953 (D. Mass.); *Ngai v. Fairlife, LLC, et al.*, No. 2:19-cv-08148 (C.D. Cal.); *Olivo v. The Coca-Cola Company, et al.*, No. 2:19-cv-08302 (C.D. Cal.).

[2] The Lawsuits named Fairlife, LLC, Mike McCloskey, Sue McCloskey, The Coca-Cola Company, and/or Select Milk Producers, Inc. as defendants (collectively referred to as "Defendants").

bring these Lawsuits to assert claims for: (i) fraud/intentional misrepresentation; (ii) negligent misrepresentation, (iii) unjust enrichment, (iv) breach of express warranty, (v) breach of implied warranty, and (vi) violation of various state consumer fraud and consumer protection acts.[3]

On October 2, 2019, the Lawsuits were transferred to the Northern District of Illinois for coordinated or consolidated pretrial proceedings ("Transfer Order"). [Case MDL No. 2909, Dkt 48]. The Transfer Order was issued following a Motion for Transfer of Action for Coordinated or Consolidated Pre-Trial Proceedings filed by Plaintiff, Eliana Salzhauer, on June 21, 2019. [Case MDL No. 2909, Dkt 1] Since the Transfer Order was issued, the Parties have submitted a Joint Organization and Management Plan and attended a Preliminary Pre-trial Conference [Case NDIL No. 1:19-cv-03924, Dkt 63]. On November 26, 2019, following the Preliminary Pre-Trial conference, this Court issued an order setting deadlines for Interim Class Counsel Applications and Responses.

## II. The Proposed Structure meets the criteria set forth by the Manual for Complex Litigation

The Manual for Complex Litigation (4th) §10.224 lists the following complementary factors to be considered in appointing counsel:

- qualifications, functions, organization, and compensation of designated counsel;
- whether there has been full disclosure of all agreements and understandings among counsel;

---

[3] California (Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal. Civ. Code §§ 1750, *et seq.*, Cal. Business & Professions Code §§ 17500, *et seq.*); Georgia (O.C.G.A. § 10-1-390 *et seq.*, O.C.G.A. § 13-6-11); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana (I.C. § 24-5-0.5), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350, *et seq.*); Virginia (Va. Code Ann. § 59.1-200); Kentucky (Ky. Rev. Stat. Ann. § 367.170) and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

- would-be designated attorneys' competence for assignments;

- whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among counsel are fair, reasonable, and efficient;

- whether designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests;

- attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and

- the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court—experience in similar roles in other litigation may be useful, but an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case.

The following paragraphs will address the above referenced factors. For simplicity, we have combined the factors into groups for discussion below.

**A. The Proposed Leadership Structure**

S&L Firm proposes a small and streamlined leadership structure comprising of three co-leads, one of whom should be Syed Ali Saeed from S&L Firm ("Proposed Structure").[4] The Proposed Structure is both streamlined and effective. It will contain an odd number of counsel to offer a tie breaker and hence ensure efficiency. The Proposed Structure would also include representation from multiple states and lend a voice to different subsets of the proposed national class.

---

[4] The S&L Firm does not have a position on whether one of the co-leads should be appointed as the liaison counsel or if the liaison counsel role should be awarded to someone in addition to co-leads .

This litigation would also greatly benefit from the leadership appointment of an Indiana based law firm, S&L Firm. The underlying allegations and investigations in all the cases consolidated in the Fairlife MDL stem from reports of animal abuse perpetrated at Fair Oaks Farms in Indiana. Hence, Indiana is the hub for a substantial portion of discoverable evidence relevant to this MDL. The presence of competent Indiana-based counsel on the leadership panel would be logistically critical during discovery and help minimize legal expenses.

