UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: FAIRLIFE MILK MARKETING AND SALES PRACTICES LITIGATION | Case No.: 1:19-cv-3924 |
| This document relates to: All Actions | The Honorable Robert M. Dow, Jr. |

**MEMORANDUM OF LAW IN SUPPORT OF THE *MICHAEL* PLAINTIFFS'
MOTION FOR THE APPOINTMENT OF INTERIM CLASS COUNSEL**

**TABLE OF CONTENTS**

**PAGE(S)**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 1 |
| II. | BACKGROUND AND PROCEDURAL POSTURE ............................................ | 1 |
| | a. The First And Second Filed *Michael* And *Schwartz* Actions ........................... | 1 |
| | b. Bursor & Fisher's Partnership With The Animal Legal Defense Fund .......... | 2 |
| | c. The Copycat Actions ..................................................................................... | 3 |
| | d. The JPML Process ....................................................................................... | 4 |
| | e. Bursor & Fisher's Coordination And Filing Of The Joint Organization And Management Plan ......................................................................................... | 5 |
| III. | ARGUMENT ........................................................................................................... | 6 |
| | a. Counsels' Identification And Investigation Of The Claims ........................... | 7 |
| | b. Counsels' Experience In Handling Class Actions And Other Complex Litigation ......... | 9 |
| | c. Counsels' Knowledge Of The Applicable Law ............................................ | 11 |
| | d. Resources Counsel Will Commit To Representing The Class .................... | 12 |
| IV. | REQUEST TO BAR SETTLEMENT DISCUSSIONS WITH NON-INTERIM CLASS COUNSEL ................................................................................................ | 13 |
| V. | CONCLUSION ...................................................................................................... | 13 |

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................................... 9, 10

*Finocchiaro v. NQ Mobile, Inc.*,
  2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016) ................................................................... 1, 3

*Forcellati v. Hyland's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..................................................................... 10

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................................................... 9

*In re Comdisco Sec. Litig.*,
  150 F. Supp. 2d 943 (N.D. Ill. 2001) ........................................................................... 11, 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2013 WL 6050431 (N.D. Ill. Nov. 15, 2013) ................................................................ 1, 6, 7

*In re Luxoticca Group, S.p.A. Sec. Litig.*,
  2004 WL 2370650 (E.D.N.Y. Oct. 22, 2004) ................................................................... 11

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015) ......................................................................... 10

*Martinelli v. Johnson & Johnson*,
  2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) .................................................................... 9

*Melgar v. Zicam LLC*,
  2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ................................................................ 9, 12

**STATUTES**

28 U.S.C. § 1407 .................................................................................................................... 5

**RULES**

Fed. R. Civ. P. 23(g) ........................................................................................................... 1, 9

Fed. R. Civ. P. 23(g)(1) ............................................................................................. 6, 7, 9, 12

Fed. R. Civ. P. 23(g)(2) ........................................................................................................... 6

Fed. R. Civ. P. 23(g)(3) ........................................................................................................... 6

Fed. R. Civ. P. 23(g)(4) ........................................................................................................... 6

Fed. R. Civ. P. 26(f) ................................................................................................................ 2

**OTHER AUTHORITIES**

MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. Ed. 2007) ........................................................ 7

I.  **INTRODUCTION**

Pursuant to the Court's November 26, 2019 Initial Status Order and Federal Rule of Civil Procedure 23(g), Plaintiffs Alain Michael, Andrew Schwartz, and Alice Vitiello (collectively, the "*Michael* Plaintiffs") hereby move for an order appointing Bursor & Fisher, P.A. ("Bursor & Fisher") as interim class counsel, Wolf Haldenstein Adler Freeman & Herz LLC ("Wolf Haldenstein" or "WHAFH") as local counsel, and the Animal Legal Defense Fund ("ALDF") as supporting counsel. *See* ECF No. 63.

