**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION**<br><br>This Document Relates to All Cases | MDL No. 2909<br><br>Master Case No. 19-cv-3924<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM IN SUPPORT OF MOTION TO APPOINT
AMY E. KELLER, MELISSA S. WEINER, AND MICHAEL R. REESE
AS INTERIM CLASS COUNSEL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)**

Amy E. Keller of DiCello Levitt Gutzler LLC, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, and Michael R. Reese of Reese LLP (collectively, the "DPR Team") respectfully seek appointment as co-lead interim class counsel in this action.

With extensive experience in food labeling and consumer fraud class action litigation—both in this District and throughout the United States—the DPR Team brings the necessary skill and dedication to this multidistrict litigation ("MDL") to most effectively represent the proposed classes. Their experience in litigating false advertising cases—including their deep understanding about the production, distribution, marketing, and sales of consumer products—is demonstrated by the work the DPR Team has already performed here. For example, together with the nonprofit Compassion Over Killing ("COK"), the proposed slate has been investigating Defendants' advertising of fairlife! products and their treatment of farm animals in the supply chain—in preparation for filing an action such as this one—for several years.

Beyond possessing the necessary experience to lead an MDL like this one, and the work that the DPR Team has already done, the slate also reflects the diversity of the bar and the plaintiff class—from the standpoint of gender, age, geography, background, and experience—following guidance from the Duke Law Bolch Judicial Institute's[1] *Standards and Best Practices for Large and Mass-Tort MDLs* ("*Duke Standards*"), which encourage "appointment of an experienced slate of attorneys" who will "fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds."[2] The DPR Team's diverse experience in litigating a variety of cases is also reflected by the support the slate has received

---

[1] Formerly known as the Duke Law Center for Judicial Studies.

[2] David Rock and Heidi Grant, *Why Diverse Teams Are Smarter*, Harv. Bus. Rev. (Nov. 4, 2016), https://hbr.org/2016/11/why-diverse-teams-are-smarter.

from a majority of the other attorneys and plaintiffs in this MDL.[3]  Importantly, there are no

"side agreements" contingent on promises of future work.  Rather, the DPR Team is a lean

structure, with the right combination of talent, personalities, and experience to best and most

efficiently prosecute *this* case, in *this* Court, against *these* Defendants.

## ARGUMENT

A court may appoint interim class counsel before deciding whether the action may be

certified as a class. Fed. R. Civ. P. 23(g)(3). When, as here, there is a contested application

process, "the court must appoint the applicant best able to represent the interests of the class."

Fed. R. Civ. P. 23(g)(2). In making this determination, the court must consider (i) counsel's work

in identifying or investigating potential claims, (ii) counsel's experience in handling class actions

and the types of claims involved, (iii) counsel's knowledge of the applicable laws, and (iv) the

resources counsel commits to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may

also consider "any other matter pertinent to counsel's ability to fairly and adequately represent

the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  This includes consideration of the

standards set forth in the Manual for Complex Litigation, Fourth (2004) ("MCL"). *See Walker v.*

*Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011) (citing

MCL § 21.11 (2004)).

## I.     The Court Should Appoint Ms. Keller, Ms. Weiner, and Mr. Reese as Co-Lead Interim Class Counsel

In determining which counsel is best suited to act as interim class counsel, courts "have

frequently appointed more than one firm" when it is in the best interests of the proposed class

members. *Walker*, 2011 WL 2160889, at *3 (collecting cases).  The DPR Team presents a

---

[3] The DPR Team has positive working relationships with those other counsel and believes said counsel can contribute to the success of the prosecution of this MDL; however, has not promised any work.

