**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: FAIRLIFE MILK MARKETING AND SALES PRACTICES LITIGATION | Case No.: 1:19-cv-3924 |
| | The Honorable Robert M. Dow, Jr. |
| This document relates to: All Actions | |

**THE *MICHAEL* PLAINTIFFS' MEMORANDUM OF LAW**
**IN RESPONSE TO THE COMPETING APPLICATIONS**
**FOR THE APPOINTMENT OF INTERIM CLASS COUNSEL**

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION .......... 1

II. THE COMPETING APPLICATIONS FAIL TO EXPLAIN WHY A BLOATED 3-FIRM CO-LEAD STRUCTURE IS NECESSARY .......... 2

III. THE DPR TEAM MANUFACTURED SUPPORT FOR THIS MDL IN AN ATTEMPT TO JOCKEY FOR LEADERSHIP .......... 5

IV. BURSOR & FISHER CAN MANAGE THIS LITIGATION ON ITS OWN .......... 10

- A. Bursor & Fisher's Experience Is The Right Fit For This Case .......... 10
- B. The Competing Applications Lack Bursor & Fisher's Trial Experience .......... 12
- C. Bursor & Fisher's Partnership With The Animal Legal Defense Fund .......... 13

V. THE FIRST-FILED RULE FURTHER SUPPORTS APPOINTING BURSOR & FISHER INTERIM CLASS COUNSEL .......... 14

VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Biondi v. Scrushy*,
820 A.2d 1148 (Del. Ch. 2003)....................................................................................... 15

*Brecher v. Republic of Argentina*,
806 F.3d 22 (2d Cir. 2015).............................................................................................. 11

*Carlin v. DairyAmerica, Inc.*,
2009 WL 1518058 (E.D. Cal. May 29, 2009) ................................................................. 14

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................................... 11

*Ekin v. Amazon Servs., LLC*,
2014 WL 12028588 (W.D. Wash. May 28, 2014)............................................................ 3

*Finocchiaro v. NQ Mobile, Inc.*,
2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016) ..................................................................... 3

*In re Auction Houses Antitrust Litig.*,
197 F.R.D. 71 (S.D.N.Y. 2000) ........................................................................................ 4

*In re Insulin Pricing Litig.*,
2017 WL 4122437 (D.N.J. Sept. 18, 2017) ..................................................................... 15

*In re Jones Soda Co. Sec. Litig.*,
2008 WL 418002 (W.D. Wash. Feb. 12, 2008) ................................................................ 2

*In re Mun. Derivatives Antitrust Litig.*,
252 F.R.D. 184 (S.D.N.Y. 2008) .................................................................................... 14

*In re Navistar Maxxforce Engines Liab. Litig.*,
2015 WL 1216318 (N.D. Ill. Mar. 5, 2015)...................................................................... 4

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)............................................................................................ 11

*In re Skinnygirl Margarita Beverage Mktg. & Sales Practices Litig.*,
829 F. Supp. 2d 1380 (J.P.M.L. 2011)............................................................................ 11

*Martinelli v. Johnson & Johnson*,
2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ................................................................ 11

*Michelle v. Arctic Zero, Inc.*,
2013 WL 791145 n.3 (S.D. Cal. Mar. 1, 2013) .............................................................. 14

*Moradi v. Adelson*,
2011 WL 5025155 (D. Nev. Oct. 20, 2011) .................................................................. 15

*N. Am. Meat Inst. v. Becerra*,
2019 WL 6253701 (C.D. Cal. Nov. 22, 2019)................................................................ 14

*Nicholson v. Nationstar Mortg. LLC of Delaware*,
2018 WL 3344408 (N.D. Ill. July 6, 2018)...................................................................... 6

*Nicolow v. Hewlett Packard Co.*,
2013 WL 792642 (N.D. Cal. Mar. 4, 2013)...................................................................... 2

*Reid v. I.C. Sys. Inc.*,
2015 WL 12990169 (D. Ariz. July 9, 2015) ..................................................................... 5

*Richey v. Ells*,
2013 WL 179234 (D. Colo. Jan. 17, 2013)..................................................................... 15

*Riggleman v. Clarke*,
2019 WL 1903795 (W.D. Va. Apr. 29, 2019) ................................................................... 5

*Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*,
574 F.3d 852 (7th Cir. 2009) ........................................................................................... 4

*Steele v. United States*,
2015 WL 4121607 (D.D.C. June 30, 2015)..................................................................... 15

