**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: FAIRLIFE MILK PRODUCTS | ) | MDL No. 2909 |
| MARKETING AND SALES | ) | Master Case No. 19-cv-3924 |
| PRACTICES LITIGATION. | ) | Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, the Court appoints Amy E. Keller of DiCello Levit Gutzler LLC, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, and Michael R. Reese of Reese LLP as co-lead interim class counsel in this MDL, for a term of one year, renewal upon application 30 days prior to the expiration of their current term. This case is set for further status hearing on February 25, 2020, at 10:00 a.m. Please see below for further case management deadlines and items of note for all counsel of record in this litigation to consider prior to the next status hearing.

**I.     Background**

On November 7, 2019, the Court entered an initial status order [35] setting this MDL for an initial status hearing on November 26, 2019. On November 22, 2019, counsel filed a joint organization and management plan [61]. As of that date, this MDL consisted of eight separate actions that had been filed in six jurisdictions across the country. No additional actions have been added to the MDL. However, counsel have advised the Court [see 73] that on January 3, 2020, Defendant Coca-Cola Company announced that it has acquired the remaining stake in Defendant fairlife LLC and now owns 100% of fairlife.

At the November 26 status hearing, the Court set a schedule for applications to serve as interim class counsel. Three contenders for leadership positions have emerged: (1) Plaintiffs in the *Michael* and *Schwartz* actions seek the appointment of Bursor & Fisher, P.A. as interim class counsel, with Wolf Haldenstein as local counsel, and the Animal Legal Defense Fund as

supporting counsel [see 69]; (2) Plaintiffs in the *Salzhauer* action have put forward three lawyers—Amy Keller of DiCello Levit Gutzler LLC, Melissa Weiner of Simon & Warshaw LLP, and Michael Reese of Reese LLP, collectively referred to as the "DPR Group"—as proposed co-lead interim class counsel [see 70, 71], and (3) Plaintiffs in the *Sabeehullah* action have requested the appointment of Syed Ali Saeed of Saeed & Little, LLP as co-lead counsel in a proposed leadership structure of three co-lead lawyers [see 66]. Counsel for Plaintiffs Ngai, Olivo, and Henderson have endorsed the DPR Group's application [see 65, 67, 68]. Counsel for Plaintiff Abowd supports the inclusion of Saeed & Little in the leadership team [see 66-2].

## II. Legal Standard

As the Court previously noted [see 35, at 2], the duties for lead counsel are set forth in Section 40.22 of the MANUAL FOR COMPLEX LITIGATION, FOURTH, and are set out below (as appropriate and tailored to this litigation) in the Court's formal appointment order. There are many sound descriptions of the Court's task in selecting lead counsel in an MDL in the case law and secondary literature. One of the more helpful (and succinct) of these is Best Practice 3C of the Duke Law Bolch Institute's "best practice" manual, which states that "[t]he judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 38 (2d ed. Sept. 2018), available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Bolch Guidelines"). In addition, it bears mentioning that where, as here, Plaintiffs' counsel expect to seek class certification, the Court must look to Federal Rule of Civil Procedure 23(g), which states that, in appointing class counsel, the Court

"(A) must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment."

Fed. R. Civ. P. 23(g).

## III. Discussion

The Court has undertaken careful review of the applications and supplemental materials submitted by and in support of the candidates for interim class counsel. While the Court has some familiarity with a few of the applicants from prior cases, it has supplemented its base of knowledge through due diligence, including consultation with colleagues who have previously worked with applicants unknown to the Court. See Bolch Guidelines at 39 ("Judicial colleagues ─ and more recently special masters ─ are a valuable source of information for a transferee judge about the competence and professionalism of counsel who have appeared before them").

Fortunately, all of the applicants for leadership roles in this MDL appear to be well-qualified to serve in that capacity. Each has been involved in the investigation of the lawsuits that form this MDL; each has experience in handling food law and consumer protection cases; each

3

has experience with MDLs and similar complex litigation; and each appears to have sufficient staffing and financial resources to launch the litigation, undertake the necessary discovery, and litigate against well-funded adversaries representing corporations with enormous assets.