Recently, courts have trended towards smaller leadership structures to avoid the inefficiencies and double billing that occurs when too many attorneys are involved. S&L Firm's Proposed Structure is sufficiently lean to limit such inefficiencies and double billing. While this MDL would require substantial resources and capacity to litigate, its scope would also not warrant a more expansive leadership and committee structure. Hence, a three firm leadership panel will balance these competing interests and provide sufficient resources and experience to appropriately litigate this MDL without over-lawyering.

### B. S&L Firm is well qualified to lead this litigation

S&L Firm was founded by Syed Ali Saeed and Jonathan Little, in January 2011. In less than nine years the firm and its attorneys have taken significant strides and participated in many impactful and groundbreaking lawsuits. The firm focuses on (1) consumer rights litigation on behalf of individual and class plaintiffs; (2) civil rights litigation on behalf of individual and class plaintiffs; and (3) sexual abuse litigation on behalf of individual and class plaintiffs. The combined experience, knowledge, resources, and qualifications of the firm's attorneys make it uniquely suited to manage this litigation. [Ex. A – Firm's Resume].

S&L Firm has a history of successfully prosecuting class actions against creditors, manufacturers, and insurance companies involving data breaches, false advertising claims, violations of federal and state consumer protection laws, breach of contract claims, and violation of ERISA laws. Attorneys at S&L Firm have also been involved with civil rights class actions involving Medicaid benefits and prisoner's rights. The following is a non-exhaustive list of recent class action settlements obtained by attorneys at S&L Firm:

1. *W.P. v. Anthem Insurance Companies, Inc.* filed in the Southern District of Indiana, Indianapolis Division (1:15-cv-00562-TWP-TAB). The court has issued a final approval certifying a nationwide class in this case;

2. *John Gehrich v. Chase Bank USA, NA.*, filed in the Northern District of Illinois, Eastern Division (1:12-cv-5510). The court has issued a final approval certifying a nationwide class in this case;

3. *Richard Baltzell v. Indiana Family and Social Services Administration* filed in Marion County Superior Court, Indiana (49D021406CT021696). The court has issued a final approval certifying a statewide class in this case;

4. *Amin Makin et. al. v. Bank of America, N.A.*, filed in Southern District of Indiana, (1:12-cv-0393-WTL-DKL). The court has issued a final approval certifying a nationwide class in this case;

5. *Rebecca Ashack v. Caliber Home Loans* filed in the Southern District of Indiana (1:15-cv-01069-JMS-DML). The court has issued a final approval certifying a nationwide class in this case;

6. *Gentry v. Floyd Co,* Civil No. 4:14-cv-00054-TAB-RLY (S.D. Ind.). The court has issued a final approval certifying a nationwide class in this case*;* and

    7. *Houghlin. V. Clark Co.,* Civil No. 1:16-cv-01331-WTL-TAB (S.D. Ind.). The court has issued a final approval certifying a nationwide class in this case.

It is critical to note that S&L Firm has significant experience in litigating individual consumer cases often involving state UDAP and false advertising statutes. S&L Firm has successfully litigated hundreds of such individual actions across the nation. This experience is pivotal in understanding the nuances of litigating class-wide local consumer statutory claims and will be instrumental in guiding this litigation.

S&L Firm's work on behalf of sexual abuse victims has also been monumental. The firm has been a pioneer in athlete abuse cases and brought some of the earliest legal actions against the United States Olympic Committee and their associated entities. S&L Firm was also the original source to the Indianapolis Star for the Out of Balance investigation which ultimately exposed the sexual abuse of Larry Nassar and over a hundred other coaches. S&L Firm has successfully tried and settled several Olympic Sports sex abuse cases. S&L Firm is or previously has been involved with sexual abuse cases against USA Gymnastics, USA Taekwondo, USA Swimming, USA Diving, USA Fencing, USA Speed Skating, Michigan State University, Ohio State University, several catholic dioceses, and a number of other state and private entities. These cases include both individual and class actions brought on behalf of victims of sexual abuse.