This arrangement is "all that is needed to efficiently and effectively represent the interests of" the class, especially since this is a simple case. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 6050431, at *6 (N.D. Ill. Nov. 15, 2013) (appointing one firm as interim class counsel with Wolf Haldenstein as local counsel). Adopting anything larger would unjustifiably increase attorneys' fees and costs that may derogate from any relief received by the putative class, and would promote delay and litigation inefficiency. *See, e.g.*, *Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *4 (S.D.N.Y. Dec. 1, 2016) ("appointing multiple firms raises real risks of duplication of effort and unnecessary attorneys' fees"); *see also* Fed. Jud. Ctr., Manual for Complex Litig., § 10.221 (4th ed. 2004) (the "Manual") ("Committees of counsel can sometimes lead to substantially increased costs"). For these reasons, and as detailed more fully below, the *Michael* Plaintiffs respectfully request that the Court grant this motion to appoint Bursor & Fisher as interim class counsel, WHAFH as local counsel, and ALDF as supporting counsel.

II. **BACKGROUND AND PROCEDURAL POSTURE**

    a.  *The First And Second Filed Michael And Schwartz Actions*

On June 3, 2019, Animal Recovery Mission ("ARM") released the first of many videos depicting widespread animal abuse at fairlife's dairy farms. On June 11, 2019, Plaintiff Alain Michael and his counsel, Bursor & Fisher, P.A., filed the first nationwide action against fairlife,

1

LLC ("fairlife"), Mike McCloskey, and Sue McCloskey. The *Michael* action was filed in the Northern District of Illinois, where Defendant fairlife, LLC is headquartered and is alleged to have coordinated and implemented all of the relevant marketing and labeling decisions concerning its fairlife branded milk products ("Milk Products"). *See Michael* Compl. ¶ 8, ECF No. 1. Plaintiff Michael alleged that fairlife's labeling and marketing campaign contained an express "promise" – including prominently on the products' labels – that fairlife provided "[e]xtraordinary care and comfort for [its] cows." *Id*. ¶ 6. But, as depicted in the ARM videos (and as gleaned through investigation of counsel), that promise was a sham. The *Michael* Plaintiffs therefore assert claims for violation of the consumer protection statutes of Illinois and various other states, as well as claims for common law fraud and unjust enrichment.

On June 12, 2019, hours after the *Michael* filing, Plaintiffs Andrew Schwartz and Alice Vitiello and their counsel, Wolf Haldenstein, independently filed the second nationwide case, also in the Northern District of Illinois, concerning largely the same allegations. On July 9, 2019, fairlife moved to reassign the *Schwartz* action to Judge Dow. The *Michael* Plaintiffs consented to the reassignment. On July 11, 2019, the *Schwartz* action was officially reassigned to Judge Dow. ECF No. 18.

On July 19, 2019, the parties in the *Michael* action field a Joint Status Report pursuant to Fed. R. Civ. P. 26(f), updating the Court regarding, *inter alia*, the status of the case, the nature of the claims, service of process, and the status of and anticipated topics of discovery.

### b. *Bursor & Fisher's Partnership With The Animal Legal Defense Fund*

Bursor & Fisher has been working closely with attorneys at the Animal Legal Defense Fund since June 2019 as part of their ongoing investigation and prosecution of this case. Krivoshey Decl. ¶ 2. ALDF's resume is attached to the Declaration of Anthony Eliseuson as Exhibit 1. ALDF

2

is one of the leading national nonprofit organizations focused on advancing animal-welfare and related consumer protection issues through the legal system, with attorneys from some of the country's top law firms. Eliseuson Decl. ¶ 2, Ex. 1. ALDF has been investigating fairlife's animal welfare practices since October 2017, years before any undercover reports from ARM became public. *See id.* ¶ 4. ALDF's investigation has focused on Defendant fairlife, LLC's supply chain and consumer representations. *Id.* To that end, ALDF submitted FOIA requests to the federal Food and Drug Administration and submitted public records requests pursuant to the Indiana Access to Public Records Act. *Id.* ¶¶ 5-7. ALDF has also sought information concerning the welfare of animals owned or controlled by Fair Oaks Farms (the specific farm at issue in the ARM investigation), fairlife, and Defendant Select Milk Producers, Inc. *Id.* ¶ 7. Through its investigation and records requests, ALDF has obtained hundreds of pages of documents concerning fairlife's practices. *Id.* ¶ 8. ALDF's years of experience litigating animal welfare issues around the country, and its comprehensive investigation of fairlife specifically, have been and continue to be a tremendous asset to Bursor & Fisher's investigation and litigation of the claims at issue.