streamlined, three-way co-lead structure that dispenses with the need for local, or liaison counsel and spreads litigation risk sufficiently. And, as demonstrated in another, recently-settled litigation in this district (final approval pending), in which Ms. Keller's partner Adam Levitt serves as co-lead counsel, a three-way leadership structure is entirely appropriate. *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig*., No. 1:14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015). In that case, which only involved 45,224 class members, the court *also* appointed interim liaison counsel in addition to three co-leads. *In re Navistar*, ECF No. 673, Pls.' Mem. in Supp. of Unopposed Mot. for Final Approval 6 (Sept. 10, 2019). The DPR Team proposes an even leaner structure in this case, which involves many more defendants and a far larger class. And, although the team has worked collaboratively thus far, the appointment of three attorneys to lead the case ensures that "[w]here a disagreement arises within the leadership, the odd-numbered structure will facilitate, at a minimum, a 2-1 resolution." *In re Navistar*, 2015 WL 1216318 at *1.

The DPR Team consists of firms spanning the country: with offices in Chicago, Cleveland, Los Angeles, San Francisco, Minneapolis, New York, and St. Louis. Not only do they have the experience and resources necessary to litigate this case, but the attorneys who make up the proposed slate also have the respect of their peers, are able to work cooperatively with opposing counsel, and have the support of other firms who filed in this MDL. Their resumes are attached hereto as Exhibits A, B, and C.

### A.     Amy E. Keller's Qualifications

Amy E. Keller is a partner of the law firm DiCello Levitt Gutzler LLC, where she primarily focuses on consumer protection class litigation. Recognized as a "rising superstar" by

her colleagues in the bar, and "smart, tough, and practical with opposing counsel,"[4] Ms. Keller has a significant amount of experience leading consumer multidistrict litigations.

Perhaps most significantly for purposes of this litigation, Ms. Keller's firm[5] was appointed co-lead counsel in a settlement class action for misleading product labeling. *See In re ConAgra Foods, Inc.*, No. CV 11-05379-CJC(AGRx) (C.D. Cal.). In *ConAgra*, Ms. Keller helped to secure a settlement after eight years of hard-fought litigation, resulting in consumers receiving 35% more than they could have achieved at trial. That case also resulted in the court's recognition of plaintiffs' price premium damages model, as well as the creation of the Ninth Circuit's standard on "ascertainability"—ensuring that consumer actions like the present one are still able to be brought in that Circuit. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), *cert. denied ConAgra Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017). Her work in the *ConAgra* case will benefit class members here, where plaintiffs allege that consumers paid a price premium for the promise that fairlife! dairy cows were treated humanely.[6]

---

[4] Chris Bruce, *Rising Class-Action 'Superstar' Keller Takes Lead in Equifax Case*, Bloomberg BNA (Feb. 26, 2018), *available at* https://biglawbusiness.com/rising-class-action-superstar-keller-takes-lead-in-equifax-case.

[5] Initially, the Court appointed the former law firm of Ms. Keller's partner, Adam Levitt. *See In re ConAgra*, ECF No. 48. Ms. Keller joined the litigation during the subsequent briefing of the appellate issues on class certification, including briefing before the United States Supreme Court.

[6] DiCello Levitt's attorneys, including Ms. Keller's partner, Adam Levitt, have been recognized as a leader in the development of damages methodologies in agricultural and food product labeling actions, resulting in billions of dollars of relief for class members. *In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo.) (securing settlements exceeding $1.1 billion); *In re Imprelis Herbicide, Sales Practice and Products Liability Litig.*, MDL No. 2284 (E.D. Pa.) ($550 million settlement); and *In re StarLink Corn Products Liability Litig.*, MDL No. 1403 (N.D. Ill.) ($110 million settlement). Mr. Levitt was also a member of the leadership team in *In re: Aurora Dairy Corp. Organic Milk Mktg. Sales Practices Litig.*, Case No. 4:08-md-1907 (E.D. Mo.), another MDL arising out of the allegedly false labeling and marketing of milk products.