**RULES**

Fed. R. Civ. P. 23(g)(1)(A)............................................................................................... 5

Fed. R. Civ. P. 24.............................................................................................................. 14

**OTHER AUTHORITIES**

7A Fed. Prac. & Proc. Civ. § 1769.1 (Westlaw 3d ed. Sept. 2018)...................................... 5

Manual for Complex Litigation, Fourth at § 10.221 (2004) ................................................. 2

*The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc.*,
73 N.Y.U. L. Rev. 765 (1998) ........................................................................................... 9

Plaintiffs Alain Michael, Andrew Schwartz, and Alice Vitiello (collectively, the "*Michael* Plaintiffs") submit this response in opposition to: (i) Plaintiff Salzhauer's motion to appoint DiCello Levitt Gutzler LLC, Pearson, Simon & Warshaw, LLP, and Reese LLP (collectively, the "DPR Team") as co-lead interim class counsel in this action, and (ii) Plaintiff Sabeehullah's motion to appoint Saeed & Little, LLP (the "S&L Firm") as one of three unspecified co-lead counsel. *See* Dkt. 70-1 (the "DPR Application"); Dkt. 66 (the "S&L Application") (together, the "Competing Applications").

## I. INTRODUCTION

As set forth in their motion, the *Michael* Plaintiffs propose that the Court appoint their counsel, Bursor & Fisher, P.A. ("Bursor & Fisher"), as sole interim class counsel, with Wolf Haldenstein Adler Freeman & Herz LLC ("Wolf Haldenstein" or "WHAFH") as local counsel, and the Animal Legal Defense Fund ("ALDF") as supporting counsel. *See* Dkt. 69 (the "Bursor Application"). Bursor & Fisher is qualified to serve in that role given its substantial nationwide consumer class action experience, knowledge of the applicable law, and substantial resources.

This simple case does not require a three-firm co-lead structure. Adopting such an unwieldy structure would unjustifiably increase attorneys' fees and costs that may derogate from any relief received by the putative class, and would promote delay and litigation inefficiency. Critically, the Competing Applications fail to demonstrate *why* three firms are necessary to lead this litigation. Not only is this proposed structure bloated and unnecessary, but the DPR Team in particular has already multiplied the proceedings by initiating a then-unnecessary MDL proceeding and then working with even more law firms to file copycat cases across the country, effectively creating an 8-firm team rather than a 3-firm team. That conduct should not be condoned, let alone rewarded.

Given these considerations, Bursor & Fisher should serve as sole interim class counsel. The firm has already demonstrated that it is perfectly capable of managing this litigation alone, given that its factual and legal investigation resulted in the first-filed complaint that the DPR Team – and their supporting colleagues – then mimicked in their subsequently-filed complaints. *See* Bursor App. at 3-4. Bursor & Fisher's performance in resolving numerous class actions further demonstrates that it has the resources and experience to bring this matter to a satisfactory resolution for the benefit of the class. *See id.*; 12/6/19 Krivoshey Decl. Ex. 1 (Dkt. 69-1). Further, unlike anyone on the DPR Team, Bursor & Fisher is willing to try class action cases, having tried six consumer class action cases since 2008 and obtained recoveries ranging from $21 million to $299 million in all six cases. *Id.*

## II. THE COMPETING APPLICATIONS FAIL TO EXPLAIN WHY A BLOATED 3-FIRM CO-LEAD STRUCTURE IS NECESSARY

The "most important" objective in appointing interim class counsel is "achieving efficiency and economy without jeopardizing fairness to the parties." Manual for Complex Litigation, Fourth at § 10.221 (2004) (the "Manual"). However, structures such as the one proposed here by the Competing Applications are frequently bloated, inefficient, and usually unnecessary. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *9 (N.D. Cal. Mar. 4, 2013) ("This Court agrees with other district courts that have acknowledged the tendency of shared leadership structures to complicate, muddle, and otherwise bloat litigation."); *In re Jones Soda Co. Sec. Litig.*, 2008 WL 418002, at *3 (W.D. Wash. Feb. 12, 2008) ("The potential for duplicative services, leadership discord, and increased attorney's fees militate against the appointment of multiple law firms, … especially in cases where one law firm has the proven ability to adequately manage and litigate … class actions.") (emphasis added).