The *Michael* Plaintiffs note that their counsel "has already demonstrated that it is perfectly capable of managing this litigation alone, given that its factual and legal investigation resulted in the first-filed complaint." [72, at 2.] But the Court does not view the timing of the complaints as a major factor in selecting appropriate counsel in this instance. The time lag between the filing of the *Michael* action (June 11, 2019) and the *Salzhauer* action (June 13, 2019) was just two days. And all of the lawsuits followed shortly after the release by the Animal Recovery Mission of videos that were picked up by media outlets, including both television and newspapers here in Chicago. See, *e.g.*, "Retailers Remove Fairlife Products after Undercover Video Showing Animal Abuse at Fair Oaks Farms," NBC-5 Chicago, June 5, 2019, available at https://www.nbcchicago.com/news/national-international/fair-oaks-farms-video-jewel-osco-fairlife-animal-recovery-mission/78807/; "Alleged animal abuse at Fair Oaks Farms under investigation after activists release graphic video," Chicago Tribune, June 6, 2019, available at http://www.chicagotribune.com/business/ct-biz-fair-oaks-farms-alleged-animal-abuse-20190605-story.html. Although multiple applicants point to prior relationships with animal advocacy groups, including the group that took the videos, none claims to have had any direct knowledge of the facts giving rise to this litigation prior to the release of the videos or to have played a role in conducting the investigation that led to the taking of the videos. In these circumstances, a "first-filed" argument carries little weight.

One major difference between the competing proposals is the number of firms or individual lawyers who would be designated as lead interim class counsel. The *Michael* Plaintiffs favor the

appointment of a single firm—Bursor & Fisher—as interim class counsel, with two other firms affiliated as local and supporting counsel.  The DPR Group proposes a tripartite arrangement of co-lead interim class counsel.  Saeed & Little asks that it be included within a structure that also would include three co-leads.

As this Court previously has observed, the primary concern in appointing leadership of an MDL is to choose lawyers who will "efficiently and effectively represent the interests of" the Plaintiffs (*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 6050431, at *6 (N.D. Ill. Nov. 15, 2013)), whether they will be aggregated in a class protected by the strictures of Rule 23 or simply consolidated for pre-trial proceedings under 28 U.S.C. § 1407.  One could plausibly argue, as Bursor & Fisher has, that a "three-firm co-lead structure" is unwieldy and not necessary to lead this "simple" litigation.  On the other hand, diversity of viewpoints between co-lead counsel might create benefits to the class in the form of creative, out-of-the-box thinking that a single lead firm could miss.

Moreover, while the Court agrees that efficiency is important, it believes that the monthly *in camera* submission of billing records will create a better check on excessive fees and costs than counting the number of heads within the leadership structure on the Plaintiffs' side of the case.  This mechanism has been deployed effectively by MDL transferee judges.  While the Court does not anticipate meeting with CPAs to review the lawyers' submissions, as has been done in some of the larger MDLs, tracking the work in the case on a regular basis will enable the Court to assess whether counsel have honored their commitment to litigate the case efficiently.  Of course, even a smaller MDL like this one will involve several claims and theories of recovery, Plaintiffs situated from coast-to-coast, and a volume of work that will require the engagement of multiple lawyers at any given time.  Whether those lawyers are concentrated in one firm, with local and supporting

5

counsel, or spread out among multiple firms acting as co-leads, there is no reason to predict at the outset any material difference in the hours needed to perform the work. Moreover, adopting another innovation from experienced MDL judges, the Court's practice is to appoint MDL leadership (in class and non-class actions) for one year at a time, renewable upon application 30 days prior to expiration of their current term. See *In re: Dealer Management Sys. Antitrust Litig.*, MDL No. 2817, Case No. 18-cv-864, Docket Entry 123, at 5 (N.D. Ill. Apr. 16, 2018) (appointing interim lead counsel for one-year term); *id.*, Docket Entry 644, at 1 (N.D. Ill. Apr. 24, 2019) (renewing appointments for another year).