Attorneys at S&L Firm have also played a pivotal role in a number of high-profile civil and constitutional rights cases involving marriage rights. Most notably, Dan Canon served as counsel in the: (1) Landmark Supreme Court case of *Obergefell v. Hodges,* 192 L. Ed. 2d 609, 2015 U.S. LEXIS 4250 (June 26, 2015); (2) Kentucky and Indiana marriage equality cases of *Bourke v. Beshear,* 996 F.Supp.2d 542 (W.D. Ky. Feb. 12, 2014), *Love v. Beshear,* 989

F.Supp.2d 536 (W.D. Ky. May 13, 2014), and *Love v. Pence,* 28 F. Supp. 3d 793 (S.D. In. 2014); and (3) highly publicized case of *Miller v. Davis,* 123 F. Supp. 3d 924, 929 (E.D. Ky. 2015) where plaintiffs were refused marriage licenses in Rowan County, Kentucky.

The breadth of experience within S&L Firm is evident from its resume. S&L Firm's experience speaks volumes about its ability and capacity to handle complex litigation and obtain successful results. Furthermore, S&L Firm's lack of prior leadership experience is not a detriment but an asset to this litigation. In fact, Mr. Saeed's diverse professional and personal background will enrich the discourse within the leadership panel and result in better decision making. As noted in Guidelines and Best Practices For Large and Mass-Tort MDLS, Second, 2018, 55-56:

> Mass-tort MDL cases affect a large and diverse group of people and ensuring diversity in the leadership of the cases will enhance public trust in the courts and will improve the likelihood of consideration of diverse ideas and perspectives that MDLs require. Litigants and the civil justice system benefit from the diversity of leadership. Indeed, the same way that diversity improves companies' bottom lines, litigants and the civil justice system benefit from diversity of leadership. Yet historically, women and minority lawyers have not been appointed to leadership positions at rates proportionate to their representation in the plaintiffs' bar generally. It cannot be said that there are not enough talented individuals with the education, background and experience to effectively lead MDL litigation to permit greater diversity.

> Repeat player dynamics continue to persist, restricting diversity across MDL leadership. ***Research shows that having a mix of experienced and new players enhances creativity and innovation, leads to better decisionmaking and problem solving, and promotes discussion of novel concepts raised by those who historically have not been in leadership***. Whatever application process is used, the court should bear in mind the value of diversity of all types as a component of obtaining the best possible representation for plaintiffs. Judges should seek to appoint a diverse group, with respect to not only prior experience and skills, but also gender, race and national origin, age, and sexual orientation. . . In addition to demographic diversity, the judge should be mindful of creating a team with diversity of experience, balancing the benefits of selecting leadership members who have worked well together in the past with the benefits of having a leadership team that brings different experiences that can be brought to bear in the litigation.

Guidelines and Best Practices For Large and Mass-Tort MDLS, Second, 2018, 55-56, https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf, Last Viewed on December 6th, 2019 (*emphasis added*)

It is also of importance to note that S&L Firm's Leadership is supported by Paul, LLP, a widely respected and recognized complex litigation firm. [Ex. B- Rick Paul's Declaration]. Mr. Paul, LLP has served in leadership roles on numerous MDLs. [Ex. B- Rick Paul's Declaration]. While S&L Firm does not have any formal arrangement with Paul, LLP, as yet, the two firms hope to collaborate and work together during this litigation on an "as needed" basis.[5]

### C. Full Disclosure of Agreements Among Counsel

While S&L Firm has engaged in some discussion with other plaintiffs' counsel involved in the Fairlife MDL, no agreement was reached. Consequently, S&L Firm does not have any agreements or understandings with any counsels with regard to leadership or work splits at this stage.