    c. *The Copycat Actions*

Since the filing of the *Michael* and *Schwartz* actions, at least six known copycat cases have been filed around the country, though none in the Northern District of Illinois or in any Illinois state court, even though the primary defendant – fairlife – is based there. Counsel for many of these copycat cases appear to have copied sections of the *Michael* Complaint word-for-word, or, at best, paraphrased. For instance, paragraphs concerning the experiences of the named plaintiffs in the *Michael* and *Salzhauer* actions are nearly identical. *Compare Michael* Compl. ¶¶ 6-7, *with Salzhauer* Complaint, Krivoshey Decl. Ex. 2, ¶¶ 7-8 (several sentences are nearly word for word

3

identical). The *Salzhauer* complaint even cites the same studies and identical findings concerning consumer preference and willingness to pay for "Animal Welfare Claims," <u>which were not part of the initial public reports concerning fairlife's conduct</u>, but rather were found through Bursor & Fisher's independent pre-suit investigation:

- *Compare Michael* Coml. ¶ 12 (citing American Society for the Prevention of Cruelty to Animals study), *with Salzhauer* Compl. ¶ 62 (citing the same study and percentage figures);

- *Compare Michael* Compl. ¶ 13 (citing Wal-Mart study), *with Salzhauer* Compl., ¶ 61 (citing the same study and percentage figures);

- *Compare Michael* Compl., ¶ 14 (citing American Humane Association study), *with Salzhauer* Compl., ¶ 60 (citing the same study, <u>with the same quotes</u> and percentage figures as in *Michael*);

- *Compare Michael* Compl. ¶ 15 (citing 2010 SegmenTrak study), *with Salzhauer* Compl. ¶ 58 (citing the same study and same percentage figures).

Some of the subsequent copycats then directly copy-and-pasted allegations from the *Salzhauer* complaint. For instance, the *Henderson* and *Olivo* complaints, Krivoshey Decl. Exs. 3, 4, track the wording and paragraph structure of the *Salzhauer* complaint precisely, as nearly every word and paragraph of the three complaints are identical – including those paragraphs that copied from the *Michael* complaint. Yet other complaints are mirror images of the initial *Michael* complaint. *Compare Michael* Compl. ¶¶ 1-3, with *Abowd* Compl., Krivoshey Decl. Ex. 5 ¶¶ 1-3 (word for word identical); *compare Michael* Compl. ¶ 32 (using screencaptures taken by Bursor & Fisher of public <u>videos</u>), *with Sabeehullah* Compl., Krivoshey Decl. Ex. 6, at ¶ 20 (using the identical screencaptures, in the same order, with the same titles).

d. **<u>The JPML Process</u>**

On June 21, 2019, the plaintiff in the *Salzhauer* action filed a motion pursuant to 28 U.S.C. § 1407 to transfer all related cases to the Northern District of Georgia for pretrial proceedings. At the time, only four related cases were on file – *Michael*, *Schwartz*, *Sabeehullah*, and *Salzhauer*.

Because the *Michael* and *Schwartz* cases were informally consolidated and assigned to the same judge, however, there were effectively only three related actions pending. Plaintiff Salzhauer requested that the actions be consolidated in the Northern District of Georgia because of Coca-Cola's presence there, even though Coca-Cola – as a part-owner of fairlife – is not the key party to the litigation. Rather, Coca-Cola's liability is likely derivative of fairlife's.

On July 15, 2019, the *Michael* Plaintiffs jointly opposed Salzhauer's JPML petition as premature and, in the alternative, sought consolidation in the Northern District of Illinois. The *Michael* Plaintiffs argued in part that consolidation was premature because, at that time, there were effectively only three related actions pending, as discussed above.