Ms. Keller's leadership experience spans a number of other multidistrict litigations. In 2018, she was appointed by Chief Judge Thomas Thrash in the United States District Court for the Northern District of Georgia to serve as Co-Lead Counsel in the pending *Equifax* MDL, where, as the youngest woman ever appointed to lead a nationwide class action, she helped to secure the largest data breach settlement in history—resulting in as much as $505.5 million in cash relief and $1 billion in required security upgrades by the company. *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 17-md-02800, ECF No. 739-1 (N.D. Ga.). In 2019, she was also appointed co-lead counsel in two other consumer protection cases, *In re Marriott International, Inc. Customer Data Security Breach Litig.*, No. 19-md-02879-PWG (D. Md.), where she represents approximately 300 million consumers who did not receive the benefit of their bargain when making hotel reservations that their information would be kept secure, and *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-02904 (MCA)(MAH) (D.N.J.), where she represents consumers whose private medical information was compromised by a company that entered Chapter 11 bankruptcy protection. [7]

Ms. Keller has substantial, additional experience in litigating consumer protection cases, including her appointment to the Executive Committee and Co-Chair of Law and Briefing in the pending international class action against Apple related to device performance and throttling. *In re: Apple Inc. Device Performance Litig.*, No. 18-md-02827 (N.D. Cal.). She has also held

---

[7] DiCello Levitt's attorneys, including Ms. Keller's partner, Adam Levitt, have been recognized as a leader in the development of damages methodologies in agricultural and food product labeling actions, resulting in billions of dollars of relief for class members. *In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo.) (securing settlements exceeding $1.1 billion); *In re Imprelis Herbicide, Sales Practice and Products Liability Litig.*, MDL No. 2284 (E.D. Pa.) ($550 million settlement); and *In re StarLink Corn Products Liability Litig.*, MDL No. 1403 (N.D. Ill.) ($110 million settlement). Mr. Levitt was also a member of the leadership team in *In re: Aurora Dairy Corp. Organic Milk Mktg. Sales Practices Litig.*, Case No. 4:08-md-1907 (E.D. Mo.), another MDL arising out of the allegedly false labeling and marketing of milk products.

leadership roles in actions requiring significant work in the calculation of class-wide damages and the development of models to explain class member injury—issues directly applicable to this case, as the defendants will likely argue that not all class members paid a price premium for fairlife! products. *See, e.g.*, *T.S. Kao, Inc. v. N. Am. Bancard, LLC*, No. 16-cv-04219 (N.D. Ga.) (nationwide, $15 million settlement related to credit card processor overcharging merchants); *Catalano v. BMW of N. Am., LLC, et al.*, No. 15-cv-04889 (S.D.N.Y.) (nationwide settlement providing repair and replacement of certain electrical parts in automobiles); *Roberts, et al. v. Electrolux Home Prods., Inc.,* No. 12-cv-01644 (C.D. Cal.) (nationwide settlement benefitting owners of certain, allegedly defective, clothes dryers).

Ms. Keller's work continues to advance the practice, focusing on forward-looking theories of liability and damages modeling, resulting in her having been named a *National Law Journal* Plaintiff Trailblazer for her work on consumer protection issues. Ms. Keller's leadership on consumer protection extends beyond her case load, where she serves on one of the working groups for the Sedona Conference, as well as on an editorial advisory board for *Law360*.

Ms. Keller and her firm, which has offices in Chicago, Cleveland, New York, and St. Louis, have recovered billions of dollars for their clients, and are well-resourced and able to handle this litigation. Of particular note, DiCello Levitt is the only plaintiff-side law firm with an in-house focus group and mock jury practice, which allows the firm to narrow the issues which will be important to the judge and jury before discovery even commences. If appointed as co-lead counsel, Ms. Keller—with the full personnel and financial support of her firm—is ready, willing, and able to commit the necessary resources to leading this litigation to a successful conclusion.

### B. Melissa S. Weiner's Qualifications

Ms. Weiner understands the significance of an appointment here and commits to personally deliver high-quality work and the time and resources necessary to effectively and expeditiously litigate this MDL. Although she has litigated a diverse body of class actions—including consumer protection, product defect, intellectual property, automotive, false advertising and Fair Credit Reporting Act—she has a particular focus in deceptive labeling litigation.