Here, the DPR Team merely insists that it "is a lean structure, with the right combination of talent, personalities, and experience to best and most efficiently prosecute *this* case, in *this*

Court, against *these* Defendants." DPR App. at 3 (emphasis in original). But despite this emphasis, their opening brief makes no effort to demonstrate *why* their leadership structure is necessary in this case, or what each firm would be contributing.[1] "Such explanation is necessary since appointing multiple firms raises real risks of duplication of effort and unnecessary attorneys' fees." *Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *4 (S.D.N.Y. Dec. 1, 2016). In other words, the Competing Applications go:

> no further than pointing out that they would be capable of representing the putative class in this matter. [The Competing Applications] nowhere demonstrate[] why the Court should appoint [three] separate law firms, each of which are qualified, as co-lead counsel in what is not an unusually complex case. They do not point to any tangible advantage of having a [three firm] structure, such as fair representation of putative class members with conflicting interests, and fail to dissuade the Court that the [three]-way structure would serve no purpose other than to increase the likelihood that additional fees and expenses will be imposed upon the putative class members. Nor [is there] any need to create additional conflict between counsel for [the *Michael* Plaintiffs] and [the *Salzhauer* and *Sabeehullah* Plaintiffs] by forcing them to unwillingly work together as co-leaders of the putative class. <u>Thus, while it is clear that [these] counsel could represent the class if necessary, they have offered no justifiable reason to impose the proposed [three]-way leadership structure at this stage.</u>

*Ekin v. Amazon Servs., LLC*, 2014 WL 12028588, at *4 (W.D. Wash. May 28, 2014) (emphasis added).[2]

---

[1] The DPR Team asserts that its proposed structure "dispenses with the need for local, or liaison counsel and <u>spreads litigation risk sufficiently</u>." DPR App. at 3-4 (emphasis added). However, this not only calls into question the resources they are able to commit, but also ignores that replacing local and liaison counsel with two additional co-leads leads to additional inefficiencies due to the need for consultation prior to making any litigation decisions.

[2] The S&L Application heavily depends on the belief that this "litigation would also greatly benefit from the leadership appointment of an Indiana based law firm." S&L App. at 5. However, as the JPML recognized in transferring the MDL to this Court, "Defendant fairlife is headquartered in Chicago, and its marketing decisions for the subject milk products likely were conceived and executed there. Moreover, Chicago is less than one hundred miles from Fair Oaks, Indiana, where the farm at which the alleged animal abuse occurred is located." JPML Dkt. 48 at 2. In other words, the participation of an Indiana firm is not necessary to effectively litigate this case, especially since Wolf Haldenstein is in Chicago and that this case is not solely about the Fair Oaks Farm in Indiana, but rather concerns all 30 of the farms – based across the

*In re Welspun Litigation*, 16-cv-06792-VLB-DCF (S.D.N.Y.) is also instructive as it involved a similar scenario where Bursor & Fisher sought sole lead counsel status when it believed the competing proposed multi-firm leadership structure would be a detriment to the class. Judge Sullivan agreed, explaining:

> Here, the two applications differ significantly in their proposed leadership structure. The Bursor Application calls for a single firm, Bursor & Fisher[, P.A.], to serve as lead counsel. … The Hagens Application calls for two firms – Hagens Berman Sobol Shapiro LLP and Steckler Gresham Cochran PLLC – to co-lead a larger executive committee comprised of two additional firms. … However, the Hagens application fails to explain why this straightforward case, which consolidates a mere four suits involving essentially identical factual allegations, requires the convoluted leadership structure proposed by Hagens. Indeed, the Court is concerned that the involvement of so many different firms would lead to the kind of "duplicated efforts" and "wasted resources" that the appointment of lead counsel is meant to avoid.

12/13/19 Krivoshey Decl. Ex. 9, *In re Welspun Litig.*, 1:16-cv-06792-VLB-DCF, Dkt. 58 at 3 (S.D.N.Y. Jan. 26, 2019) (citing *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 75 (S.D.N.Y. 2000)).[3]

Moreover, other than their firm resumes, DPR Team offers nothing else to support their application. As another court explained, that is insufficient:

> Plaintiff seeks the appointment of three different law firms as class counsel. … However, none of counsel's declarations provide a

country – that supply the milk to fairlife. Furthermore, appointment of a single firm obviates the need to "enter a common benefit order to govern the potential compensation and expense reimbursement to those firms working on behalf of all plaintiffs." S&L App. at 9. *See Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("Though efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.").