As noted above, the Court finds the applications of all would-be interim class counsel to be impressive and has confidence that Plaintiffs will be well-represented in this case. With that said, leadership still must be selected. On balance, the Court has determined that the cross-fertilization of ideas from multiple law firms is preferable to a single firm as lead counsel and confident that it will have in place the safeguards to ensure that a tripartite leadership structure will not result in duplication of work or other inefficiencies. While all of the applicants "are capable and experienced" and would "responsibly and fairly represent all plaintiffs," the DPR Group better captures "the benefits of diversity of experience, skills, and backgrounds." Bolch Guidelines at 38 & Best Practice 3C. Accordingly, the Court appoints Amy E. Keller of DiCello Levit Gutzler LLC, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, and Michael R. Reese of Reese LLP as co-lead interim class counsel in this MDL, for a term of one year, renewal upon application 30 days prior to the expiration of their current term. These appointments are personal in nature and the Court will look to these individuals to accept personal responsibility for performing the functions designated below. The Court retains discretion to revise the leadership structure of this MDL upon motion of the currently assigned co-lead counsel, any other counsel of record in the

case, and/or on the Court's own motion. The Court expects the lawyers tapped for leadership to assign work as appropriate to the lawyers on the Plaintiffs' side most capable of performing the tasks that will advance the litigation. For example, if non-leadership lawyers are best positioned by virtue of geography (either by having offices or pre-existing client relationships in key locations) or special skills (including trial experience) to do particular kinds of work, then that work should be assigned to them.

## IV.     Conclusion

As Plaintiffs' interim class counsel, the DPR Group shall be generally responsible for coordinating the activities of Plaintiffs during pretrial proceedings and shall

1. determine (after such consultation with other counsel as may be appropriate) and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) the position of Plaintiffs on all matters arising during pretrial proceedings;
2. coordinate the initiation and conduct of discovery on behalf of Plaintiffs;
3. identify witnesses to be noticed for deposition, schedule depositions, and determine the lead examiner(s) for each noticed deposition;
4. ensure compliance with Local Rule 37.2 before filing any discovery motions;
5. conduct settlement negotiations on behalf of plaintiffs, but not enter binding agreements except to the extent expressly authorized;
6. assign specific litigation-related tasks to other counsel who indicate their willingness to work for the common benefit of all Plaintiffs in a manner to ensure that pretrial preparation for Plaintiffs is conducted efficiently and effectively and taking into account the particular strengths and weaknesses of counsel requesting such assignments;
7. enter into stipulations with opposing counsel as necessary for the conduct of the litigation;
8. prepare and distribute periodic status reports to the parties;
9. maintain adequate time and disbursement records covering services as interim class counsel and submit them for *in camera* review as directed by the Court;
10. monitor the activities of co-counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and
11. perform such other duties as may be incidental to proper coordination of Plaintiffs' pretrial activities or authorized by further order of the Court.

It is anticipated that communications from Plaintiffs with the Court typically will be made through interim class counsel. However, if other counsel of record for Plaintiffs feel the need to communicate to the Court a divergent position from that taken or proposed by interim class counsel, they may do so after serving a copy of the communication on interim class counsel.

In regard to scheduling, interim class counsel are directed to file a consolidated amended complaint by March 9, 2020. Defendants are given until April 24, 2020 to answer or otherwise plead to the consolidated amended complaint. The February 25, 2020 status hearing will serve as a general case management conference. Interim class counsel are directed to be prepared to discuss whether a common benefit order should be entered, and all counsel for Plaintiffs are invited to present their views in the event of any disagreement on the Plaintiffs' side as to that issue. Unless the Court orders otherwise at the status hearing, both an ESI protocol and an agreed protective order should be filed no later than March 25, 2020. As discussed above, in the interest of promoting the efficient prosecution of this litigation, time and expenses are to be submitted on a monthly basis starting no later than 60 days after the entry of this order. Interim class counsel are directed to propose a protocol for implementing this requirement and should consider the proposal set out in Saeed & Little's submission [see 66, at 9-10].

Dated: January 22, 2020

_____
Robert M. Dow, Jr.
United States District Judge