### D. Guidelines for Compensation and Coordination

S&L Firm suggests that the Court enter a common benefit order to govern the potential compensation and expense reimbursement to those firms working on behalf of all plaintiffs. S&L Firm strongly believes that oversight of the time and expenses should begin at the outset of the litigation and be submitted and reviewed on a monthly basis. Setting the standards for approved time and expenses in the beginning of the litigation will further the goal of a streamlined, efficient prosecution of the litigation. S&L Firm specifically proposes a common benefit order that would:

- Require time and expenses be submitted on a monthly basis via Excel spreadsheet;

---

[5] S&L Firm's Leadership Application is also supported by the Frasher Law Firm, P.C. which represents the Plaintiff in [Ex. C Ryan Frasher's Declaration]

- Require, at the outset, a list of attorneys and staff each firm intends to have work on the case, along with their title, graduation year, years of practice, and a brief description of the anticipated work such person would do in the litigation;
- Require a series of "task" billing codes to be used to identify the type of work conducted;
- Require Liaison Counsel, within 60 days, to review each firm's submission and make an initial determination as to whether the time and expenses are approved or unapproved and provide an opportunity to cure;
- Provide that time will be compensated at hourly rates that are uniform and based on years of experience; and
- Require Liaison Counsel to establish two interest-bearing accounts to receive Common Benefit Fees and Common Benefit Expense contributions.

Addressing time and expense discrepancies in real time will prevent, or at least minimize, the number of disputes unrelated to the merits of the litigation that tend to arise at the conclusion of an MDL. A proposed draft shall be furnished to the court once there is a ruling on the leadership structure.

### E. Interests of All Parties

While certification of a nationwide class remains a possibility in this action, there is also a strong likelihood that certification will occur on a state by state basis. *Sabeehullah* is the only action in this litigation that does not put forth a nationwide class definition and includes class representative from Indiana, Michigan, Virginia, and Kentucky. Therefore, S&L Firm's appointment as co-lead will ensure that the interests of the statewide classes (especially those in Indiana, Michigan, Virginia, ad Ketucky) are preserved and not compromised in the interest of obtaining a larger global resolution.

### F. Ability of Counsel to work cohesively

S&L Firm knows from experience how to promote efficient litigation. As demonstrated above, S&L Firm has brought about successful and appropriate resolutions to large complex lawsuits that often included multiple renowned and successful law firms and/or interest groups. S&L Firm understands that cooperation with co-counsel and professional communication with defense counsel are vital to achieving that level of success. S&L Firm's ability to draw from past experiences qualifies them as advocates for the proposed Class and will enable them to streamline the litigation and save significant expense for all parties through cost-sharing and reduced duplication of effort.

### G. Ability to Fund the Litigation

S&L Firm is willing and able to fund this litigation. The Firm is well established and has the requisite financial resources necessary to pursue a case of this magnitude. S&L Firm also has highly experienced attorneys and support staff who are skilled at working with other co-counsels to maximize efficiency and avoid unnecessary costs and expenses during the Litigation. S&L Firms is also intimately familiar with the costs associated with successfully prosecuting complex class actions and will ensure that the necessary resources are expended.

## III. Appointment as Interim Counsel

In addition to appointment as Co-Lead Counsel, Mr. Saeed seeks appointment as Co-Lead Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3), which permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Designating interim class counsel is essential because it "clarifies responsibility for protecting the interests of the class during precertification activities,

such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual, § 21.11.[6]

### IV.     Conclusion

For the foregoing reason S&L Firm requests that this Court should accepts its Proposed Structure and appoint Syed Ali Saeed as one of co-leads for the Fairlife MDL.

Respectfully submitted,

/s/Syed Ali Saeed
Syed Ali Saeed
Saeed & Little, LLP
18 W Vermont Street
Indianapolis, IN 46204
Ph.: 317-721-9214
Fax: 888-422-3151
Email: ali@sllawfirm.com

---

[6] The criteria laid out for appointment of interim class counsel under FED.R.CIV.P. 23(g)(1) have been previously discussed at length in Section II of this Application and has been omitted here in the interest of brevity.