The JPML panel scheduled the hearing for September 26, 2019. Within twelve days of the JPML hearing, another four copycat actions were filed – *Henderson* (on September 13, 2019), *Niagi* (on September 19, 2019), *Abowd* (on September 24, 2019), and *Olivo* (on September 25, 2019), which was filed the night before the JPML hearing. Since eight separate actions were on file at the time of the September 26, 2019 JPML hearing, it was evident that consolidation was now appropriate. Thus, at the hearing, counsel for the *Michael* Plaintiffs dropped their opposition to consolidation and expressly sought centralization in the Northern District of Illinois. *See* Transfer Order, Dkt. 48 ("Plaintiffs in the two Illinois actions initially opposed centralization but at oral argument expressed support for centralization in the Northern District of Illinois."). The JPML panel agreed, and, on October 10, 2019, issued an order transferring all the related actions to the Northern District of Illinois for consolidation.

    e. **<u>Bursor & Fisher's Coordination And Filing Of The Joint Organization And Management Plan</u>**

On November 4, 2019, the Court scheduled an initial status conference for November 26, 2019. ECF No. 34. The Court then entered the Initial Status Order on November 7, 2019,

5

consolidating all of the actions transferred by the JPML. ECF No. 35. The Order required the filing of a joint organization and management plan and for the parties to meet and confer prior to the initial status conference. *Id*. at 3.

Pursuant to the Court's order, on November 8, 2019, Bursor & Fisher emailed counsel for the parties to this MDL seeking to (1) have a meet and confer conference prior to the initial status conference, and (2) to file a joint organization and management plan. *See* Krivoshey Decl., Ex. 7 at 1. Bursor & Fisher attached a draft of the joint organization and management plan, and proposed to have a meet and confer call on November 15, 2019. *Id*. Notably, Bursor & Fisher's proposals in the initial draft joint organization and management plan were adopted almost in whole in the version that was ultimately filed with the Court. *Compare* Krivoshey Decl., Ex. 8, *with* Joint Organization and Management Plan, ECF No. 61.

### III. ARGUMENT

Under Federal Rule of Civil Procedure 23(g)(3), a "court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." "In selecting interim class counsel, courts look to the standard articulated in Rule 23(g)(2), which requires appointment of counsel 'best able to represent the interests of the class.'" *In re Dairy Farmers of Am.*, 2013 WL 6050431, at *3 (quoting Fed. R. Civ. P. 23(g)(2)). "This standard requires the Court to consider the factors under Rule 23(g)(1) and (4), including counsel's investigation of the potential claims, experience in relevant matters, knowledge of applicable law, resources to commit, and any other factors relevant to counsel's ability to fairly and adequately represent the interests of the class." *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)).

### a. *Counsels' Identification And Investigation Of The Claims*

While no one factor under Rule 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. <u>All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.</u>

MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. Ed. 2007) (emphasis added).

Bursor & Fisher, WHAFH, and ALDF's work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the interests of the proposed Class. For example, collectively, they have performed the following work thus far:

(a) Conducted an extensive investigation into Defendants' misrepresentations and the underlying facts of the alleged animal cruelty and abuse;

(b) Researched Defendants' corporate structure and founders;

(c) Submitted a FOIA request to the federal Food and Drug Administration requesting records regarding fairlife's dairy processing plants in March 2018;

(d) Submitted a public records request pursuant to the Indiana Access to Public Records Act in March 2018 concerning records related to the processing and supply chain of fairlife;

7

(e) Submitted a public records request pursuant to the Indiana Access to Public Records Act in May 2018 concerning the welfare of animals owned or controlled by Fair Oaks Farms, fairlife, and Select Milk Producers, Inc.;

(f) Received and reviewed hundreds of pages of documents as a result of the public records requests;

(g) Evaluated the adequacy of the named plaintiffs and other potential plaintiffs regarding the facts of the case and both current and potential additional claims for a consolidated complaint;

(h) Reviewed public documentation, studies, reviews and articles about the consumer preferences for animal-welfare related marketing and labeling;

(i) Filed the first complaint – within a week of AMR's first reports – in the district with the strongest connection to claims at issue;

(j) Oversaw the informal coordination and consolidation of the first two cases filed nationwide;

(k) Conducted the initial 26(f) conference with counsel for Defendants fairlife, Mike McCloskey, and Sue McCloskey, *see* Dkt. 29;

(l) Argued successfully before to JPML to transfer all related cases to the Northern District of Illinois; and

(m) Coordinated the preparation, revision, and submission of the Joint Organization and Management Plan to the Court following the MDL, *see supra* § II.e.

These investigative efforts represent a high standard of professionalism, dedication, and thoroughness, which have been marshaled to identify, develop, and demonstrate the claims alleged

in the complaint. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class counsel.