Ms. Weiner currently chairs the Plaintiffs' Executive Committee ("PEC") in *In Re Santa Fe Natural Tobacco Company Marketing & Sales Practices and Products Liability Litigation*, 1:16-md-02695-JB-LF (D.N.M.), a case involving the false and deceptive marketing of tobacco products. In that role, she is responsible for leading and directing pretrial matters, including the delegation of common benefit work responsibilities to PEC members. She had a substantial role in strategizing and preparing the opposition to the motion to dismiss and was co-lead in arguing that motion, resulting in a 249-page order favorable to the plaintiffs. Additionally, Ms. Weiner leads all strategy related to class certification.

Particularly relevant for this action, Ms. Weiner has been named class counsel—and achieved significant results for consumers in deceptive labeling cases—in the following actions: *Frohberg v. Cumberland Packing Corp.*, No. 1:14-cv-00748-KAM-RLM (E.D.N.Y.) (misleading "natural" sweetener); *Martin et al. v. Cargill, Inc.*, Civil No. 1:14-cv-00218-LEKBMK (D. Haw.) (misleading "natural" sweetener); *Gay v. Tom's of Maine, Inc.*, 0:14-cv-60604-KMM (S.D. Fla.) (misleading "natural" cosmetics); *Baharestan v. Venus Laboratories, Inc. d/b/a Earth Friendly Products, Inc.*, 315-cv-03578-EDL (N.D. Cal.) (misleading "natural" snack foods); *Barron v. Snyder's-Lance, Inc.*, 0:13-cv-62496-JAL (S.D. Fla.) (misleading "natural" snack foods).

Specifically, in *Martin v. Cargill*, Ms. Weiner was instrumental in consolidating four separate actions filed throughout the country and played a central role in negotiating a $6.1 million settlement—one of the largest in a "natural" food litigation. Her exceptional skill in negotiating substantial relief for consumers was further on display in *Baharestan v. Venus Laboratories*. There, in addition to monetary relief, Ms. Weiner was able to negotiate significant injunctive relief inclusive of label changes as well as product reformulations. To date, this is one of the few "natural" product litigations to achieve both forms of injunctive relief.

Ms. Weiner was appointed to the plaintiffs' steering committee ("PSC") in *In Re Samsung Top-Load Washing Machine Marketing, Sales Practices & Product Liability Litigation*, 5:17-md-02792 (W.D. Okla.), a class action regarding a design defect in 2.8 million top loading washing machines, which resulted in a nationwide settlement. Ms. Weiner was also appointed to the PSC in *In Re Windsor Wood Clad Window Product Liability Litigation*, 16-MD-02688 (E.D. Wis.), a nationwide class action regarding allegedly defective windows. Ms. Weiner assisted lead counsel in successfully resolving the action.

Ms. Weiner is a leader in her legal community, recently finishing a term as Co-Chair for the Mass Tort and Class Action Practice Group for the Minnesota Chapter of the Federal Bar Association. Under Ms. Weiner's leadership, the Practice Group turned its focus to cultivation of diverse leadership in MDLs and class actions as research revealed that the number of trials and in-court speaking opportunities have continued to steeply decline, and that the decline impacts women, diverse attorneys and other underrepresented groups disproportionately and negatively.[8]

---

[8] While men and women have been enrolling in law schools at roughly the same rate for decades and the percentage of women associates at larger firms is comparable to the number of men associates, the percentage of partners who are women remains below 25 percent. The percentage of diverse attorneys who are associates at larger firms has increased to almost 25 percent, yet the percentage of diverse

Ms. Weiner and her co-chairs concluded that providing newer lawyers with more frequent in-court speaking opportunities and litigation experience will begin to reverse these trends. Ms. Weiner and her co-chairs actively collaborated with the Minnesota Federal District Bench to address and remedy these issues through discussion of best practices and/or guidelines for the district. The Practice Group's hard work resulted in changes to several judge's practice pointers on diversity in litigation.[9]

Ms. Weiner is a partner with Pearson, Simon & Warshaw, LLP ("PSW"),[10] a firm with offices in Minneapolis, Los Angeles, and San Francisco, which brings significant resources to this MDL. Ms. Weiner practices in the firm's Minneapolis office, which is in the heartland of the country and is less often represented in MDL leadership than coastal cities such as New York and the District of Columbia. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 916 (E.D. La. 2012) (noting that court appointed "PSC consist[ing] of firms that are diverse . . . geographically").