[3] *In re Navistar*, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015) is not to the contrary. A multi-firm structure made sense there, despite the smaller class size, because it was a complicated automotive defect case that ultimately resulted in "73,901.53 hours and $31,590,660.40 in lodestar from the 15 firms that conducted the most work on behalf of the" class. *See* Selbin Decl. ¶ 28 available at https://www.maxxforce11and13.com/admin/services/connectedapps.cms.extensions/1.0.0.0/asset?id=832415b1-fe8f-46d6-a2d9-666a8523a528&languageId=1033&inline=true.

> description of the services and resources devoted to representing the class under Rule 23(g)(1)(A)(iv). And counsels' descriptions of the work performed under Rule 23(g)(1)(A)(i) are generic and do not provide a clear sense of what has actually been accomplished by each law firm or attorney. Without this information, which the federal rules mandate the Court consider, the requested appointments must be denied.

*Reid v. I.C. Sys. Inc.*, 2015 WL 12990169, at *6 (D. Ariz. July 9, 2015); *see also Riggleman v. Clarke*, 2019 WL 1903795, at *4 (W.D. Va. Apr. 29, 2019) ("The 'extreme importance of the inquiry into the adequacy of class counsel means that the court should not be easily satisfied with a self-serving and one-sided statement by the class attorney that he meets the requirements of the rule.'") (quoting 7A Fed. Prac. & Proc. Civ. § 1769.1 (Westlaw 3d ed. Sept. 2018)). Since there is no explanation why the proposed co-lead structure is necessary here, and in light of the costs to class members, the Court should appoint Bursor & Fisher as sole interim class counsel.

## III. THE DPR TEAM MANUFACTURED SUPPORT FOR THIS MDL IN AN ATTEMPT TO JOCKEY FOR LEADERSHIP

The DPR Team also asserts that its "diverse experience in litigating a variety of cases is also reflected by the support the slate has received from a majority of the other attorneys and plaintiffs in this MDL." DPR App. at 2-3. Even if a majority of the firms involved have reached a consensus as to a leadership structure, that structure must still be necessary to prosecute the case. *See* Manual § 10.224 ("While it may be appropriate and possibly even beneficial for several firms to divide work among themselves, <u>such an arrangement should be necessary, not simply the result of a bargain among the attorneys</u>.") (emphasis added). It is not. The only reason these supporting parties are even in this litigation were to justify the MDL after the fact.

Indeed, had the DPR Team filed *Salzhauer* in the Northern District of Illinois – home to both fairlife and proposed co-lead counsel DiCello Levitt – the *Salzhauer* case most likely would

have been stayed or otherwise consolidated with *Michael* pursuant to the first-filed rule.[4] Having missed the opportunity to be first-filed (or even second-filed), on June 13, 2019, the DPR Team opted to file *Salzhauer* in Atlanta, GA. As the undersigned was in the process of informally consolidating the *Michael* and *Schwartz* actions, *see* Dkt. 17, the DPR Team filed their MDL petition on June 24, 2019 without even attempting to explore the possibility of informal consolidation. 12/13/19 Krivoshey Decl. ¶ 3. As the *Michael* Plaintiffs explained in their July 15, 2019 response in opposition to the DPR Team's MDL petition, the petition was premature particularly because the threat of potential tag-along cases never materialized:

> Movant [Salzhauer] argues that "[w]ith four Actions in three different Districts … the size of this litigation weighs in favor of transfer." … However, there are effectively only three pending cases as the Illinois Plaintiffs are already cooperating to achieve informal consolidation in front of Judge Robert M. Dow Jr. … Whether 3 cases or 4, the Panel regularly denies centralization in similar circumstances. … Moreover, Movant [Salzhauer] made no effort to have any discussions regarding a Section 1404 transfer prior to bringing this motion. And although Movant [Salzhauer] argues that "a number of tag-along cases will almost certainly be filed in the near future," … none have materialized.

7/15/19 *Michael* MDL Response, MDL Dkt. 9 at 5 (emphasis added).

On August 15, 2019, the JPML scheduled oral argument for September 26, 2019. As of September 12, 2019, just three cases were pending – *Michael* (consolidated with *Schwartz*), *Salzhauer*, and *Sabeehullah*. However, in the two weeks leading up to the oral argument, four new actions were suddenly filed – *Henderson* (September 13, 2019), *Niagi* (September 19, 2019), *Abowd* (September 24, 2019), and *Olivo* (September 25, 2019) (collectively, the "Copycat Cases"). *See* Bursor App. at 3-4 (illustrating the copy-cat nature of these late-filed complaints). These four

[4] *See, e.g.*, *Nicholson v. Nationstar Mortg. LLC of Delaware*, 2018 WL 3344408, at *4 (N.D. Ill. July 6, 2018) ("When duplicative actions are filed in different federal courts, 'the general rule favors the forum of the first-filed suit.' … '[D]istrict courts normally stay or transfer a federal suit for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court.'") (internal citations omitted).

filings, together with the untimely MDL response filed by Plaintiff Olivo in support of the DPR Team's request for transfer to the Northern District of Georgia, confirmed Bursor & Fisher's suspicions that something was happening behind the scenes. *See* MDL Dkt. 41.