### b. *Counsels' Experience In Handling Class Actions And Other Complex Litigation*

The second factor the court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Bursor & Fisher has "extensive experience in handling class actions and complex litigation, including products liability and consumer protection cases[.]" *In re Welspun Litigation*, No. 16-cv-6792 (RJS), Dkt. 58 at 2 (S.D.N.Y. Jan. 26, 2017). As United States District Judge Jed S. Rakoff of the Southern District of New York recognized in appointing the firm as class counsel, "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims …. The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014).

Class actions are rarely brought to trial. However, Bursor & Fisher served as trial counsel for class action plaintiffs in six jury trials since 2007, and has won all six. Krivoshey Decl., Ex. 1. Most recently in May 2019, Bursor & Fisher secured a jury verdict and judgment that the defendant violated the Telephone Consumer Protection Act 534,712 times, entitling class members to $267 million in statutory damages. *See Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal. Sep. 9, 2019) (final judgment entered for $267 million).

Bursor & Fisher also has substantial experience litigating and certifying contested claims on behalf of nationwide and multi-state classes. *See, e.g.*, *Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019); *Hart v. BHH, LLC*, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017); *Melgar v. Zicam LLC*, 2016 WL 1267870 at *7 (E.D. Cal. Mar. 31, 2016)

9

(California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia classes of purchasers of Zicam's homeopathic cold remedies); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of Hyland's cold and flu products).

More generally, within the past seven years, Bursor & Fisher lawyers have been court-appointed counsel or interim class counsel in more than 30 class actions. *See* Krivoshey Decl. Ex. 1 at pp. 1-3. This includes leadership experience in multi-district litigations. In addition to its recent appointment in *In re: American Medical Collection*, Case No. 19-md-2904 (D.N.J.), the firm has been appointed to the leadership structure in *In re: Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices, And Products Liability Litigation*, Case No. 19-md-2903 (W.D.N.Y.) and the steering committee in *In re: Valsartan Products Liability Litigation*, 19-md-02875 (D.N.J.). The firm was also appointed to the leadership structure in *In re: Blue Buffalo Company, Ltd., Marketing And Sales Practices Litigation*, 14-md-2562 (E.D. Mo.), which ultimately settled for a $32 million cash common fund.

WHAFH has similar experience, including before this Court. *See gen.,* Malmstrom Decl., Ex. 1 (WHAFH firm resume). For instance, WHAFH served as co-lead counsel in *Rubinstein et al. v. Gonzalez et al.*, No. 1:14-cv-9465 (N.D. Ill.), a case that settled in October for $16.75 million settlement on behalf of investors of Shire securities. WHAFH also served as interim class counsel and local counsel in *In re: Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, No. 1:09-cv-3690 (N.D. Ill.), where it helped secure a $46 million settlement on behalf of direct purchasers of cheese. Currently, WHAFH serves as interim co-lead counsel and local counsel in *Smith-Brown et al. v. Ulta Beauty, Inc. et al.*, No. 1:18-cv-610 (N.D. Ill.) pending before the Honorable Jorge L.

10

Alonso.

Courts outside of this District have also recognized WHAFH's qualifications. *See Bokelman et al. v. FCH Enterprises, Inc.*, Case No. 1:18-cv-209 (D. Haw.) Hr'g Tr. May 3, 2019, p. 11 ("I've been impressed by the quality of the work [that WHAFH did] throughout here and that is reflected, I think in the fact that no one has objected to the settlement."); *In re Luxoticca Group, S.p.A. Sec. Litig.*, 2004 WL 2370650, at *5 (E.D.N.Y. Oct. 22, 2004) (selecting the firm as lead class counsel based of its "experience and expertise"); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 951 (N.D. Ill. 2001) (noting that the firm's credentials "are impeccable"). *See also In re Dynamic Random Access Memory Antitrust Litigation*, 4:02-md-1486 (N.D. Cal. Aug. 15, 2007); *In re TXU Corp. Derivative Litig.*, Consolidated Cause No. 07-1779 (Dallas County, Tex. 44th Judicial Dist.) (April 18, 2008); *K.J. Egleston L.P. v. Heartland Industrial Partners, et al.*, Case No. 2:06-cv-13555 (E.D. Mich.); *In re Comdisco Sec. Litig.*, No. 01 C 2110 (N.D. Ill. July 14, 2005); *Parker Friedland v. Iridium World Communications, Ltd*., Case No. 1:99-cv-1002 (D.D.C.).