PSW's partners have held leadership roles in numerous significant cases. PSW's leadership experience in the largest and most complex cases demonstrates that it has the resources needed to litigate this MDL effectively and expeditiously. For example, the firm recently served as co-lead counsel in *In re Credit Default Swaps Antitrust Litigation* (S.D.N.Y.),

---

attorneys who are partners remains below ten percent. *See Woman and Minorities at Law Firms—What Has Changed and What Has Not in the Past 25 Years*, NALP Bulletin (Feb. 2018), https://www.nalp.org/0218research (last visited Dec. 5, 2019).

[9] Ms. Weiner will add diversity to the leadership of this MDL because she is female, comparatively newer to the class action bar, yet has diverse practice and leadership experience. Ms. Weiner is a frequent lecturer on food litigation at national conferences and serves on her local Bar Association's Food & Drug Law Council, speaking annually at its FDA Forum.

[10] Key members of PSW's litigation team for this matter are partner Daniel L. Warshaw, who brings significant consumer and MDL leadership experience to the table; along with Joseph C. Bourne, who has ten years of experience, including a focus on consumer litigation.

which settled claims against a dozen of the world's largest banks for a total of $1.8 billion; *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.), an international cartel case that settled for over $473 million; and *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation* (N.D. Cal.), which settled damages claims for $208 million, and which the firm took to trial—where it prevailed—on claims seeking injunctive relief.

C.     **Michael R. Reese's Qualifications**

Michael R. Reese is a former prosecutor from the Manhattan District Attorney's Office who has been litigating consumer class actions for two decades. Mr. Reese is also the founder of Reese LLP, a class action law firm that has litigated class actions on behalf of consumers since 2008, with a focus on food law. With offices in New York and California, Reese LLP is comprised of a diverse team of skilled attorneys that have achieved significant results on behalf of consumers for over a decade. In additional to their diversity, these attorneys bring a wide array of experience—from a former public company general counsel to former prosecutors to former defense attorneys from nationwide firms—that provide invaluable insights and versatility.

Mr. Reese is a respected leader in class action food litigation, having extensive experience litigating food related consumer class actions throughout the United States. Mr. Reese has been court appointed co-lead class action in a number of MDL food law related class actions such as *In re Vitaminwater Sales and Marketing Practices*, No. 11-md-02215-DLI-RML (E.D.N.Y.) (mislabeling of beverages); *In re Frito-Lay North Sales and Marketing Practices Litigation*, No. 1:12-md-02413-RRM-RML (E.D.N.Y.) (mislabeling of corn based food products); and *In re Hill's Pet Food Liability Litigation*, No. 2:19-md-02887-JAR-TJJ (D. Kansas) (mislabeling of pet foods). Furthermore, Mr. Reese also has been appointed as class counsel in numerous other food related class actions, including, but not limited to: *Howerton v. Cargill, Inc.*, No. 1:13-cv-00336-LEK-BMK (D. Haw.) (mislabeling of stevia based sweetener);

*Red v. Unilever United States, Inc.*, No. 5:10-cv-00387 (N.D. Cal.) (mislabeling of butter alternative spreads); and *Yoo v. Wendy's International Inc.*, No. 07-cv-04515-FMC (C.D. Cal.) (mislabeling of food products containing trans-fat).