On November 8, 2019, Bursor & Fisher emailed all counsel following the JPML's transfer order to begin the process of preparing the joint organization and management plan. *See* 11/9/19 Email Chain, 12/6/19 Krivoshey Decl. Ex. 7. The DPR Team – led by Mr. Levitt – initially refused to participate. *See id.* at 3 (Adam J. Levitt, *Salzhauer* counsel, 8:36 a.m.: "[E]ven if Judge Dow actually intended for the parties to discuss these issues prior to (and at ) the November 26 status conference, no firm or binding decisions should (or can) be made on any of these issues at this time."); *id.* (9:43 a.m., Graham LippSmith: "Our firm joins in Adam's interpretation and position on this."); *id.* at 7 (Hassan Zavareei, 9:56 a.m.: "I concur with Adam's view on this."); *id.* at 9 (11:45 a.m., Ken Canfield: "I concur with Adam's view. If you file something independently in the face of this opposition, your motive will be as self-evident to the Court as it is to the rest of us. But you can obviously do what you want.").[5]

The DPR Team, without explanation, suddenly reversed course once the Court issued its November 13, 2019 order correcting a clerical order. *See id.* at 15 (Melissa S. Weiner: "I am counsel for Plaintiff Salzhauer. We plan to send redlines to the draft report you circulated by COB on Monday. We ask that you hold on filing until we provide our input."). On November 17, 2019, Ms. Weiner circulated Plaintiff Salzhauer's proposed redlines which disclosed for the first time that the DPR Team secretly mediated with the McCloskeys and Select Milk Producers on October 31, 2019, the day after the JPML's transfer order:

> On October 31, 2019, <u>counsel for Plaintiff Salzhauer</u> participated in a mediation session with the Honorable Wayne Andersen, Ret. Of

[5] As this exchange makes clear, the "support" from these counsel is illusory such that the 3-firm DPR Team is properly viewed as an 8-firm team that has collectively filed five separate actions, including four within two weeks of the JPML hearing.

> JAMS and with Defendants Mike McCloskey, Sue McCloskey, and Select Milk Producers, Inc. While no substantive agreement have yet been reached, discussions are ongoing. No settlement discussions have occurred with any of the other Defendants in this action.

12/13/19 Krivoshey Decl. Ex. 10 (emphasis added). These are the same parties that obstructed the preparation of the joint management and organization plan.[6] Following pushback from Bursor & Fisher, the DPR Team further justified its conduct to avoid bad optics:

> That mediation session had been agreed to and scheduled well before the JPML granted the motion to transfer and consolidate and before this Court had been selected by the JPML as the transferee court. Moreover, at the time the mediation was agreed to, it appeared that counsel for other Plaintiffs would oppose transfer and consolidation outright and/or would oppose transfer to and consolidation before this Court.

Dkt. 61 at 9 (emphasis added).

But that is nothing but pretext. First, the mediation was solicited by the DPR Team almost immediately after they filed the *Salzhauer* complaint, but we do not know how, when, or why this mediation came to be due to the lack of any attorney declaration. *See* 12/13/19 Krivoshey Decl. Ex. 11, 11/26/19 Hearing Tr. at 12:5-10 ("Mr. Levitt and I were in the middle of a lengthy mediation in the Navistar MDL before Judge Gottschall, using Judge Andersen, and Adam filed this case and contacted me and said, 'Do you have any interest in an early mediation here?' And I said, 'As a matter of fact, perhaps.'"). Second, the DPR Team's belief that we "would oppose transfer and consolidation" is belied by the position we took in our MDL papers. *See* MDL Dkt.