Since its founding in 1979, ALDF has amassed extensive experience litigating high-profile consumer protection class actions representing consumers in cases concerning animal-welfare related issues. Eliseuson Decl., Ex. 1. ALDF's attorneys have served as interim co-lead counsel in numerous consumer class actions. *Id*. ALDF is led by attorneys from some of the nation's largest law firms that have been recognized for their outstanding work. *See id*.

    c. **_Counsels' Knowledge Of The Applicable Law_**

Bursor & Fisher, WHAFH, and ALDF have long histories of prosecuting consumer class actions and are extremely familiar with large-scale and MDL sales and marketing practices class actions. WHAFH has maintained an office in the Northern District of Illinois for 20 years and has

11

extensive knowledge of the Northern District of Illinois' rules and procedures. One of ALDF's counsel on this case, Anthony Eliseuson, is also a member of the Illinois trial bar.

### d. *Resources Counsel Will Commit To Representing The Class*

The final Rule 23(g) factor – which concerns the resources counsel will commit to the case – also strongly supports Bursor & Fisher's appointment. Bursor & Fisher is a well-established, successful law firm that has the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar large-scale class actions. Bursor & Fisher has already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed class. The firm's resources are not merely financial, but also include substantial expertise and work-product as discussed above, which were developed in other similar cases that will benefit Plaintiffs and the putative class. Bursor & Fisher's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Notably, other courts have recently opined on the resources and commitment of Bursor & Fisher in representing clients in class action cases. For instance, in appointing Bursor & Fisher as interim class counsel, Chief United States District Judge Morrison C. England, Jr. of the Eastern District of California commented that the firm "is a well-established, reputable firm that is up to handling the challenges of this litigation and is capable of committing the requisite resources to doing so. The Court is confident that Bursor & Fisher will fairly and adequately represent the interests of the class." *Melgar v. Zicam, LLC*, No. 2:14-cv-00160-MCE-AC (E.D. Cal. Oct. 29, 2014). Similarly, in appointing Bursor & Fisher as interim class counsel in *Rodriguez v. CitiMortgage*, Case No. 1:11-cv-4718 (PGG) (S.D.N.Y. Nov. 14, 2011), Judge Gardephe recognized that Bursor & Fisher is a "well-established law firm" that "ha[s] the resources and

personnel necessary to carry out large-scale class action litigation." Judge Gardephe further noted that he had "no reason to doubt that [counsel] will provide the necessary resources going forward to litigate this case." *Id.*

The same is true with respect to this action. As interim class counsel, Bursor & Fisher will continue to commit the same resources and effort to this case as they have committed to their other, successful consumer class action litigations.

### IV. REQUEST TO BAR SETTLEMENT DISCUSSIONS WITH NON-INTERIM CLASS COUNSEL

Plaintiffs request that the Court explicitly bar all Defendants from negotiating class-wide settlement concerning the claims at issue in this MDL with any counsel other than counsel ultimately appointed as Interim Lead Counsel. *See* Joint Organization and Management Plan, ECF No. 61, at 9-10.

### V. CONCLUSION

In the interest of judicial economy and for the reasons set forth above, the *Michael* Plaintiffs respectfully request that the Court appoint Bursor & Fisher as interim class counsel, Wolf Haldenstein as local counsel, and the Animal Legal Defense Fund as supporting counsel. In the event that the Court believes a co-leadership is preferable, the undersigned respectfully submit that both Bursor & Fisher and Wolf Haldenstein be appointed as interim co-lead counsel.

Dated: December 6, 2019          **BURSOR & FISHER, P.A.**

By:    */s/ Yeremey Krivoshey*

Frederick J. Klorczyk III
Yeremey Krivoshey
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

13

Facsimile: (925) 407-2700
E-mail: fklorczyk@bursor.com
ykrivoshey@bursor.com

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
E-mail: malmstrom@whafh.com

**ANIMAL LEGAL DEFENSE FUND**
Anthony Eliseuson
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
Telephone: (707) 795-2533
E-mail: aeliseuson@aldf.org

*Counsel for the Michael Plaintiffs*

14