       In addition to being a litigator, Mr. Reese is an active participant in the food law community. He is an adjunct professor of law at Brooklyn Law School where he has taught since 2014. Mr. Reese teaches both "Food Law" and "The Law of Class Actions and Other Aggregate Litigation." He is also a frequent author on class actions and food law, with recent publications on food law appearing in the American Bar Association's *General Practitioner*, the ABA's *Health Lawyer* and the Union Internationale des Advocats' *Juriste*. Mr. Reese's most recent article on food law appeared in the May, 2019 edition of the Illinois State Bar *Environmental Law* publication.[11] Mr. Reese also hosts a number of food law-related conferences. Specifically, Mr. Reese co-chairs an annual conference with Professor Michael T. Roberts of the University of California Los Angeles School of Law, where all stakeholders in food law gather to discuss leading topics. The annual conference is hosted by CLE International, with the next conference occurring on March 2-3, 2020 in San Francisco, California.[12] Previous conference co-chaired by Mr. Reese include "Food Law—Industry, Academia, Consumer, NGO & Government Perspectives" (UCLA, Los Angeles, California (June 6-7, 2019)); "Innovative Foods and Other Hot Topics" (Denver, Colorado (April 19-20, 2018)); and "Food Law—A Comprehensive Review of the Evolving Legal Landscape" (Austin, Texas (May 11-12, 2017)). Additionally,

---

[11] *See* Michael Reese, *How to Become a Food Lawyer: A Smörgåsbord of Tips from a Seasoned Practitioner*, Illinois State Bar: Environmental Law, Vol. 49, No. 5 (May 2019).

[12] *See* https://custom.cvent.com/346C5E33A25A410DBF9945112DB1B990/files/event/091ab34525cd4928adf09212b7768bd5/2c8bbda91529497684ef5f199e238e73.pdf (last visited Dec. 3, 2019).

Mr. Reese is also the chairperson in charge of the Cambridge Food Fraud Forum, an annual invitation-only event for leading food law litigators who represent consumers.[13]

Recent achievements by Mr. Reese in food-related and similar cases include a $6.1 million class action settlement in the District of Hawaii in *Howerton v. Cargill, Inc.* for consumers of Truvia-branded sweetener and a $6.4 million class action settlement in San Francisco Superior Court. Other victories include a certified class in *Hasemann v. Gerber Products, Inc.*, 2019 WL 1434263 (E.D.N.Y. Mar. 31, 2019) (baby food); successful opposition to a motion to dismiss in *Shalikar v. Asahi Beer U.S.A., Inc.*, No. 17-02713 JAK (JPRx), 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) (mislabeling of beverages); and successful opposition to a motion to dismiss in *Coe v. General Mills, Inc.*, No. 15-cv-05112-THE, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) (mislabeling regarding amount of protein found in popular cereal).

Mr. Reese also works closely with several non-profit groups, such as Center for Science in the Public Interest, to ensure the safety of our food and honesty in the marketplace. Mr. Reese is also an advisory board member to the UCLA Food Law and Policy Center and to Wellness in the Schools, an organization focused on providing nutritional foods to public school students.

An accomplished appellate lawyer, Mr. Reese has argued successfully before the Second, Seventh and Ninth Circuit Courts of Appeal. Recent appellate victories by Mr. Reese include *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) (mislabeling of whole grain food product); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350 (7th Cir. 2017) (applicability of class action removal under CAFA); and *Murphy v. Best Buy Stores L.P.*, 690 F. App'x 553 (9th Cir. 2017).

---

[13] *See* https://www.cflsfoodlitigation.com/steering-committee.html (last visited Dec. 3, 2019).