[6] Counsel for the McCloskeys and Select also joined the DPR Team in refusing to participate in the joint statement. *See* 12/6/19 Krivoshey Decl. Ex. 7 at 5 (Mark S. Mester, the McCloskey's counsel, 9:27 a.m.: "Speaking for our clients, I certainly agree, and what you wrote is definitely consistent with my understanding of the letter and spirit of Judge Dow's Order."); *id.* at 10 (Tim Hardwicke, Select's counsel, 2:43 p.m.: "Select has the same understanding of Judge Dow's Order reflected by Adam's email."). While puzzling to us at first, once the DPR Team disclosed the mediation, it became clear that they were working together with these defendants to keep the October 31, 2019 mediation a secret for as long as possible.

9 at 1 ("Movant's decision to engage the [JPML] for only four actions before exploring available alternatives – such as transfer pursuant to Section 1404 and the first-filed rule – is procedurally improper and should be denied on that ground alone. However, should the Panel conclude that consolidation and transfer is appropriate, the Illinois Plaintiffs submit that Judge Robert M. Dow Jr. in the Northern District of Illinois is the proper transferee court."). In any event, no one from the DPR Team, the Copycats, Select, or the McCloskeys ever attempted to discuss an informal alternative, even after the JPML hearing occurred and Bursor & Fisher had explicitly dropped its opposition to the MDL due to the filing of the Copycat Actions. 12/13/19 Krivoshey Decl. ¶ 4.

Despite this conduct, the DPR Team argues for appointment because it "has demonstrated its ability to 'engag[e] in negotiation with [the defendants] regarding a potential class-wide settlement.'" DPR App. at 14 (citation omitted). If anything, this conduct is alarming as it could potentially jeopardize the class's interests. As one class action commenter observed:

> The plaintiff/lawyer shopping problem arises when a second competing class action covering the same or a related set of claims is filed (or, for that matter, when a class attorney is worried that a competing action may be filed). When there are competing class actions, the outcome of the action that is concluded first is binding on the whole class. Because judges typically award attorneys' fees predominantly to the lawyers who act as class counsel in their courts, each set of competing lawyers has a strong financial incentive to bring its action to a speedy conclusion. Defendants, well aware of these incentives, can thus go plaintiff and lawyer shopping. By indicating that they will deal with class counsel who is willing to settle for the least, they implicitly create a "reverse auction" in which competing lawyers "underbid" each other in order to have their own action settled first and earn attorneys' fees.

12/13/19 Krivoshey Decl. Ex. 12, Marcel Kahan & Linda Silberman, The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc., 73 N.Y.U. L. Rev. 765, 775 (1998). The DPR Team does not deserve to be rewarded for effectively creating a reverse auction, well after the JPML consolidated the actions in this MDL, knowing full well that the Court was going to need to appoint interim class counsel in the near future.

Further, the purpose of the mediation was purportedly "to determine if intermediary steps could be taken to assure the welfare of the dairy cows used by Defendants that provide the milk for fairlife! products, and ensure that the alleged inhumane treatment of these animals stopped." DPR App. at 14-15. But the McCloskey's counsel admitted at the November 26, 2019 hearing, the mediation was not just about injunctive relief for the animals as claimed by the DPR Team, but was a blatant attempt at early resolution. *See* 12/13/19 Krivoshey Decl. Ex. 11, 11/26/19 Tr. at 12:19-13:1 ("THE COURT: And at the moment, there's no settlement on the offing in any respect. It sounds like what you're talking about sounds more, like, injunctive than monetary, and that's - MR. MESTER: I think that's an issue we see a little differently …").

Bursor & Fisher submits that it explored mediation the correct way – during the parties' July 2019 26(f) conference in *Michael*. After meeting and conferring with counsel for fairlife, Coca-Cola, and the McCloskeys, the parties jointly agreed to pursue private mediation *after* the MDL-related issues were resolved, not before, thereby avoiding the obvious spectacle of the reverse auction created by the DPR Team. *See* Dkt. 29 at 9 ("The Parties have not engaged in any settlement discussions to date. The Parties, however, would be amenable to private mediation following the JPML's ruling on consolidation.").

## IV. BURSOR & FISHER CAN MANAGE THIS LITIGATION ON ITS OWN

### A. Bursor & Fisher's Experience Is The Right Fit For This Case

As set forth in its 23(g) motion, Bursor & Fisher has handled hundreds of consumer class action cases and recovered hundreds of millions of dollars for class members across the country. *See* Bursor App. at 9-10. Apart from the typical challenges present in every Rule 23 class action and MDL, this matter does not involve any particularly challenging case management concerns, and the Competing Applications identify none. As Judge England noted, "Bursor & Fisher is eminently qualified to represent a class in this type of nationwide litigation," particularly because

the firm is an "expert[] on issues related to choice of law and conflict of laws that are inherent in a case of this nature." *Melgar v. Zicam, LLC*, No. 2:14-cv-00160-MCE-AC, Dkt. No. 21 at 11 (E.D. Cal. Oct. 29, 2014); *see also Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019); 12/6/19 Krivoshey Decl. Ex. 1.