**D.** **Counsel Have Performed Substantial Work on this Matter**

**1.** **Collaboration with Compassion Over Killing to Investigate Claims**

Ms. Keller, Ms. Weiner, and Mr. Reese have been investigating fairlife!'s deceptive animal welfare-related advertising claims since 2016 in a collaborative effort with COK, a nonprofit, tax-exempt 501(c)(3) organization whose mission is to end cruelty to farmed animals. COK advocates against government policies that encourage or allow cruelty to farmed animals, conducts public education on the realities of industrialized animal agriculture, and conducts undercover investigations to expose cruelty at industrialized factory farms. *See* Exhibit D.[14]

The DPR Team decided to co-counsel with COK after numerous discussions about COK's work scrutinizing and cataloging Defendants' public advertising claims for fairlife! products and comprehensively researching the company's supply chain through public records, digital maps, social media, and news articles. With COK's assistance and expertise in farmed animal welfare, the DPR Team scrutinized undercover investigation videos in order to identify practices contrary to Defendants' advertising claims. COK also assisted the DPR Team investigating Defendants' supply chain business practices. The DPR Team's decision to co-counsel with COK will also save the class significant consulting expert witness costs.

**2.** **The DPR Team Engaged in Mediation to Attempt to Ensure the Welfare of Defendants' Dairy Cows**

The DPR team has demonstrated its ability to "engag[e] in negotiation with [the defendants] regarding a potential class-wide settlement." *See Walker*, 2011 WL 2160889, at *4. This engagement occurred on October 31, 2019, when counsel for the DPR Team conducted a mediation with defense counsel for Defendants Mike McCloskey, Sue McCloskey, and Select

---

[14] For clarity, COK is a separate organization from Animal Recovery Mission, the organization which published undercover investigations that led to a number of the cases in this MDL being filed.

Milk Producers, Inc., to determine if intermediary steps could be taken to assure the welfare of the dairy cows used by Defendants that provide the milk for fairlife! products, and ensure that the alleged inhumane treatment of these animals stopped. The Honorable Wayne Andersen (ret.) of JAMS conducted the mediation.

As stated before your Honor during the November 26, 2019 status conference, the purpose of the mediation was not to release any claims of class members. Rather, it was to attempt to prevent the alleged mistreatment from continuing—a goal shared by all plaintiffs' counsel as well a goal that can be achieved through agreement not binding on any class member. The fact that counsel for the DPR Team took this effort underscores its dedication to this matter and illustrates its initiative. It also demonstrates the DPR Team's ability to work cooperatively with opposing counsel. *See* MCL § 10.224 (explaining courts will consider "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court").[15]

## CONCLUSION

Ms. Keller, Ms. Weiner, and Mr. Reese are skilled, hands-on, dedicated attorneys with extensive experience in MDL leadership and consumer fraud and food labeling class actions. They have demonstrated a willingness to advance the litigation, work cooperatively with others, and have the support of a majority of the other attorneys and plaintiffs in this litigation. Simply put, there is no better choice to ensure the effective representation of the proposed class members. Therefore, the DPR Team respectfully requests that the Court grant their application to serve as co-lead interim class counsel.

---

[15] The DPR Team also has a history of working cooperatively with some of the opposing counsel, here, including Mark Mester at Latham & Watkins, counsel for Mike McCloskey and Sue McCloskey, as well as other partners at King & Spalding LLP, counsel for The Coca-Cola Company.

Dated: December 6, 2019               Respectfully submitted,

                                 */s/ Amy E. Keller*
Adam J. Levitt
Amy E. Keller*
Adam Prom
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
aprom@dicellolevitt.com

Michael R. Reese*
Sue J. Nam
Carlos F. Ramirez
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: 212-643-0500
mreese@reesellp.com
snam@reesellp.com
cramirez@reesellp.com

Melissa S. Weiner*
Joseph C. Bourne
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: 612-389-0600
mweiner@pswlaw.com
jbourne@pswlaw.com

Daniel L. Warshaw
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: 818-788-8300
dwarshaw@pswlaw.com

Kenneth S. Canfield
**DOFFERMYRE SHIELDS CANFIELD &**
**KNOWLES, LLC**
1355 Peachtree Street, N.E., Ste. 1725
Atlanta, Georgia 30309
Telephone: 404-881-8900
kcanfield@dsckd.com

***Counsel for Plaintiff in the Salzhauer Action***


*\* Applicants for Interim Co-Lead Counsel*