The competing applicants, on the other hand, lacks the breadth of experience that Bursor & Fisher possesses in the area of mislabeled consumer products. As Ms. Keller's online resume makes clear, her industry experience lies in automotive, insurance, and data privacy cases.[7] In the one mislabeling case she does identify, *In re ConAgra*, she had limited involvement since she joined Mr. Levitt's firm while that case was already on appeal. *See* DPR App. at 5 n.5.[8] Ms. Weiner's experience is also apparently confined to "all natural" cases which are generally not as complex as the more typical consumer cases. *See, e.g.*, *In re: Skinnygirl Margarita Beverage Mktg. & Sales Practices Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("The Panel found that the factual questions surrounding whether the defendants deceptively marketed their beverage products as being all natural when those beverages contain high fructose corn syrup did not appear to be sufficiently complex or numerous to warrant centralization."). As for Mr. Reese, he personally has 35 active matters pending in federal courts alone. *See* 12/13/19 Krivoshey Decl. ¶ 7, Ex. 13. With a total of 7 attorneys working for him, this heavy caseload calls into question his ability to commit the time and resources necessary to properly litigate this action, especially in light of his failure to submit a declaration in support of his application. *See* DPR App. Ex. C. The

---

[7] https://www.dicellolevitt.com/attorney/amy-e-keller/

[8] Bursor & Fisher established the ascertainability standard in the Second Circuit for consumer mislabeling cases in late 2013. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("Against this background, the ascertainability difficulties, while formidable, should not be made into a device for defeating the action."); *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015) (citing *Ebin* approvingly); *In re Petrobras Sec.*, 862 F.3d 250, 267 (2d Cir. 2017) ("Meanwhile, *Brecher* cited approvingly to *Ebin*, which explicitly disagreed with *Weiner*'s ascertainability analysis.") (citing *Ebin*, 297 F.R.D. at 567).

S&L Firm's experience is similarly limited given a lot of its work has focused on sexual abuse cases, constitutional marriage rights cases, and consumer protection cases prosecuted on behalf of individuals. *See* Dkt. 66-1.

In sum, the experience of the DPR Team and the S&L Firm renders them not the right fit to lead this case when compared to Bursor & Fisher's extensive false and misleading product experience. The Court should therefore appoint Bursor & Fisher as sole interim class counsel as the firm is not only capable of managing this litigation on its own, it will be able to do so with greater litigation efficiency and at a lower cost to class members.

**B. The Competing Applications Lack Bursor & Fisher's Trial Experience**

What truly sets Bursor & Fisher apart from the DPR Team and S&L Firm is its industry-leading consumer class action trial experience. A review of these firms' resumes reveals a lack of consumer class action trial experience. For example, Reese LLP's resume details page upon page of Mr. Reese's professional activities and speaking engagements, yet there is not one mention of involvement in a single class action trial – either by him or any of the seven lawyers at his firm. *See* DPR App. Ex. C. A search of Dicello, Levitt & Gutzler's firm resume shows a similar lack of class action trial experience. While their resume references a patent infringement lawsuit, a licensing dispute, and a breach of contract action each tried to verdict, there is again no mention of any class action trial experience. *See id.* Ex. A at 4-5. Similarly, the resume of Pearson, Simon & Warshaw, LLP references only two cases brought to trial, neither of which involved deceptive consumer product labeling. *See id.* Ex. B at 2 (detailing the firm's involvement as trial counsel in antitrust and price-fixing cases). The same is true of the S&L firm as Jonathan C. Little – who is not on the papers – is the only attorney at S&L who has experience trying cases "for offenses ranging from cock fighting to murder." Dkt. 66-1 at 4.

In contrast, Bursor & Fisher has tried six consumer class action cases and won all six trials – obtaining recoveries ranging from $21 million to $299 million. 12/6/19 Krivoshey Decl. Ex. 1. Just this May, Bursor & Fisher's attorneys Scott A. Bursor and Yeremey Krivoshey, acting as lead trial counsel, won a $267 million jury verdict in a Telephone Consumer Protection Act ("TCPA") case before Judge Yvonne Gonzalez Rogers in the Northern District of California. *See id.* at p.4. Bursor & Fisher's trial experience sets it apart from other firms. Defendants know that Bursor & Fisher, unlike most other plaintiff firms in the class action field, is not bluffing when it says that it can and will take a case to trial. The very real prospect of going to trial (and securing victory) can drastically increase the size of a potential settlement and the value of a case. In addition to the other factors noted above and in Bursor & Fisher's opening papers, the firm's trial experience alone makes it the best choice to serve as sole interim class counsel.

**C. Bursor & Fisher's Partnership With The Animal Legal Defense Fund**

The DPR Team makes much ado about its purported work in conjunction with Compassion Over Killing ("COK"), claiming that together, they "have been investigating fairlife!'s deceptive animal welfare-related advertising claims since 2016 in a collaborative effort with COK, a nonprofit, tax-exempt 501(c)(3) organization whose mission is to end cruelty to farmed animals." DPR App. at 14. However, without the benefit of a single declaration from COK or the DPR Team, it is impossible to know the nature of the work, when it occurred, when the DPR-COK relationship even began, and whether COK was even present at the mediation session that purportedly focused only on the animals' welfare. Nor do they explain how they used or otherwise incorporated any of this information into the *Salzhauer* complaint which otherwise heavily relied on Bursor & Fisher's work product from the *Michael* complaint. *See* Bursor App. at 3-4. Moreover, COK's role going forward is unclear given that it "will not be entering a notice of appearance" in this litigation. DPR App. Ex. D at 1.

Regardless, Bursor & Fisher also teamed up with an animal advocacy group, the Animal Legal Defense Fund, early in this litigation. 12/6/19 Krivoshey Decl. ¶ 2. As already explained, "ALDF has been investigating fairlife's animal welfare practices since October 2017, … [and] has focused on Defendant fairlife, LLC's supply chain and consumer representations. … To that end, ALDF submitted FOIA requests to the federal Food and Drug Administration and submitted public records requests pursuant to the Indiana Access to Public Records Act." Bursor App. at 3. Like COK, "ALDF and its agents have conducted undercover investigations at animal facilities around the country," and also "employs a team of 11 full-time civil litigation attorneys." 12/13/19 Eliseuson Decl. ¶ 2. Moreover, ALDF and COK have worked cooperatively together in the past, most recently in November. *See N. Am. Meat Inst. v. Becerra*, 2019 WL 6253701, at *1 (C.D. Cal. Nov. 22, 2019) ("The next day, several animal welfare organizations [including] the Humane Society of the United States, the Animal Legal Defense Fund, … and Compassion Over Killing[,] … filed a motion to intervene as defendants pursuant to Federal Rule of Civil Procedure 24, as well as a brief in opposition to NAMI's PI motion."); 12/13/19 Eliseuson Decl. ¶ 3. As such, Bursor & Fisher and ALDF welcome the opportunity to work directly with COK here. *Id.* ¶ 4.

## V. THE FIRST-FILED RULE FURTHER SUPPORTS APPOINTING BURSOR & FISHER INTERIM CLASS COUNSEL

As courts nationwide have recognized, the first-filed rule is "a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker." *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013). That is especially true where, as here, "a simple comparison of the original complaint … with the [later-filed complaints] reveals that they are almost identical." *Carlin v. DairyAmerica, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009); *see also In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (where a firm has "filed the first complaint[] in [the] case, and

the subsequent complaints filed … are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action").

To the extent the question over leadership is a close call here, the Court should use the first-filed rule as "an objective tie-breaker" and appoint Bursor & Fisher as interim class counsel. *See Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (deciding to appoint class counsel in part because they "filed the first complaint in this litigation"); *Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel.").

## VI. CONCLUSION

For the reasons set forth above and in their opening papers, the *Michael* Plaintiffs respectfully request that the Court appoint Bursor & Fisher as interim class counsel and Wolf Haldenstein as local counsel, and deny the Competing Applications in their entirety.

Dated: December 13, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Yeremey Krivoshey_

Frederick J. Klorczyk III
Yeremey Krivoshey (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: fklorczyk@bursor.com
ykrivoshey@bursor.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
E-mail: malmstrom@whafh.com

**ANIMAL LEGAL DEFENSE FUND**
Anthony Eliseuson
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
Telephone: (707) 795-2533
E-mail: aeliseuson@aldf.org

*Counsel for the Michael Plaintiffs*