# Exhibit 1

Settlement Agreement and Exhibits

*In re fairlife Milk Products Marketing and Sales Practices Litig.*
MDL No. 2909, Lead Case No. 19-cv-03924-RMD-MDW (N.D. Ill.)

Execution Copy

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release is entered into between and among (1) the Named Plaintiffs, on behalf of themselves and as representatives of the Settlement Class and (2) Defendants The Coca-Cola Company ("TCCC"), fairlife, LLC ("fairlife"), Fair Oaks Farms, LLC ("FOF"), Mike McCloskey and Sue McCloskey ("the McCloskeys"), and Select Milk Producers, Inc. ("Select") in order to effect a full and final settlement and dismissal with prejudice of all claims against Defendants alleged in the actions (as identified herein) comprising the multidistrict litigation proceeding known as *In re fairlife Milk Products Marketing and Sales Practices Litigation,* MDL No. 2909, Lead Case No. 1:19-cv-03924-RMD-MDW (N.D. Ill.), on the terms set forth below and to the full extent reflected herein.

## I.    DEFINITIONS

Capitalized terms, as used throughout this agreement, have the meanings set forth below.

1.      "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release, including all exhibits hereto.

2.      "Amended CCAC" means the Amended Consolidated Class Action Complaint filed with the Court in the Litigation.

3.      "Approved Claim" means a Claim Form submitted by a Settlement Class Member that is (a) submitted timely and in accordance with the directions on the Claim Form and the provisions of this Agreement; (b) is fully completed and executed by the Settlement Class Member under penalty of perjury and provides all required information (including, to the extent applicable, Valid Proof of Purchase); and (c) is approved for payment by the Claims Administrator pursuant to the terms of this Agreement.

4.      "ARM" means the Animal Recovery Mission.

1

5.     "Attorneys' Fees and Costs" means the total award of attorneys' fees, costs, and expenses sought by Class Counsel and allowed by the Court.

6.     "Auditor" means the qualified third party appointed by the Court to, in accordance with the Stipulated Injunction, carry out the responsibilities set forth in Section VI to audit the U.S. Select farms supplying fairlife milk.

7.     "Audit Costs" means the fees and costs paid to the Auditor to perform the Auditor's duties and to carry out the audits required by the Stipulated Injunction.  The Audit Costs shall be borne by Defendants.

8.     "CAFA Notices" means the notice of this Settlement to be served or caused to be served by Defendants upon State and Federal regulatory authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

9.     "Cash Award" means the cash payment(s) to Settlement Class Members pursuant to Section V.

10.     "Claims" means the act of requesting a Cash Award.  To make a Claim, Settlement Class Members must timely complete and submit a Claim Form as described in the Settlement Agreement.

11.     "Claim Deadline" means ninety days (90) days after the Fairness Hearing as scheduled in the Preliminary Approval Order, which date shall be specified in the Class Notice.

12.     "Claim Form" means the claim form that Settlement Class Members must complete and submit on or before the Claim Deadline to be eligible for the benefits described herein, which document shall be substantially in the form of Exhibit A hereto. The Claim Form shall require a sworn signature under penalty of perjury, but shall not require a notarization or any other form of

verification. No more than one claim per household shall be submitted or allowed as an Approved Claim.

13. "Claim Period" means the time in which the Settlement Class may file Claim Forms, up to and including the Claim Deadline.

14. "Claimant" means a purchaser of any Covered Product who submits a Claim Form, limited to no more than one Claim Form per household.

15. "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc., who was selected by Class Counsel and Defense Counsel after a competitive bidding process to work at their direction to administer specific components of the Settlement, including the oversight of publication of Class Notice, maintaining the Settlement Website, processing of Claim Forms in connection with this Settlement, and ensuring that Cash Awards are paid from the Escrow Account.

16. "Class Action Complaint" means the June 25, 2020 complaint filed on behalf of certain plaintiffs not named in the Consolidated Class Action Complaint, denominated as a related case to the Litigation, and captioned *Cantwell et al. v. The Coca-Cola Company et al.*, 1:20-cv-03739 (N.D. Ill.).

17. "Class Counsel" means Amy E. Keller of DiCello Levitt Gutzler LLC, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, and Michael R. Reese of Reese LLP.

18. "Class Member Payment List" means the list of Settlement Class Members who have been determined by the Claims Administrator to be eligible to receive Cash Awards.

19. "Class Notice" means the Court-approved forms of notice to Settlement Class Members, in substantially the same form as Exhibits B ("Published Notice") and C ("Official

Notice"), which will notify Settlement Class Members of the Preliminary Approval of the Settlement and the scheduling of the Fairness Hearing, among other things.

20. "Conditional Transfer Order" means the April 20, 2020 Order that the JPML entered to initiate the transfer of the *Honeycutt* Lawsuit to the Northern District of Illinois for coordinated or consolidated pre-trial proceedings with the Litigation before The Honorable Robert M. Dow, Jr.

21. "Consolidated Class Action Complaint" means the June 25, 2020 Consolidated Class Action Complaint Class Counsel filed on behalf of all actions transferred into the multidistrict litigation, 1:19-cv-03924 (N.D. Ill.), save for the *Honeycutt* Lawsuit, as defined herein.

22. "Court" means the United States District Court for the Northern District of Illinois.

23. "Covered Products" or "Covered Product" or "Milk Products" or "Milk Product" means the fairlife Milk Products and the FOF Milk Products. The Covered Products include without limitation the products listed on Exhibit D.

24. "CP" means fairlife Core Power Flavored High Protein Milk Shakes and all other products from fairlife's Core Power brand.

25. "*Cy Pres* Recipients" means (a) the U.S. Dairy Education & Training Consortium; and (b) The Center For Food Safety, each contingent upon approval by the Court. The Parties represent that neither they, nor their counsel, have any connection—professional or personal— with the *Cy Pres* Recipients.

26. "*Cy Pres* Contribution Amount" means amounts remaining in the Net Settlement Fund following payment of all amounts due to be distributed under this Agreement, including any maximum payment of Cash Awards and *pro rata* increase of Cash Awards. Without limiting the

foregoing, the *Cy Pres* Contribution Amount shall include all uncashed Cash Awards made by check.

27.    "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday in the State of Illinois.

28.    "Defendants" means TCCC, fairlife, FOF, the McCloskeys, and Select, collectively.

29.    "Defense Counsel" means Defendants' respective attorneys at Latham & Watkins LLP, GoodSmith Gregg & Unruh LLP, and King & Spalding LLP, collectively.

30.     "Deposit Amount" means the sum of three hundred fifty-three thousand eight hundred ninety-three dollars ($353,893.00), which amount Defendants shall pay or cause to be paid into the Escrow Account within ten (10) days after the Preliminary Approval Date to pre-pay certain of the Claims Administrator's fees and costs.  Payment of the Deposit Amount shall constitute a credit in like amount against the Settlement Amount.

31.    "Effective Date" means the first business day after which the Final Order and Judgment becomes a final, non-appealable judgment approving the Settlement Agreement in all respects, as more fully set forth in Section XVIII, below.

32.    "Employees with Direct and Regular Animal Contact" means those persons employed by a Select Member Farm Supplier to fairlife whose jobs involve direct interaction with animals during at least twenty percent (20%) of working hours.

33. "Escrow Account" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under the terms agreed upon with Class Counsel and Defense Counsel. The costs of administering and maintaining the Escrow Account shall be paid from the Settlement Amount.

34. "ESI Order" means an order regarding discovery of electronically stored information.

35. "fairlife" means fairlife, LLC.

36. "fairlife Milk Products" means all milk and dairy products, including ultra-filtered milk, protein shakes, creamers, beverages, yogurt, and ice cream produced, processed, marketed and/or sold by fairlife at any time up to and including the Preliminary Approval Date. The fairlife Milk Products include, without limitation, UFM and CP products.

37. "Fairness Hearing" means the hearing conducted by the Court to determine whether to approve this Settlement and to determine the fairness, adequacy, and reasonableness of this Settlement.

38. "FARM" means Farmers Assuring Responsible Management.

39. "Final," when referring to a judgment or order, means: (a) the judgment is a final, appealable judgment; and (b) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc,* petitions for writ of *certiorari,* or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects.

40. "Final Order and Judgment" means the order defined in Section XVI, except that any enhancement or reduction to an award of Attorneys' Fees and Costs, or to Service Awards shall not constitute a material alteration.

41. "FOF" means Fair Oaks Farms, LLC, an Indiana limited liability company.

42. "FOF Milk Products" means all fluid milk products (including all flavors, fat contents, and container sizes), produced, processed, marketed and/or sold by FOF and/or any of its wholly-owned affiliated entities (including but not limited to Farmers Foods LLC) at any time up to and including the Preliminary Approval Date. The FOF Milk Products include but are not limited to milk, yogurt, ice cream, butter, and eggnog.

43. "*Honeycutt* Complaint" means the March 12, 2020 class action complaint filed by Paula Honeycutt in the Northern District of Indiana against FOF, 2:20-cv-00099 (N.D. Ind.).

44. "*Honeycutt* Lawsuit" means the pending litigation related to the *Honeycutt* Complaint.

45. "JPML" means the Judicial Panel on Multidistrict Litigation.

46. "Litigation" means: (i) the actions comprising the multidistrict litigation proceeding known as *In re fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, Lead Case No. 1:19-cv-03924-RMD-MDW (N.D. Ill.) including: (a) *Michael v. fairlife, et al*., Case No. 1:19-cv-03924 (N.D. Ill., filed June 11, 2019); (b) *Schwartz, et al. v. fairlife, et al*., Case No. 1:19-cv-03929 (N.D. Ill., filed June 12, 2019); (c) *Salzhauer v. The Coca-Cola Company, et al*., Case No. 1:19-cv-02709 (N.D. Ga., filed June 13, 2019); (d) *Sabeehullah, et al. v. fairlife, et al*., Case No. 2:19-cv-00222 (N.D. Ind., filed June 17, 2019); (e) *Henderson v. The Coca-Cola Company, et al*., Case No. 1:19-cv-11953 (D. Mass., filed Sept. 13, 2019); (f) *Ngai v. fairlife, et al*., Case No. 2:19-cv-08148 (C.D. Cal., filed Sept. 19, 2019); (g) *Abowd v. fairlife, et al*., Case

No. 1:19-cv-04009 (S.D. Ind., filed Sept. 24, 2019); and (h) *Olivo v. The Coca-Cola Company, et al.*, Case No. 2:19-cv-08302 (C.D. Cal., filed Sept. 25, 2019); (ii) the Consolidated Class Action Complaint; and (iii) following the filing of the Amended CCAC, the Amended CCAC, including the actions comprising the Consolidated Class Action Complaint, the Class Action Complaint, and the *Honeycutt* Complaint.

47.     "McCloskeys" means Mike McCloskey and Sue McCloskey, collectively.

48.     "Mediator" means the Honorable Wayne R. Andersen (Ret.), a retired United States District Judge for the Northern District of Illinois, who currently serves as a Mediator for JAMS in complex litigation matters and who has extensive experience mediating and resolving complex class action lawsuits like the Litigation.

49.     "Mediator's Settlement Recommendation" means the November 7, 2021 recommendation provided by the Mediator to resolve the Litigation, the *Honeycutt* Lawsuit, and all related disputes.

50.     "Monitor" means the qualified third party selected by the Parties and approved and appointed by the Court to carry out the responsibilities set forth in Section VII to monitor compliance with the Stipulated Injunction.

51.     "Monitor Communications" means the information contained in the audits, the materials provided to the Monitor, communications with the Monitor, and other communications and reports discussed in Sections VI and VII.

52.     "Monitor Costs" means the fees and costs paid to the Monitor to perform the Monitor's duties required by the Stipulated Injunction.  The Monitor Costs shall be borne by Defendants.

53.     "Named Plaintiffs" means all plaintiffs named in the Amended CCAC.  These persons are Terri Birt; Carol Cantwell; Debra French; Karai Hamilton; Henry Henderson; Paula Honeycutt; Michelle Ingrodi; Jae Jones; Nabil Khan; Kaye Mallory; Christina Parlow; Cindy Peters; Jenny Rossano; David Rothberg; Eliana Salzhauer; Connie Sandler; Diana Tait; Demetrios Tsiptsis; and Arnetta Velez.

54.      "Net Settlement Fund" means the Settlement Amount minus any Court-approved Attorneys' Fees and Costs, Service Awards, and Notice and Administrative Costs.

55.     "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of publishing and disseminating the Published Notice and making available the Official Notice in accordance with the Preliminary Approval Order, including the Deposit Amount and any and all other reasonable and approved costs to carry out the approved Class Notice Program, as well as all reasonable and authorized costs and expenses incurred by the Claims Administrator in administering the Settlement, including, but not limited to, costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, issuing and mailing Cash Awards, paying Taxes and Tax Expenses, and other reasonable and authorized fees and expenses of the Claims Administrator.  Notice and Administrative Costs shall also include, subject to mutual agreement by the Parties, recommended reasonable and best efforts by the Claims Administrator to stimulate and maximize the claims rate for the Settlement Class to ensure that the maximum amount of the Net Settlement Fund goes to the Settlement Class as possible.

56.     "Notice Date" means the first day on which the Claims Administrator or its designee publishes or otherwise disseminates the Published Notice, which shall be no later than thirty (30) days after the Preliminary Approval Date.

57. "Opt-Out" shall refer to a member of the Settlement Class who properly and timely submits a request for exclusion from the Settlement Class as set forth in Section XII. An Opt-Out may rescind a request for exclusion by timely submitting a Claim Form to the Claims Administrator to obtain benefits of the Settlement.

58. "Opt-Out List" shall refer to the list compiled by the Claims Administrator pursuant to Section XII, Paragraph 12, identifying those members of the Settlement Class who properly opt out.

59. "Opt-Out and Objection Date" means the date by which a request for exclusion must be sent (and, if submitted online, verified) to the Claims Administrator in order for a Settlement Class Member to be excluded from the Settlement Class, and the date by which Settlement Class Members must file objections with the Court, if any, to the Settlement. The Opt-Out and Objection Date shall be one hundred and twenty days (120) after the Preliminary Approval Date.

60. "Parties" means the Named Plaintiffs and the Defendants. The Named Plaintiffs shall be referred to as one "Party" with Defendants being the other "Party."

61. "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, member, joint stock company, estate, legal representative, trust, unincorporated association, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

62. "Preliminary Approval Date" means the date the Preliminary Approval Order has been executed and entered by the Court.

63. "Preliminary Approval Order" means the order by which the Court directs Notice be issued to the Settlement Class after reviewing information sufficient to enable the Court to

determine whether to provide notice of the proposed Settlement, which is attached hereto without material alteration as Exhibit E.

64. "Protective Order" means the Stipulated Protective Order Regarding Confidentiality entered by the Court at Docket Entry 104 on July 8, 2020, in Case No. 1:19-cv-03924-RMD-MDW (N.D. Ill.).

65. "Release" means the release and discharge, as of the Effective Date, by the Named Plaintiffs and all Settlement Class Members (and their respective successors and assigns) who have not excluded themselves from the Settlement Class of the Released Persons (defined below) of and from all Released Claims (defined below). The release shall include the agreement and commitment by the Named Plaintiffs and all Settlement Class Members to not now or hereafter initiate, maintain, or assert against the Released Persons or any of them any of the Released Claims, whether in the Litigation or in any other court action or before any administrative body (including any regulatory entity or organization), tribunal, arbitration panel, or other adjudicating body.

66. "Released Claims" means any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets, or liabilities, whether known or unknown, legal, equitable, or otherwise, that were asserted or could have been asserted in the Litigation, including, but not limited to, tort claims, claims for breach of express warranty, breach of implied warranty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, breach of statutory duties, actual or constructive fraud, misrepresentations, fraudulent inducement, fraudulent concealment, statutory and consumer fraud, breach of fiduciary duty, unfair business or trade practices, restitution, rescission, compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties, claims relating to the alleged mislabeling of Covered Products and/or the alleged abuse or mistreatment of animals under

any theory of recovery, and any other claims, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Named Plaintiffs and/or any Settlement Class Member had, now have or may in the future up to the Preliminary Approval Date with respect to any conduct, act, omissions, facts, matters, transactions, or oral or written statements or occurrences on or prior to the Preliminary Approval Date arising from or relating to claims pertaining to the Covered Products as asserted, or that could have been asserted in the Litigation, including, without limitation, any allegation or assertion that Defendants made false and deceptive representations and warranties and omitted material information about the Covered Products or the manner in which the Covered Products were produced, as asserted in the Litigation by the Named Plaintiffs and/or the Settlement Class Members including, without limitation, causes of action for express warranty, unjust enrichment, and violations of Georgia's Uniform Deceptive Trade Practices Act, Georgia's Fair Business Practices Act of 1975, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Indiana Deceptive Consumer Sales Act, California's Consumers Legal Remedies Act, California's False Advertising Law, California's Unfair Competition Law, the Connecticut Unfair Trade Practice Act, the Florida Deceptive and Unfair Trade Practices Act, Maryland's Consumer Protection Act, the Massachusetts Consumer Protection Act, the Michigan Consumer Protection Act, the Missouri Merchandising Practices Act, Minnesota's Prevention of Consumer Fraud Act, Minnesota's Unlawful Trade Practices Act, Minnesota's Uniform Trade Practices Act, Minnesota's False Statement in Advertisement Act, New York's Consumer Protection from Deceptive Acts and Practices Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Texas's Deceptive Trade Practices-Consumer Protection Act, the Virginia Consumer Protection Act of 1977, the Wisconsin Prohibition on

Unfair Methods of Competition, and similar claims under the false advertising, consumer protection, and/or deceptive trade practices acts and common law and statutory law of any jurisdiction within the U.S., including federal, state, or local law.

67.     "Released Persons" means Defendants, their respective affiliates and members (including, in the case of Select, the individual member farms comprising the Select cooperative), and Defendants' and Defendants' respective affiliates' and members' respective past, present and future predecessors, successors, assigns, parents, subsidiaries, affiliates, joint venturers, partnerships, limited liability companies, corporations, unincorporated entities, divisions, groups, directors, officers, shareholders, members, employees, partners, agents, insurers, reinsurers, co-insurers, and attorneys.

68.     "Releasing Persons" means the Named Plaintiffs, on behalf of themselves and all Settlement Class Members who have not excluded themselves from the Settlement Class, each of the Settlement Class Members who have not excluded themselves from the Settlement Class, and the respective heirs, administrators, representatives, agents, partners, successors, and assigns of each of the Named Plaintiffs and the Settlement Class Members who have not excluded themselves from the Settlement Class.

69.     "Select" means Select Milk Producers, Inc.

70.     "Select Member Farm Supplier to fairlife" means the individual member farms in the Select cooperative that supply milk to fairlife during the one-year period covered by each annual audit conducted during the term of the Stipulated Injunction, except as provided in Sections VI(4)(h) and (i) below relating to transition periods and supply disruptions.

71.     "Service Awards" means compensation for the Named Plaintiffs in the Litigation for their time and effort undertaken in this Litigation as defined in Section XIII, which shall be subject to Court approval.

72.     "Settlement" means the settlement set forth in this Agreement.

73.     "Settlement Amount" means the sum of twenty-one million U.S. dollars ($21,000,000.00), which shall be used to pay Cash Awards, Notice and Administration Costs (including the Deposit Amount), Attorneys' Fees and Costs, and Service Awards.

74.     "Settlement Class" or "Class" means all Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before the Preliminary Approval Date, subject to the exclusions set forth in Section III, Paragraph 1(i)-(v) below.  Defendants agree to certification of a Class for settlement purposes only and deny that any such Class could otherwise be properly certified.

75.     "Settlement Class Member" means a Person who falls within the definition of the Settlement Class set forth in Section III, Paragraph 1.

76.     "Settlement Website" means the website dedicated to the settlement to be created and maintained by the Claims Administrator, which will contain relevant documents and information and shall provide, at a minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Fairness Hearing; (ii) the toll-free phone number applicable to the settlement; (iii) copies of the Settlement Agreement, the Class Notices, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Co-Lead Class Counsel's Motion for Approval of Attorneys' Fees, Cost, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically.

77.     "Settling Parties" means, collectively, the Released Persons, the Releasing Persons, and all Settlement Class Members.

78.     "Stipulated Injunction" means the terms of the Settling Parties' agreed-upon injunctive relief set forth in Exhibit F attached hereto.

79.     "Taxes" shall mean all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Escrow Account.

80.     "Tax Expenses" shall mean expenses and costs incurred in connection with the operation and implementation of the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns).

81.     "TCCC" means The Coca-Cola Company.

82.     "UFM" means ultra-filtered milk.

83.     "Valid Proof of Purchase" means verifiable documentation of a transaction that reflects the purchase of one or more Covered Products on or before the Preliminary Approval Date. Examples may include but are not limited to store receipts, milk bottles, or any other contemporaneous record of purchase that is objectively verifiable.

84.     "Validus" means Validus Verification Services.

85.     "VCPR" means Veterinarian-Client-Patient Relationship.

86.     The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

## II.    RECITALS

1.     Beginning in June 2019, eight class action complaints were filed against one or more of Defendants in various federal courts around the country. Each of these lawsuits alleged generally that: one or more of Defendants falsely labeled and marketed certain fairlife Milk

Products as dairy products produced from cows which were treated humanely; the Named Plaintiffs relied on that labeling and marketing and paid a premium therefor based upon those representations in purchasing the fairlife Milk Products; the cows producing the fairlife Milk Products were not treated humanely; the Named Plaintiffs would not have purchased the fairlife Milk Products and/or would not have paid a premium had they known that the cows were not treated humanely; and the Named Plaintiffs were thereby damaged. The allegations relied on, among other things, video footage and reports produced by ARM that purported to show animal abuse at one or more of the farms supplying milk to fairlife. The lawsuits asserted claims for, *inter alia,* breach of express and implied warranty, unjust enrichment, common law fraud, intentional and negligent misrepresentation, and violations of certain state consumer protection, false advertising, and unfair competition statutes.

2. Defendants each deny each and every allegation of wrongdoing, liability, and damages asserted in the Litigation, including each separate action; deny that they have engaged in any wrongdoing whatsoever; deny that they made any false and/or misleading representations or omitted any material information about the fairlife Milk Products; deny that they treated the cows involved in the production of fairlife Milk Products inhumanely; deny that the Named Plaintiffs and the putative classes were overcharged or paid a premium as a result of any conduct alleged against Defendants; and deny that any of the lawsuits can properly be maintained as a class action.

3. On October 2, 2019, and in subsequent related orders, the JPML transferred the following cases for coordinated and consolidated pre-trial proceedings to the United States District Court for the Northern District of Illinois (the "Court") before the Honorable Robert M. Dow, Jr: (a) *Michael v. fairlife, et al.*, Case No. 1:19-cv-03924 (N.D. Ill., filed June 11, 2019); (b) *Schwartz, et al. v. fairlife, et al.*, Case No. 1:19-cv-03929 (N.D. Ill., filed June 12, 2019); (c) *Salzhauer v.*

16

*The Coca-Cola Company, et al.*, Case No. 1:19-cv-02709 (N.D. Ga., filed June 13, 2019); (d) *Sabeehullah, et al. v. fairlife, et al.*, Case No. 2:19-cv-00222 (N.D. Ind., filed June 17, 2019); (e) *Henderson v. The Coca-Cola Company, et al.*, Case No. 1:19-cv-11953 (D. Mass., filed Sept. 13, 2019); (f) *Ngai v. fairlife, et al.*, Case No. 2:19-cv-08148 (C.D. Cal., filed Sept. 19, 2019); (g) *Abowd v. fairlife, et al.*, Case No. 1:19-cv-04009 (S.D. Ind., filed Sept. 24, 2019); (h) *Olivo v. The Coca-Cola Company, et al.*, Case No. 2:19-cv-08302 (C.D. Cal., filed Sept. 25, 2019). The resulting multidistrict litigation was captioned *In re fairlife Milk Products Marking and Sales Practices Litigation,* MDL No. 2909, Lead Case No. 1:19-cv-03924-RMD-MDW (N.D. Ill.).

4. On January 22, 2020, the Court appointed Amy E. Keller of DiCello Levitt Gutzler LLC, Melissa S. Weiner of Pearson, Simon & Warshaw, LLP, and Michael R. Reese of Reese LLP as Co-Lead Interim Counsel on behalf of the putative classes.

5. On February 20, 2020, Class Counsel and Defendants submitted a Joint Status Report outlining Class Counsel's plans to file a consolidated amended complaint as well as initial plans for electronic discovery and the filing of a proposed protective order.

6. On March 12, 2020, Paula Honeycutt filed the *Honeycutt* Complaint in the Northern District of Indiana against Fair Oaks Farms Food, LLC, a wholly-owned affiliate of FOF. Ms. Honeycutt alleged that FOF falsely labeled and marketed certain FOF Milk Products as dairy products produced from cows that were treated humanely; that Ms. Honeycutt relied on that labeling and marketing and paid a premium based upon those representations in purchasing the FOF Milk Products; that the cows producing the FOF Milk Products were not treated humanely; that Ms. Honeycutt would not have purchased the FOF Milk Products and would not have paid a premium had she known the cows were not treated humanely; and that Ms. Honeycutt was thereby damaged. The allegations relied on, among other things, the same ARM video footage and reports

that was the basis for the Litigation. The *Honeycutt* Complaint asserted claims for violation of the Indiana Deceptive Trade Practices Act and nationwide claims for fraud, unjust enrichment, negligent misrepresentation, and breach of express and implied warranty regarding the purchase of FOF Milk Products.

7.     On April 20, 2020, the JPML entered the Conditional Transfer Order initiating the transfer of the *Honeycutt* Lawsuit to the Northern District of Illinois for coordinated or consolidated pre-trial proceedings with the Litigation before Judge Dow.

8.     On April 27, 2020, Ms. Honeycutt filed a Notice of Opposition to the JPML's Conditional Transfer Order of the *Honeycutt* Lawsuit.

9.     On May 18, 2020, Class Counsel and Defendants submitted a Joint Status Report in the Litigation agreeing to a proposed schedule for filing: (i) an amended consolidated complaint, (ii) the Protective Order, and (iii) the ESI Order.

10.     On June 25, 2020, Class Counsel filed: (i) the Consolidated Class Action Complaint in the Litigation on behalf of all actions transferred into the multidistrict litigation, 1:19-cv-03924 (N.D. Ill.) ("Consolidated Class Action Complaint"); and (ii) (in light of no agreement on a direct filing order for the purpose of conferring subject matter jurisdiction) the Class Action Complaint, on behalf of certain plaintiffs not named in the Consolidated Class Action Complaint, denominated as a related case to the Litigation, and captioned *Cantwell et al. v. The Coca-Cola Company et al.*, 1:20-cv-03739 (N.D. Ill.).  Both complaints asserted nationwide claims for breach of express warranty and unjust enrichment, as well as numerous additional state claims for the violations of certain consumer protection, false advertising, and unfair competition statutes.

11.     On July 1, 2020, the Parties submitted a proposed protective order and ESI protocol to govern the discovery process in the Litigation.

12.     On July 8, 2020, the Court entered a Protective Order (Dkt. 104) and an ESI Order (Dkt. 105) in the Litigation to govern the discovery process.

13.     On August 5, 2020, the JPML denied Ms. Honeycutt's motion to vacate the Conditional Transfer Order and entered a Transfer Order transferring the *Honeycutt* Lawsuit to the Northern District of Illinois and assigning the case for coordinated or consolidated pre-trial proceedings with the Litigation before Judge Dow.  Following transfer to the Court, the *Honeycutt* Lawsuit was assigned case number 1:20-cv-04647 (N.D. Ill.).

14.     On August 12, 2020, Defendants filed an Unopposed Motion to Alter Defendants' Time to Respond to the Consolidated Class Action Complaint to extend Defendants' time to respond until September 14, 2020.  In the Unopposed Motion, Defendants advised the Court that the Parties were in the process of seeking to schedule a mediation session with the Honorable Wayne R. Andersen (Ret.), a retired United States District Judge for the Northern District of Illinois, who currently serves as a Mediator for JAMS in complex litigation matters and who has extensive experience mediating and resolving complex class action lawsuits like the Litigation. The Parties further advised the Court that they anticipated they may need to request a further schedule modification depending upon the mediation schedule.

15.     On August 14, 2020, the Court granted Defendants' unopposed motion to extend time and indicated that the Court supported the Parties' mutual interest in early settlement discussions and/or mediation and was receptive to reasonable further schedule modifications to accommodate those efforts.

16.     On September 3, 2020, the Court held a status hearing at which the Parties updated the Court on the status of the proposed mediation with Judge Andersen and the Parties' intention

to proceed with an informal exchange of discovery and information as part of their settlement efforts.

17.     On September 14, 2020, the Parties filed a Joint Motion to Extend Defendants' Deadline for Responding to the Consolidated Class Action Complaint.  The Joint Motion recited the history of the Litigation and the *Honeycutt* Lawsuit, updated the Court on the proposed October 27 or October 28, 2020 date for a mediation session before Judge Andersen, and requested an order extending the deadline for Defendants to answer or otherwise respond to the Consolidated Class Action Complaint and the *Honeycutt* Complaint until sixty (60) days after the upcoming mediation session or sixty (60) days after the Plaintiffs filed an Amended Consolidated Complaint (should Plaintiffs seek to do so and be permitted by the Court to do so), whichever was later.

18.     On September 15, 2020, the Court entered an Order granting the Parties' Joint Motion.  The Court also directed the Parties to file a status report within a week after the upcoming mediation session advising the Court of: (a) the status of settlement discussions, (b) their positions on coordination and consolidation with regard to the *Honeycutt* Lawsuit, and (c) whether the deadline for Defendants to answer or otherwise respond should be further extended.

19.     In advance of the October 28, 2020 mediation session, the Parties exchanged written discovery requests with one another and produced voluminous documents responsive thereto.  Additionally, the Parties submitted mediation briefs to Judge Andersen in advance of the session.

20.     On October 28, 2020, Judge Andersen convened a full-day mediation.   In attendance were Class Counsel, counsel to Ms. Honeycutt, Defense Counsel, and counsel to certain of Defendants' insurers.  At the mediation session, the Parties exchanged settlement positions and settlement demands through Judge Andersen.  The Parties made progress discussing settlement

concepts and areas to be explored further to resolve the dispute. Based upon the progress made, the Parties and the Mediator agreed to reconvene another mediation session the following month in November 2020.

21.     On November 20, 2020, Judge Andersen convened another full-day mediation session attended by Class Counsel, counsel to Ms. Honeycutt, Defense Counsel, and counsel to certain of Defendants' insurers. Prior to the November 20, 2020 mediation session, the Parties submitted additional settlement proposals and materials to Judge Andersen. The Parties made further progress during this mediation session but were not able to reach a settlement. Based upon the continuing progress, the Parties agreed to continue their settlement efforts before resuming active litigation.

22.     Following the November 20, 2020 mediation session, the Parties continued to exchange settlement positions and settlement proposals as well as settlement discovery and information through Judge Andersen. The Parties regularly communicated through Judge Andersen via multiple rounds of letters and emails, including multiple settlement demands and counteroffers submitted by both sides.

23.     On June 3, 2021, Judge Andersen convened another full-day mediation session attended by Class Counsel, counsel to Ms. Honeycutt, Defense Counsel, and counsel to certain of Defendants' insurers. In advance of the June 3, 2021 session, the Parties exchanged additional, informal mediation discovery, and provided Judge Andersen with additional statements of their settlement positions and supplemental mediation briefs. While the Parties made progress during this mediation session, they were not able to reach a settlement.

24.     On July 8, 2021, Judge Andersen convened another full-day mediation session attended by Class Counsel, counsel to Ms. Honeycutt, Defense Counsel, and counsel to certain of

Defendants' insurers. In advance of the July 8, 2021 session, the Parties exchanged additional, informal mediation discovery and provided Judge Andersen with additional statements of their respective positions and supplemental mediation briefs. While the Parties again made progress at the session, they were not able to reach a resolution.

25. On July 15, 2021, the Court held a status hearing. The Parties updated the Court regarding the status of their settlement discussions, including that settlement discussions were continuing after the July 8, 2021 mediation session. The Court, in turn, entered an order requiring Defendants to answer or otherwise plead in response to the Consolidated Class Action Complaint by November 1, 2021 to "balance the interests of the parties' mediation efforts and the need to move the case forward if those efforts are not successful."

26. Following the July 15, 2021 status hearing before the Court, the Parties continued their settlement discussions through Judge Andersen. As part of their efforts, the Parties exchanged numerous settlement proposals and counter-proposals, as well as additional settlement discovery and information.

27. On September 30, 2021, the Court held a status hearing. The Parties advised the Court at the status hearing that they continued to make progress on resolving the Litigation through Judge Andersen's mediation efforts and that they believed a short extension to Defendants' responsive pleading deadline would increase the likelihood that a settlement would be reached. The Court, in turn, extended the responsive pleading deadline by six weeks to December 17, 2021.

28. On November 7, 2021, Judge Andersen provided the Mediator's Settlement Recommendation to the Parties to assist in the resolution of the Litigation, the *Honeycutt* Lawsuit, and all related disputes.

29.     On November 17, 2021, at the Parties' request, the Mediator extended the date to accept the Mediator's Settlement Recommendation until November 23, 2021.

30.     On November 23, 2021, the Parties accepted the Mediator's Settlement Recommendation.

31.     The Parties promptly advised the Court of their acceptance of the Mediator's Settlement Recommendation.  The Court, in turn, directed the Parties to file a briefing schedule for preliminary approval or joint status report to keep the Court updated as to a schedule for preliminary approval.

32.     The Parties continued to negotiate open matters through Judge Andersen. Following further discussions, the Parties resolved all open matters.

33.     Class Counsel have made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Consolidated Class Action Complaint, the Class Action Complaint, and in the *Honeycutt* Complaint and have engaged in, and continue to engage in, investigation and discovery of the claims asserted therein including confirmatory discovery.

34.     The Named Plaintiffs and Class Counsel have examined the benefits to be obtained under the terms of this Agreement, have considered the substantial risks associated with the continued prosecution of the Litigation and the likelihood of success on the merits and believe that it is in the best interests of the Class as a whole that the claims asserted in the Litigation be resolved on the terms and conditions set forth in this Agreement.  Class Counsel reached that conclusion after considering the factual and legal issues presented in the Litigation, the substantial benefits that Settlement Class Members will receive as a result of the Settlement, the substantial risks and uncertainties of continued litigation, the expense that would be necessary

to prosecute the Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

35.    Defendants have denied, and continue to deny, each and every allegation of liability, wrongdoing, and damages.  Defendants further deny that the Litigation, including any separate action, may properly be maintained as a class action except for settlement purposes. Nonetheless, without admitting or conceding any liability or damages whatsoever, without admitting any wrongdoing, and without conceding the appropriateness of class treatment for claims asserted in any current or future complaint (except for settlement purposes in the Litigation), Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the substantial expense, inconvenience, burden, and disruption of continued litigation.

36.    The Parties agree and understand that neither this Agreement nor the Settlement it represents shall be construed as an admission by Defendants (any or all of them) of any wrongdoing whatsoever, including, without limitation, any admission of any violation of any statute or law or any admission of liability based on any of the claims or allegations asserted in the Litigation.

37.    The Parties agree and understand that neither this Agreement nor the settlement it represents shall be construed or admissible as an admission by Defendants in the Litigation or any other proceedings that the Named Plaintiffs' claims or any other similar claims are or would be suitable for class treatment if the Litigation proceeded through both litigation and trial.

38.    The Parties desire to compromise and settle all issues and claims that have been brought or could have been brought against the Released Persons arising out of or related to the claims asserted in the Litigation.

## III.  <u>PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS</u>

1.      The Parties stipulate to certification, for settlement purposes only, of a Settlement Class defined as follows:

> All Persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before the Preliminary Approval Date.

Specifically excluded from the Settlement Class are the following persons:

(i)     Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;

(ii)    Class Counsel;

(iii)   The judges who have presided over the Litigation;

(iv)    Local, municipal, state, and federal governmental agencies; and

(v)     All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

2.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, Defendants stipulate to the Court entering an order preliminarily certifying the Settlement Class, appointing the Named Plaintiffs as representatives of the Settlement Class, and appointing the following as Class Counsel for the Settlement Class:

Amy E. Keller
DiCello Levitt Gutzler LLC
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

Michael R. Reese
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Melissa S. Weiner
Pearson, Simon & Warshaw, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600

3.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, the Parties stipulate that Epiq Class Action & Claims Solutions, Inc. will be appointed as Claims Administrator.

4.      Solely for the purpose of implementing this Agreement and effectuating the Settlement, Defendants stipulate that the Named Plaintiffs and Class Counsel are adequate representatives of the Settlement Class.

## IV.  **SETTLEMENT FUND**

1.      Settlement Payment.  Pursuant to the terms and conditions set forth below, and in consideration of the promises, agreements, and undertaking of the Named Plaintiffs and Settlement Class set forth herein, Defendants agree to pay or cause to be paid the Settlement Amount into the Escrow Account.  Payment of the Settlement Amount shall be "ALL-IN" and in full satisfaction of all Settlement costs including, without limitation, Cash Awards, the Deposit Amount, Notice and Administration Costs, Attorneys' Fees and Costs, and Service Awards.  In no event shall Defendants be obligated to contribute any amount in excess of the Settlement Amount to satisfy their Settlement payment obligations under this Agreement; provided, however, the Parties agree that the Settlement Amount shall not be used to pay the costs of implementation or oversight of the Stipulated Injunction, which costs shall be borne by Defendants.

2.      Establishment of Escrow Account. Within ten (10) days after the Preliminary Approval Date, Defendants will pay, or cause to be paid, the Deposit Amount into the Escrow Account.  Within thirty (30) days after the Effective Date, Defendants will wire transfer, or cause to be wire transferred, ten million dollars ($10,000,000) of the Settlement Amount to the Escrow Account.  Within sixty (60) days after the Effective Date, Defendants will wire transfer, or cause to be wire transferred, to the Escrow Account the outstanding balance of the Settlement Amount, *i.e.*, the Settlement Amount less the amounts previously paid by Defendants including the ten

million dollar ($10,000,000) payment, the Deposit Amount, and any other amounts previously advanced by Defendants to the Claims Administrator for Notice and Administrative Costs. Any interest that accrues on the Settlement Amount in the Escrow Account shall be added to the Settlement Amount.

       3.    <u>Cash Awards to Settlement Class Members</u>. In accordance with the terms of this Agreement, the Claims Administrator will distribute the Net Settlement Fund to Settlement Class Members who submit Approved Claims and have not submitted a valid and timely request for exclusion from the Settlement Class. Claimants may submit no more than one (1) Claim Form per household as follows:

       a.    <u>Claim Form</u>. To make a Claim under the terms of this Agreement, Settlement Class Members must submit, during the Claim Period, a Claim Form substantially similar to the Claim Form attached hereto as Exhibit A. The Parties shall work with the Claims Administrator to ensure that the Claim Form is easy to understand and complete, that the Claim Form is offered in multiple languages consistent with guidance from the Federal Judicial Center's *Managing Class Action Litigation: A Pocket Guide for Judges*, and that the Claim Form is adapted to online use. The Claim Form will include a drop-down menu that allows Claimants to make claims, subject to the amount limits described below, for Cash Awards equal to twenty-five percent (25%) of the average retail purchase price of their Covered Product purchases made on or before the Preliminary Approval Date. The drop-down menu will include information regarding the Covered Products and the average retail purchase prices of the Covered Products. Claimants shall use the drop-down menu to identify the types and number of Covered Products they purchased on or before the Preliminary Approval Date. The electronic Claim Form will automatically calculate the potential Cash Award based upon twenty-five percent (25%) of the average retail purchase

prices of the types and number of Covered Products the Claimant purchased on or before the Preliminary Approval Date. The average retail purchase prices of the Covered Products used in the calculation of Cash Awards shall be equal to the average retail purchase prices of Covered Products previously determined by the Parties and set forth on the Claim Form. All Claimants will be required to execute the Claim Form under penalty of perjury, affirming that they made the claimed purchases of Covered Products as determined by the Parties.

        b.       Cash Award Amounts.

        i.       <u>Claimants without Valid Proof of Purchase</u>. Claimants without Valid Proof of Purchase shall be eligible to receive a Cash Award equal to twenty-five percent (25%) of the average retail purchase price of their purchases of Covered Products on or before the Preliminary Approval Date subject to a maximum Cash Award of twenty dollars ($20.00).

        ii.       <u>Claimants with Valid Proof of Purchase</u>. Claimants with Valid Proof of Purchase shall be eligible to receive a Cash Award equal to twenty-five percent (25%) of the average retail purchase price of their purchases of Covered Products on or before the Preliminary Approval Date subject to a maximum Cash Award of eighty dollars ($80.00).

        iii.       <u>Claimants' Right to Submit A Claim Form Without Valid Proof of Purchase and With Valid Proof of Purchase</u>. Claimants may submit a Claim Form seeking a Cash Award without a Valid Proof of Purchase and with a Valid Proof of Purchase. Claimants submitting a Claim Form seeking a Cash Award for purchases of Covered Products on or before the Preliminary Approval Date without a Valid Proof of Purchase and with a Valid Proof of Purchase shall be eligible to receive a Cash Award equal to: (a) twenty-five percent (25%) of the average retail purchase price without Valid Proof of Purchase of their purchases of Covered Products on or before the Preliminary Approval Date subject to a maximum Cash Award of twenty

dollars ($20.00), <u>plus</u> (b) twenty-five percent (25%) of the average retail purchase price with Valid Proof of Purchase of their purchases of Covered Products on or before the Preliminary Approval Date subject to a maximum Cash Award of eighty dollars ($80.00). In total, the maximum Cash Award that Claimants may be eligible to receive without Valid Proof of Purchase and with Valid Proof of Purchase combined is one hundred dollars ($100.00).

4.     <u>Claim Submission</u>. Any Settlement Class Member who wishes to submit a claim must timely complete, sign (by hard copy or electronic signature), and submit a Claim Form and provide the Claims Administrator with all requested information (including, to the extent applicable, Valid Proof of Purchase). Claimants shall complete an electronic Claim Form, substantially in the form of Exhibit A hereto, that will include a drop-down menu that allows Claimants to make claims, subject to the individual limits described above, for Cash Awards equal to twenty-five percent (25%) of the average retail purchase price of their purchases of Covered Products on or before the Preliminary Approval Date. If submitted by U.S. Mail, the Claim Form must be postmarked no later than the Claim Deadline. If submitted on-line or via electronic mail, the Claim Form must be received no later than the Claim Deadline. All Claim Forms shall be submitted to the Claims Administrator under penalty of perjury.

5.     <u>Claim Review</u>. The Claims Administrator shall review and evaluate each Claim Form, including any Valid Proof of Purchase submitted therewith, for validity, timeliness, and completeness. Failure to provide all information requested on the Claim Form will not result in immediate denial or nonpayment of a Claim. Instead, the Claims Administrator will take reasonable and customary steps to notify the Claimant of the Claim deficiency, including but not limited to, written e-mail notification when possible, requesting the additional information necessary to demonstrate eligibility. If, in the determination of the Claims Administrator, the

Claimant completes a timely but incomplete Claim Form (e.g., the Claim Form is not signed; there is no Valid Proof of Purchase when it appears the Claimant intended to provide one or more Valid Proofs of Purchase; or there is an inadequate Valid Proof of Purchase), the Claims Administrator will take such steps to notify the Claimants of the Claim deficiency within thirty (30) days after the Claim Deadline or within thirty (30) days of receipt of a timely postmarked response, whichever is later.   To cure the deficiency, the Claim Form deficiency response must be submitted via the online claim portal or postmarked within thirty (30) days after the mailing date of the notice of defect by the Claims Administrator and must cure the core defect of the Claim or the Claim will be denied.  If the Claimant cures the deficiencies identified by the Claims Administrator within the thirty (30) day period following notice by the Claims Administrator, and the Claims Administrator thereafter determines that the Claimant's Claim is complete and valid, the Claims Administrator shall include the Claimant in the Class Member Payment List. Claim Forms shall be reviewed and evaluated for deficiencies in the order in which they are received, to the extent practicable. Class Counsel and Defense Counsel shall have the right to review the Claim files of the Claims Administrator at any time. The Claims Administrator shall have the right to confer with Class Counsel and Defense Counsel with respect to any Claim.

6.    <u>Fraudulent or Suspicious Claims</u>. If the Claims Administrator suspects fraud or misleading conduct with respect to any Claim, then the Claims Administrator will immediately bring the Claim to the attention of Class Counsel and Defense Counsel, who shall meet and confer with the Claims Administrator concerning the Claim, including whether the Claim should be denied.  Class Counsel and Defense Counsel reserve the right to bring the Claim to the attention of the Court.

7.      <u>Defendants' Dealings with Settlement Class Members</u>. If contacted during the Claim Period regarding this Settlement Agreement or a Claim by a Settlement Class Member or a Claimant regarding this Settlement, Defendants will use reasonable efforts to refer that Person to the Claims Administrator by providing to that Person the name of the Claims Administrator, the domain name of the Settlement Website, and the established toll-free number regarding the settlement.

8.      <u>Distribution to Eligible Claimants</u>.  The Claims Administrator shall begin paying timely, valid, and Approved Claims within the later of sixty (60) days after the Effective Date or sixty (60) days after all potential invalid claims discussed above in Section IV, Paragraph 5 have been resolved, whichever is later.  The Claims Administrator shall provide Claimants with options to receive Cash Awards that will maximize how the Net Settlement Fund is distributed to the Settlement Class, including offering payment by electronic means to the extent possible. Settlement Payments issued by check will remain valid for 180 days, and such expiration period shall be printed on the face of each check.  Settlement Class Members shall not be entitled to request a reissued check after expiration of the 180-day period.  Cash Awards issued by check will be deemed void once the 180-day period expires.

## V.    <u>PLAN OF ALLOCATION OF CASH AWARDS</u>

1.      No later than sixty (60) calendar days after all deadlines for correcting deficiencies pursuant to Section IV, Paragraph 5 have passed, the Claims Administrator will provide to Class Counsel and Defense Counsel a report containing all of the following:

a.      The total number of Claims filed and the total number of Approved Claims.

b.      The total aggregate Cash Award amount calculated for all Approved Claims without Valid Proof of Purchase.

c.     The total aggregate Cash Award amount calculated for all Approved Claims with Valid Proof of Purchase.

d.     The total aggregate Cash Award amount calculated for all Approved Claims both without Valid Proof of Purchase and with Valid Proof of Purchase.

e.     The total aggregate Cash Award amount calculated for all Approved Claims (collectively the "Calculated Cash Award Total"), which amount shall be equal to the sum of the total aggregate Cash Award amounts set forth in V.1 (b), (c), and (d); and

f.     The amount of the Net Settlement Fund.

2.     If the Calculated Cash Award Total exceeds the Net Settlement Fund, then each Cash Award shall be proportionately reduced on a *pro rata* basis to exhaust the Net Settlement Fund.

3.     If the Net Settlement Fund is greater than the Calculated Cash Award Total, then each Cash Award shall be proportionately increased on a *pro rata* basis, up to a total Cash Award amount equal to four (4) times the Cash Award amount prior to the increase or until the Net Settlement Fund is exhausted, whichever occurs first.

4.     The Parties agree that any public statement relating to any Cash Award available under the Settlement shall be limited to the terms and content of the Official Notice.

## VI.  INJUNCTIVE AND EQUITABLE RELIEF

1.     <u>Stipulated Injunction</u>.  Defendants agree to the entry of the Stipulated Injunction. The proposed form of the Stipulated Injunction is attached as Exhibit F hereto.  The Defendants shall pay or cause to be paid the amounts necessary to adopt and perform the practices required by the Stipulated Injunction.  No portion of the Settlement Amount shall be used to pay for the costs of the Stipulated Injunction.

2.      Term of Stipulated Injunction.  The Stipulated Injunction shall have a three (3) year term, which shall commence on the date on which the Final Approval and Judgment becomes Final.

3.      Third-Party Audit of Select Member Farm Suppliers to fairlife.  An independent third-party auditor mutually agreed upon by both sides (the parties agree Validus is mutually acceptable) will conduct annual audits, during the term of the Stipulated Injunction, of each Select Member Farm Supplier to fairlife that supplies milk to fairlife during the one-year period covered by the annual audit, except as provided in Sections VI(4)(h) and (i) below relating to transition periods and supply disruptions.  The audits shall determine whether each such Select Member Farm Supplier to fairlife substantially complies with the following obligations:

a.      Subject to its obligations under local, state, and federal law (and in the case of existing employees, subject to the consent of such employee), each such Select Member Farm Supplier to fairlife shall conduct preliminary criminal background screenings on all Employees with Direct and Regular Animal Contact.  Each such Select Member Farm Supplier to fairlife shall also institute a policy barring the hiring of individuals with criminal records for animal abuse or animal cruelty into positions that would involve Direct and Regular Animal Contact.

b.      Each such Select Member Farm Supplier to fairlife shall provide animal welfare training to all Employees with Direct and Regular Animal Contact.  Such training will consist of instructions and guidance regarding proper and safe animal handling in accordance with the training standards established by Farmers Assuring Responsible Management ("FARM").  Such training will be available in English and Spanish.  Each such Select Member Farm Supplier to fairlife shall also provide each such employee with annual animal welfare refresher training in accordance with FARM standards.  Such training shall focus on topics such as animal handling

(all such Employees with Direct and Regular Animal Contact), as well as down cattle care, euthanasia, calf care, and/or fitness for transport as applicable for those employees who have such responsibilities.

c.      Each such Select Member Farm Supplier to fairlife shall provide cooperation to law enforcement relating to the prosecution of any farm employee charged with acts of animal cruelty or criminal neglect.

d.      Each such Select Member Farm Supplier to fairlife shall have a written Veterinarian-Client-Patient Relationship ("VCPR") that is signed by the farm owner/manager and Veterinarian of Record annually.

e.      Each such Select Member Farm Supplier to fairlife shall maintain a written herd health plan, as approved no less frequently than annually by each such farm's Veterinarian of Record.

f.      Each Veterinarian of Record or such licensed veterinarian designated by the Veterinarian of Record for each such Select Member Farm Supplier to fairlife shall make regular welfare visits to each such farm. The frequency of farm visits shall be determined by the Veterinarian of Record based on his or her professional judgment, the well-being of the cows, and the type and size of the operation.  Veterinary visits are intended to proactively monitor the health and well-being of the herd and should include the prevention, treatment, and control of diseases along with the treatment of physical conditions affecting the herd, including lameness, locomotion issues, body condition concerns, behavioral issues, and any other areas of veterinary concern.

g.      Each such Select Member Farm Supplier to fairlife shall provide protection from typical climatic heat and cold, taking into account geography, for all age classes of animals, including appropriate care and protection from heat and cold stress for calves.  Care and protection

strategies shall be consistent with each such farm's written herd health plan, as approved no less frequently than annually by each such farm's Veterinarian of Record.

h.      Each such Select Member Farm Supplier to fairlife shall provide: (a) access to clean, fresh water as necessary to maintain proper hydration to all age classes of animals (including milk-fed dairy calves); and (b) access to sufficient quantities of feed for maintenance, health, and growth to all age classes of animals.  Unless emergency circumstances arise making performance not reasonably practicable (*e.g.,* blizzard, tornado, floods, fire, unforeseen hazards), no such farm shall allow an animal to go without food or water for any period exceeding 24 hours unless authorized by the herd manager acting under the supervision of a veterinarian.

i.      Each such Select Member Farm Supplier to fairlife shall immediately euthanize or provide care for any cattle identified as having a serious, painful, or life-threatening condition, including, but not limited to, prolapses, non-ambulatory conditions, or difficult deliveries.  Non-ambulatory animals will be cared for pursuant to FARM guidelines.  All care will be provided pursuant to a current Veterinarian-Client Relationship Agreement.  Each such Select Member Farm Supplier to fairlife shall euthanize all animals that are required to be euthanized only through the use of methods approved by the American Association of Bovine Practitioners ("AABP") or American Veterinary Medical Association ("AVMA").

j.      Each such Select Member Farm Supplier to fairlife shall refrain from dragging animals except for emergency cases where an animal must be moved a few feet before an appropriate movement device can be used.  Non-ambulatory animals shall be handled with dignity and in a manner that minimizes pain and discomfort.  Non-ambulatory animals may be moved using sleds, belting with reinforced sides, slings, skidsteer buckets (so long as the bucket lip is padded, and it is large enough to hold the entire animal), float tanks, and palleted forklifts

(so long as exposed forks are never used). In all situations, animals shall be restrained appropriately so as not to risk or cause additional injury.

        k.      Each such Select Member Farm Supplier to fairlife shall prohibit its employees from kicking, punching, or beating any animals or subjecting them to any act of cruelty or instance of gross negligence. Any employee caught committing such acts will be immediately terminated, and egregious or repeated acts shall be referred to law enforcement and the Monitor. "Gross negligence" means an act or course of action, or inaction, which denotes a lack of reasonable care and a conscious disregard or indifference to the rights, safety, or welfare of others, including animals.

        l.      Each such Select Member Farm Supplier to fairlife shall maintain milking parlors and equipment in a commercially reasonable manner designed to prevent animal injury or death.

        m.      Each such Select Member Farm Supplier to fairlife shall disbud calves before eight (8) weeks of age and provide pain mitigation for disbudding or dehorning.

        4.      <u>Additional Terms</u>.

        a.      The costs to perform the practices necessary to comply with the obligations subject to the third-party audits shall be borne by Defendants and shall not be paid from the Settlement Amount.

        b.      The costs of the audits, including all auditor fees and expenses, shall be borne by Defendants and shall not be paid from the Settlement Amount.

        c.      Class Counsel may review the third-party audit checklist prior to approval, which the third-party auditor will use to determine whether a violation has occurred.

d.      The Parties agree that the District Court for the Northern District of Illinois retains ongoing jurisdiction to enforce the terms of the Stipulated Injunction.

e.      The Select member farm identified in the Consolidated Class Action Complaint as "Fair Oaks Farms" may resume milk shipments to fairlife only upon substantial compliance with the terms set forth in the Stipulated Injunction.

f.      The Parties acknowledge that following the initiation of this Litigation on June 11, 2019, fairlife revised the labels on the bottles or containers of its products that were in use as of June 11, 2019 to remove the remaining statements of a "promise" of "extraordinary care and comfort for [its] cows," "exceptional quality milk standards," "traceability back to [its] farms," and "continual pursuit of sustainable farming."  fairlife will not add back to its labels the foregoing "promise" language until the first annual audit process under the term of the Stipulated Injunction confirms that each Select Member Farm Supplier to fairlife is in substantial compliance with the terms of this Stipulated Injunction.  fairlife will also not modify the labels on the bottles or containers of its products in use at the time this Agreement is executed in any way that is inconsistent with governing consumer protection and/or product liability laws.

g.      fairlife agrees not to publicly represent, suggest, warrant, or convey in any way that its practices are endorsed by Animal Outlook or the Animal Legal Defense Fund.

h.      <u>Transition Period</u>.  In the event that fairlife, during the term of the Stipulated Injunction, seeks to accept shipments of milk on a regular basis supplied by a farm that is a member of the Select cooperative that is not a Select Member Farm Supplier to fairlife as of the commencement date of the Stipulated Injunction, each such farm shall have one hundred twenty (120) days to come into compliance with the terms set forth herein.  Notwithstanding the foregoing, if any such farm is ultimately unable to come into substantial compliance within the 120-day

period, fairlife shall notify Class Counsel as soon as practicable, and the parties shall negotiate an extension or other resolution in good faith, with the assistance of the Monitor if necessary. fairlife shall notify any such new and/or additional farms of the requirements set forth herein as soon as practicable and before such farm begins supplying milk to fairlife. This paragraph is in addition to and does not alter the rights afforded by Section VI(4)(i) below.

   i. <u>Supply Disruption</u>. In the event of an emergency or other temporary disruption in the supply of milk from any Select Member Farm Supplier to fairlife, fairlife may, to the extent necessary, use milk supplied from other farms that are members of the Select cooperative that have not been confirmed to be in compliance with the terms of the Stipulated Injunction until the emergency or temporary disruption has been resolved, but in no event longer than sixty (60) days. Notwithstanding the foregoing, if the emergency or temporary disruption in the supply of milk from the Select Member Farm Supplier to fairlife has not been resolved within the 60-day period notwithstanding good faith efforts to do so, and if fairlife continues to require milk supplied from other farms that are members of the Select cooperative that have not been confirmed to be in compliance with the terms of the Stipulated Injunction in light of the emergency or temporary disruption in the supply of milk from the Select Member Farm Supplier to fairlife, fairlife shall notify Class Counsel as soon as practicable, and the parties shall negotiate an extension or other resolution in good faith, with the assistance of the Monitor if necessary.

## VII. <u>MONITOR</u>

   1. <u>Appointment of Monitor</u>. The Parties have selected the Honorable Wayne R. Andersen (Ret.) as the independent, third party to serve as the Court-appointed Monitor to monitor compliance with the Stipulated Injunction. The Defendants will pay or cause to be paid the Monitor Costs from their own funds and not from the Settlement Amount.

2.    <u>Annual Reports</u>.  The Monitor shall issue an annual report, which shall be based upon the Monitor's review of the annual third-party audits for each year during the term of the Stipulated Injunction.  Upon determining that each such farm is in substantial compliance, the Monitor shall confirm the same by denoting such farm to be "Compliant."

3.    <u>Reporting Periods</u>.  The reporting period for the Monitor shall be coterminous with the audit period.

4.    <u>The Monitor's Follow-Up on Reports</u>.  The Parties will further agree that: (a) final audit reports will be provided to each audited Select Member Farm Supplier to fairlife, Select, fairlife, and the Monitor only; (b) the Monitor shall have thirty (30) days to review the audits to ensure substantial compliance with the Stipulated Injunction and to identify any compliance issues; (c) within that thirty (30)-day period, the Monitor must identify in writing any areas of compliance that the Monitor believes require further attention or otherwise appear to demonstrate non-compliance with the Stipulated Injunction; (d) areas of non-compliance noted by the Monitor will be addressed and/or corrected within thirty (30) days thereafter; and (e) if the issues of non-compliance raised by the Monitor are not resolved within this thirty (30)-day period, the Monitor shall notify both Class Counsel and Defense Counsel of any unresolved issues.

5.    <u>Class Counsel's Follow-Up on Reports</u>.  To the extent the Monitor notifies Class Counsel and Defense Counsel of any unresolved issues of non-compliance as provided in the Paragraph above, Class Counsel may seek Court intervention to enforce the terms of the Stipulated Injunction.  In such instances of unresolved issues of non-compliance, Class counsel reserve the right to request the Court to extend the term of the Stipulated Injunction; Defendants reserve the right to oppose any such request.

6. <u>Confidentiality</u>. The Parties and the Monitor agree that the Monitor Communications constitute highly confidential and proprietary business information under the Protective Order.

## VIII.  **CHARITABLE, *CY PRES* CONTRIBUTION**

1. The *Cy Pres* Contribution Amount shall be donated equally between the U.S Dairy Education & Training Consortium and the Center For Food Safety. Both organizations are subject to approval by the Court. In calculating the *Cy Pres* Contribution Amount, the Claims Administrator shall also include all uncashed Cash Awards made by check. No remaining amounts shall revert back to the Defendants.

2. <u>Payments to *Cy Pres* Recipients</u>.  Payments to the *Cy Pres* Recipients, if any, shall be made by the Trustee, at the direction of the Claims Administrator, from the Escrow Account ninety (90) days after the date by which the Claims Administrator completes the process for stopping payment on any Cash Award checks that remain uncashed.

## IX.   <u>**NOTICE AND ADMINISTRATIVE COSTS**</u>

1. Defendants shall pay or cause to be paid all Notice and Administrative Costs, as provided in the Preliminary Approval Order and in Section IV, Paragraph 2, and Section XII, and all such Notice and Administrative Costs shall be credited against the Settlement Amount.

2. If the Court does not approve the Settlement following the Fairness Hearing, or if the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, Defendants shall not be entitled to recover the Deposit Amount or any amounts advanced by Defendants to the Claims Administrator for Notice and Administrative Costs.

3. Under no circumstances will the Named Plaintiffs, Class Counsel, or any Settlement Class Member have any liability for Notice and Administrative Costs, Audit Costs,

Monitoring Costs, the cost of Defendants' defense of the Litigation, or the cost of Defendants' discharge of any of their respective obligations under the Settlement.

## X.  TAX TREATMENT OF SETTLEMENT ACCOUNT; CONSEQUENCES OF TERMINATION

1.      The Parties will treat the Escrow Account as a "qualified settlement fund" within the meaning of Treasury Regulations 1.468B-1 through 1.468B-5, 26 C.F.R. 1.468B-1 through 1.468B-5 (1992).  They will treat the Escrow Account as a qualified settlement fund for all reporting purposes under the federal tax laws.  In addition, the Claims Administrator and, as required, Defendants will jointly and timely make the "relation-back election" (as defined in Treasury Regulation 1.468B-1) back to the earliest permitted date.  Such election will be made in compliance with the procedures and requirements contained in such regulations.  It will be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.      The Claims Administrator shall act as the Escrow Agent within the meaning of section 468B of the Internal Revenue Code of 1986 and Treasury Regulation 1.468B for the Escrow Account.  The Claims Administrator will timely and properly file all informational and other tax returns necessary or advisable with respect to the Escrow Account (including without limitation the returns described in Treasury Regulation 1.468B-2(k)).  Such returns (as well as the election described in Paragraph X.1) will be consistent with this Paragraph and Paragraph X.1 and in any event will reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Escrow Account will be paid out of the Escrow Account.

3.      All Taxes and Tax Expenses will be paid out of the Escrow Account; in no event will Defendants have any liability or responsibility for the Taxes, the Tax Expenses, or the filing

of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. The Claims Administrator will indemnify and hold Defendants and Defense Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Furthermore, Taxes and Tax Expenses will be timely paid by the Claims Administrator out of the Escrow Account without prior Court order, and the Claims Administrator will be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treasury Regulation 1.468B-2(1)-(2)); Defendants are not responsible for and shall have no liability therefor, or for any reporting requirements that may relate thereto. The Parties agree to cooperate with the Claims Administrator, each other, and their respective tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section and the Agreement.

## XI.   **CLAIMS ADMINISTRATOR**

1.      <u>Selection and Appointment of Claims Administrator</u>.  The Parties have agreed to have Epiq Class Action & Claims Solutions, Inc. serve as the Claims Administrator, and will request that the Court appoint the Claims Administrator.  The Claims Administrator was selected following a competitive bidding process that involved solicitation of three notice and claims administration proposals. The Claims Administrator has provided Class Counsel and Defense Counsel with a class notice program (the "Class Notice Program").  The Class Notice Program sets forth a detailed estimate and a "not-to-exceed" price for performing all tasks and duties regarding this settlement.  A copy of the Class Notice Program is attached hereto as Exhibit G.

2.      Once approved by the Court, the Claims Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.  The Claims Administrator shall cause the Class Notice Program to be carried out after Preliminary

Approval, including the Published Notice to be published and mailed and emailed (to the extent physical and email addresses are available) to Settlement Class Members who can be identified through reasonable effort as well as a process, subject to mutual agreement by the Parties, to stimulate claims made by Settlement Class Members, administer the Settlement Website and Claim Forms process, and oversee the distribution of Cash Awards to Settlement Class Members in accordance with the terms of the Settlement and orders of the Court.

3. <u>Claims Administration</u>.  The Claims Administrator shall administer the monetary relief for Settlement Class Members pursuant to the terms of this Agreement and shall seek to resolve issues with Claim Forms in a cost effective and timely manner.  The Claims Administrator may request the assistance of the Parties to identify Settlement Class Members; to facilitate providing direct notice to Settlement Class Members who can be identified through reasonable effort and notice by publication; and to accomplish such other purposes as may be approved by Defendants and Class Counsel; and the Parties shall reasonably cooperate with such requests.

4. <u>Claims Administrator Discretion</u>.  The Claims Administrator shall review and validate all Claim Forms submitted by Settlement Class Members.  The Claims Administrator shall have the discretion to accept or reject, in whole or in part, the Claim Forms submitted by Settlement Class Members with the objectives of efficiency and effecting substantial justice to the Parties and the Settlement Class Members.  Issues regarding the validity of Claim Forms that cannot be resolved by the Claims Administrator shall be submitted to Defense Counsel and Class Counsel for resolution and, if no resolution is reached, to the Court.

5. <u>No Liability for Claims Administered Pursuant to Settlement Agreement</u>. No Person shall have any claim against Defendants, Defense Counsel, Plaintiffs, Class Counsel, the Released Parties, and/or the Claims Administrator based on any determinations, distributions, or

awards made with respect to any Claim. For the avoidance of doubt, in no event shall Plaintiffs, Class Counsel, Defendants, or Defense Counsel, have any liability for any claims of wrongful conduct (whether intentional, reckless, or negligent) on the part of the Claims Administrator or its agents.

6. <u>Claims Administrator Duties</u>. The Claims Administrator shall:

a. Use personal information acquired as the result of this Settlement Agreement solely for purposes of providing Notice and evaluating and paying Claims under this Settlement Agreement.

b. Assign a manager to oversee the protection and appropriate management of personal information including, without limitation, for purposes of maintaining its confidentiality, and review its internal system to manage the protection of personal information to ensure consistent performance and constant improvement.

c. Take security countermeasures to prevent unauthorized access to personal information and the loss, destruction, falsification, and/or exposure of personal information.

d. If outsourcing the handling of personal information, determine that outsourced companies take steps to ensure appropriate management of the information to prevent leaks of personal or confidential information, and prohibit reuse of information for other purposes.

e. Respond immediately with appropriate measures when necessary to disclose, correct, stop using, or eliminate contents of information.

f. Within one hundred and twenty (120) days after the completion of the Claim Period, and in compliance with applicable retention law, destroy all personal information obtained in connection with this settlement in a manner most likely to guarantee that such information shall not be obtained by unauthorized Persons.

7.      <u>Claims Administrator Accounting</u>. The Claims Administrator shall maintain a complete and accurate accounting of all receipts, expenses (including Notice and Administration Costs), and payments made pursuant to this Settlement Agreement. The accounting shall be made available on reasonable notice to Class Counsel and Defense Counsel.

8.      <u>Removal of Claims Administrator</u>. If the Claims Administrator fails to perform adequately, the Parties may agree to remove the Claims Administrator by petitioning the Court to do so.

9.      <u>Class Notice Program</u>. The Class Notice Program used to provide notice of this settlement to the Settlement Class shall be that which is approved in the Court's Preliminary Approval Order. The cost of the Class Notice Program shall be paid from the Settlement Amount, which shall be deposited into the Escrow Account in accordance with Section IV, Paragraph 2. The Claims Administrator shall commence the Class Notice Program no later than thirty (30) days after the Preliminary Approval Date.  The Class Notice Program shall be effectuated by the Claims Administrator, and it shall include, at a minimum:

a.      <u>E-mailed and Mailed Notice</u>. Notice of settlement shall be sent by electronic mail if an e-mail address is available and mailed, first-class postage prepaid, if a mailing address is available to all members of the Settlement Class who are identifiable to the Claims Administrator through reasonable means, taking into account the costs of identifying Settlement Class Members, Notice and Claims Administration Costs, and the size of the Settlement Fund.  Within fourteen (14) days following Preliminary Approval, Defendants and Class Counsel will provide the Claims Administrator with reasonably available and accessible information that identifies possible members of the Settlement Class from their existing records.

b.      Digital Notice. The Claims Administrator shall design and implement a plan for notification of the settlement to members of the Settlement Class through digital/internet publication designed to target purchasers of the Covered Products to satisfy the due process rights of the Settlement Class. The Class Notice will be substantially in the forms attached hereto as Exhibit B (the Published Notice) and Exhibit C (the Official Notice). The Parties have also discussed certain claim stimulation efforts, if necessary, to be implemented as may be agreed following a review of claim submissions twenty-one days after the Published Notice commences.

c.      Press Releases. The Parties may elect to issue a press release following the filing of the Motion for Preliminary Approval. Such press release must be consistent with the Notice.

d.      Settlement Website. No later than thirty (30) days after the Preliminary Approval Date, the Claims Administrator shall establish and make live the Settlement Website, which shall be an Internet website concerning the settlement utilizing an easily-recognized domain name.  The Settlement Website shall be maintained by the Settlement Administrator until one hundred and twenty (120) days after all deadlines for correcting deficiencies in the Claim Form pursuant to Section IV, Paragraph 5 have passed. The domain name of the Settlement Website shall be included in all Class Notices. The Settlement Website shall provide, at a minimum: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Fairness Hearing; (ii) the toll-free phone number applicable to the settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding this settlement, and other relevant Court documents, including Class Counsel's Motion for Approval of Attorneys' Fees, Cost, and Service Awards; and (iv)

information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically, including proof of purchase.

        e.     <u>Toll-Free Number</u>. No later than thirty (30) days after the Preliminary Approval Date, the Claims Administrator shall establish a toll-free telephone number and facility that will provide members of the Settlement Class with information and direct them to the Settlement Website. The toll-free telephone number shall be included on the Settlement Website and in the Notice of Settlement. The telephone facility shall be capable of providing general information concerning deadlines for filing a Claim Form, opting out of or objecting to the Settlement, and the dates and locations of relevant Court proceedings, including the Fairness Hearing. The toll-free number(s) shall be maintained by the Claims Administrator during the time period that the Settlement Website is active.

        10.     <u>Proof of Compliance with Class Notice Program</u>. The Claims Administrator shall provide Class Counsel and Defense Counsel with a declaration detailing all of its efforts regarding the Class Notice Program, its timely completion of the Class Notice Program, and its reach to the members of the Settlement Class, to be filed along with Plaintiffs' Motion for Final Approval of Class Action Settlement.

        11.     <u>Claims Administrator Database</u>. The Claims Administrator shall maintain and preserve records of all of its activities, in a computerized database with easily retrievable records, relative to the settlement, including logs of all telephone calls, emails, faxes, mailings; visits to the Settlement Website; and all other contacts with actual and potential members of the Settlement Class. The database shall also include a running tally of the number and types of materials mailed or disseminated by the Settlement Administrator. The Settlement Administrator shall provide Class Counsel and Defense Counsel with weekly written reports throughout the Claim Period

summarizing all statistics and actions taken by the Settlement Administrator in connection with administering the settlement.

## XII.   SETTLEMENT NOTICE, OBJECTIONS AND OPT-OUT RIGHTS

1.      Within thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator shall commence publication of the Published Notice in the publications in the format and layout appropriate to those publications as described in Exhibit B.

2.      The Official Notice shall:

a.      contain a short, plain statement of the background of the Litigation and the proposed Settlement;

b.      describe the proposed Settlement relief as set forth in this Agreement;

c.      inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief and will release their claims;

d.      describe the procedures for participating in the Settlement and advise Settlement Class Members of their rights, including their right to file a Claim Form to receive a Cash Award under the Settlement, to opt out of the same, or object thereto;

e.      explain the impact of the proposed Settlement on any existing litigation, arbitration or other proceeding;

f.      state that any Cash Award to Settlement Class Members under the Settlement is contingent on the Court's final approval of the proposed Settlement;

g.      explain the procedures for opting out of the Settlement;

h.      specify that opt-outs shall be allowed on an individual basis only and that so-called "mass" or "class" opt outs shall not be allowed; and

i.      provide that any objection to the Settlement and any papers submitted in support of said objection will be considered only if the Settlement Class Member making an

48

objection has followed the guidelines for objecting as set forth in the Agreement. A Class Member who fails to follow the procedures and deadlines set forth in the Class Notice for submitting his or her comments to the proposed Settlement will waive his or her right to be heard by the Court and will waive their right to appeal.

3.      Subject to mutual agreement by the Parties, the Parties agree to follow guidance provided by the Claims Administrator concerning reasonable best practices consistent with the Class Notice Program and this Settlement Agreement to encourage the filing of valid and timely Claim Forms.

4.      Nothing in this Agreement shall limit the ability of Class Counsel to communicate orally or in writing with Settlement Class Members regarding the provisions of this Settlement and, in fact, Class Counsel are authorized to do so.

5.      The Settlement Website shall be maintained by the Claims Administrator until one hundred and twenty (120) days after all deadlines for correcting deficiencies in the Claim Form pursuant to Section IV, Paragraph 5 have passed.

6.      Prior to the Fairness Hearing, the Claims Administrator shall provide to the Parties documentation reflecting that the Class Notice Program has been executed in accordance with the Preliminary Approval Order, which will be provided to the Court.

7.      Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date. In order to object, the Settlement Class Member must file the objection with the Court on or before the Opt-Out and Objection Deadline. The objection must provide the following:

    a.      the Settlement Class Member's printed name, address, and telephone number;

b.      whether the Settlement Class Member is represented by counsel and, if so, contact information for his or her counsel;

c.      evidence showing that the objector is a Settlement Class Member;

d.      whether the objection applies to that Settlement Class Member or to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;

e.      any other supporting papers, materials, or briefs that the Settlement Class Member wishes the Court to consider when reviewing the objection;

f.      the actual written or electronic signature of the Settlement Class Member making the objection; and

g.      a statement on whether the objecting Settlement Class Member and/or his or her counsel intend to appear at the Fairness Hearing.

8.      Any Settlement Class Member who fails to file and serve timely a written objection and notice of his or her intent to appear at the Fairness Hearing pursuant to the above Paragraph, as detailed in the Class Notice, shall not be permitted to object to the approval of the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

9.      A Settlement Class Member who wishes to opt out of the Settlement Class must do so on or before the Opt-Out and Objection Date.  To opt out, a Settlement Class Member must inform the Claims Administrator in writing that he or she wishes to be excluded from the Settlement Class, and must send that request to the Claims Administrator by U.S. Mail, post-marked no later than the Opt-Out and Objection Date or submitted online through the claims portal and verified no later than the Opt-Out and Objection Date.  The request for exclusion must

be personally signed by the Settlement Class Member requesting exclusion and contain the Settlement Class Member's name, address, telephone number, a brief statement explaining the Covered Products the Settlement Class Member purchased to confirm membership in the Settlement Class, and a statement that indicates a desire to be excluded from the Settlement Class. To be effective, Opt-Outs submitted online must verify the request to opt-out no later than the Opt-Out and Objection Date, using the link sent to the Settlement Class Member who submitted the request for exclusion. A Settlement Class Member may opt out on an individual and personal basis only; so-called "mass" or "class" opt-outs shall not be allowed.

10. Except for those Settlement Class Members who timely and properly file a request for exclusion, all other Settlement Class Members will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Effective Date, will be bound by its terms, regardless of whether they file a Claim or receive any monetary relief.

11. Any Settlement Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement. Any statement or submission purporting or appearing to be both an objection and an opt-out shall be treated as a request for exclusion.

12. The Claims Administrator shall provide Class Counsel and Defense Counsel with copies of all requests for exclusion to counsel for the Parties on a weekly basis by email and will provide the Opt-Out List on or before one hundred and forty days (140) after the Preliminary Approval Date.

## XIII.   ATTORNEYS' FEES, EXPENSES, AND REPRESENTATIVE PLAINTIFFS' SERVICE AWARDS

1.      Within the time period established by the Court, and no later than eighty-five (85) days after the Preliminary Approval Date, Class Counsel will file a Motion for Approval of Attorneys' Fees and Costs, and Service Awards to be paid from the Settlement Amount, which shall be included on the Settlement Website.   The Class Notice Program shall inform the Settlement Class Members that Class Counsel may apply for attorneys' fees not to exceed one-third (1/3) of the Settlement Amount and, in addition to fees, seek reimbursement of verifiable litigation costs plus reasonable costs incurred through the Effective Date.  Defendants expressly reserve the right to oppose the Motion for Approval of Attorneys' Fees and Costs, and Service Awards.  The procedure for and the allowance or disallowance by the Court of any application for Attorneys' Fees and Costs is not a material term of the Settlement or Agreement and is not a condition of this Agreement that any particular application for Attorneys' Fees and Costs be approved.  If an application for Attorneys' Fees and Costs is approved by the Court, Class Counsel shall provide W-9 Forms to the Claims Administrator prior to such payment.

2.      Attorneys' Fees and Costs approved by the Court shall be paid within thirty-five (35) days after the Effective Date.  Class Counsel shall thereafter distribute attorneys' fees and costs as they deem appropriate. Under no circumstances will Defendants be liable to Class Counsel, or any other attorney or law firm, for, because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees made in accordance with this Settlement Agreement; and Class Counsel, and each of them, release Defendants from any and all disputes or claims because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees and costs made pursuant to this Settlement Agreement.

3.    Class Counsel shall move for Service Awards of three thousand and five-hundred dollars ($3,500) to each of the Named Plaintiffs in the Litigation, as may be approved by the Court. If approved by the Court, such Service Awards will be paid from the Settlement Amount no later than thirty-five (35) days after the Effective Date.

4.    Any order or proceedings relating to the applications for Attorneys' Fees and Costs and Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of Judgment approving the Agreement and the Settlement.

## XIV. **NOTICES**

1.    All Notices (other than the Class Notice and CAFA Notices) required by the Agreement shall be made in writing and mailed to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:

Amy E. Keller                          Michael R. Reese
DiCello Levitt Gutzler LLC             Reese LLP
Ten North Dearborn Street, Sixth Floor 100 West 93rd Street, 16th Floor
Chicago, Illinois 60602                New York, New York 10025
Telephone: (312) 214-7900              Telephone: (212) 643-0500

Melissa S. Weiner
Pearson, Simon & Warshaw, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600

All Notices to Defense Counsel provided herein shall be sent to Defense Counsel, c/o:

Mark S. Mester
Robert C. Collins III
Latham & Watkins LLP
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

*Attorneys for fairlife, LLC*

Timothy B. Hardwicke
Brian P. Borchard
GoodSmith Gregg & Unruh LLP
150 S. Wacker Drive, Suite 3150
Chicago, Illinois 60606
Telephone: (312) 322-1981

*Attorneys for Select Milk Producers, Inc., Mike and Sue McCloskey, and Fair Oaks Farms, LLC*

Jeffrey S. Cashdan
King & Spalding LLP
1180 Peachtree St NE
Atlanta, Georgia 30309
Telephone: (404) 572-4818

Rachael M. Trummel
King & Spalding LLP
110 N. Wacker Drive, Suite 3800
Chicago, Illinois 60606
Telephone: (312) 764-6922

*Attorneys for The Coca-Cola Company*

2.      The notice recipients and addresses designated above may be changed by written notice.

3.      Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of comments, objections, requests for exclusion, or other documents or filings received as a result of the Class Notice.

## XV. <u>SETTLEMENT APPROVAL PROCESS</u>

1.      After execution of this Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order that is without material alteration from Exhibit E hereto, which:

   a.      Preliminarily approves this Settlement;

   b.      Directs that notice is provided in a reasonable manner, as set forth herein, to all Settlement Class Members who would be bound by the Settlement;

   c.      Preliminarily certifies the Settlement Class;

   d.      Schedules a Fairness Hearing on final approval of this Settlement and Agreement to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court, such Fairness Hearing to be no earlier than one hundred fifty (150) days after the Preliminary Approval Date, subject to Court approval;

       e.      Finds that the proposed Settlement is sufficiently fair, reasonable and adequate to warrant providing notice to the Settlement Class;

       f.      Appoints the Claims Administrator in accordance with the provisions of Section XI;

       g.      Approves the Class Notice, the content of which is without material alteration from Exhibit G, B and C hereto, and directs the Claims Administrator to publish the Class Notice in accordance with the Class Notice Program provided for in this Agreement;

       h.      Approves the Claim Form, the content of which is without material alteration from Exhibit A hereto, and sets a Claim Deadline;

       i.      Approves the creation of the Settlement Website as defined in Section XI, Paragraph 9(d) above;

       j.      Finds that the Class Notice Program implemented pursuant to this Agreement: (i) is the best practicable notice, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law;

       k.      Requires the Claims Administrator to file proof of publication of the Published Notice and proof of maintenance of the Settlement Website at or before the Fairness Hearing;

       l.      Requires each Settlement Class Member who wishes to be excluded from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked no later

than one hundred and twenty (120) days after the Preliminary Approval Date , or as the Court may otherwise direct, to the Claims Administrator at the address on the Notice;

        m.     Preliminarily enjoins all Settlement Class Members unless and until they have timely excluded themselves from the Settlement Class from: (i) filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before the Preliminary Approval Date; (ii) filing, commencing or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before the Preliminary Approval Date; and (iii) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims.  This Agreement is not intended to prevent Settlement Class Members from participating in any action or investigation initiated by a state or federal agency.

        n.     Orders that any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class (*i.e.,* becomes an Opt-Out) will be bound by all proceedings, orders and judgments in the Litigation, even if such Settlement Class Member

has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release;

        o.     Requires each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed Settlement or to the Attorneys' Fees and Costs to file with the Court and serve on Class Counsel no later than one hundred and twenty (120) days after the Preliminary Approval Date or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing the information outlined in Section XII, Paragraph 7 above.

        p.     Provides that any response to an objection shall be filed with the Court no later than seven (7) days before the Fairness Hearing.

        q.     Specifies that any Settlement Class Member who does not file a timely written objection to the Settlement or who fails to otherwise comply with the requirements of Section XII, Paragraph 7 shall be foreclosed from seeking any adjudication or review of this settlement by appeal or otherwise.

        r.     Requires that any attorney hired by a Settlement Class Member will be at the Settlement Class Member's expense for the purpose of objecting to this Agreement, the proposed Settlement, or the Attorneys' Fees and Costs;

        s.     Requires that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Attorneys' Fees and Costs and who intends to make an appearance at the Fairness Hearing to provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and to file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date or as the Court may otherwise direct;

t.      Requires any Settlement Class Member who files and serves a written objection and who intends to make an appearance at the Fairness Hearing to provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and to file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date or as the Court otherwise may direct;

u.      Directs the Claims Administrator to establish a post office box in the name of the Claims Administrator to be used for receiving requests for exclusion, objections, notices of intention to appear and any other communications, and providing that only the Claims Administrator, Class Counsel, Defense Counsel, Defendants, the Court, the Clerk of the Court and their designated agents shall have access to this post office box, except as otherwise provided in this Agreement;

v.      Directs the Claims Administrator to promptly furnish Class Counsel and Defense Counsel with copies of any and all written requests for exclusion, notices of intention to appear or other communications that come into its possession, except as expressly provided in this Agreement;

w.      Directs that Class Counsel shall file their applications for the Attorneys' Fees and Costs and Named Plaintiffs' Service Awards in accordance with the terms set forth in Section XIII;

x.      Orders the Claims Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than one hundred and forty (140) days after the Preliminary Approval Date, and then Plaintiffs' counsel will file with the Court the Opt-Out List with an affidavit from the Claims Administrator attesting to the completeness and accuracy thereof no later than three (3) business days thereafter or on such other date as the Parties may direct; and

y.      Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Agreement and the proposed settlement.

## XVI. FINAL ORDER AND JUDGMENT AND RELEASES

1.      Pursuant to the schedule set by the Court in its Preliminary Approval Order and no later than eighty-five (85) days after the Preliminary Approval Date, Class Counsel shall file a motion and supporting papers requesting that the Court grant final approval of this Settlement Agreement and for entry of a Final Order and Judgment.

2.      If this Agreement (including any amendment or modification made with the consent of the Parties as provided herein) is approved by the Court following the Fairness Hearing scheduled by the Court in its Preliminary Approval Order, the Parties shall request that the Court enter a mutually-agreeable Final Order and Judgment pursuant to the Federal Rules of Civil Procedure and all applicable laws, that, among other things:

a.      Finds that the Court has personal jurisdiction over the Parties and all members of the Settlement Class and that the Court has subject matter jurisdiction to approve this Settlement and Agreement and all Exhibits thereto;

b.      Certifies a Settlement Class solely for purposes of this Settlement;

c.      Grants final approval to this Agreement as being fair, reasonable, and adequate as to all Settling Parties and consistent and in compliance with all requirements of due process and applicable law, as to and in the best interests of all Settling Parties and directs the Parties and their counsel to implement and consummate this Agreement in accordance with its terms and provisions;

d.      Declares this Agreement and the Final Order and Judgment to be binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release (as set forth in Section I, Paragraph 65) maintained by

or on behalf of the Named Plaintiffs and all other Settlement Class Members, as well as their respective agents, heirs, executors or administrators, successors and assigns;

        e.      Finds that the Class Notice Program implemented pursuant to this Agreement: (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Litigation, of their right to object to or exclude themselves from the proposed Settlement, of their right to appear at the Fairness Hearing and of their right to seek monetary and other relief, (iii) constituted reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of due process and any other applicable law;

        f.      Approves the Claim Form that was distributed to Settlement Class Members, the content of which was without material alteration from Exhibit A hereto;

        g.      Finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for purposes of entering into and implementing the Settlement and Agreement;

        h.      Dismisses the Litigation now pending before the Court (including all of the underlying suits transferred to the Court by the JPML and all individual and class claims presented thereby) on the merits and with prejudice and without fees or costs except as provided herein, in accordance with the terms of the Final Order and Judgment as set forth herein;

        i.      Orders that within one (1) week after the Effective Date the other lawsuits not pending before the Court will be dismissed with prejudice without fees or costs except as provided herein;

j.      Adjudges that the Named Plaintiffs and the Settlement Class have conclusively compromised, settled, dismissed and released any and all Released Claims against Defendants and the Released Persons;

k.      Approves payment of the Attorneys' Fee and Expenses to Class Counsel and the Named Plaintiffs' Service Awards in a manner consistent with Section XIII;

l.      Without affecting the finality of the Final Order and Judgment for purposes of appeal, reserves jurisdiction over the Claims Administrator, Defendants, the Named Plaintiffs and the Settlement Class as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the Settlement and Final Order and Judgment and for any other necessary purposes;

m.      Provides that upon the Effective Date, the Named Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class, whether or not they return a Claim Form within the time and in the manner provided for, shall be barred from asserting any Released Claims against Defendants and/or any Released Persons, and any such Settlement Class Members shall have released any and all Released Claims as against Defendants and all Released Persons;

n.      Determines that the Agreement and the Settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of, a presumption, concession or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by Defendants or any Released Persons or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

o.      Bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation or the Released Claims arising on or before the Preliminary Approval Date, and (ii) organizing Settlement Class Members who have not been excluded from the class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims arising on or before the Preliminary Approval Date, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency;

p.      Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment except for Opt-Outs who subsequently submit Claim Forms during the Claim Period; and

q.      Authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all Exhibits hereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Settlement Class Members.

3.      As of the Effective Date, the Releasing Persons are deemed to have fully released and forever discharged the Released Persons of and from all Released Claims by operation of entry of the Final Judgment and Order of Dismissal.

4.      Subject to Court approval, all Settlement Class Members who have not excluded themselves from the Settlement Class shall be bound by this Agreement and the Release, and all of their respective claims shall be dismissed with prejudice and released, irrespective of whether they received actual notice of the Litigation or this Settlement.

5.      Without in any way limiting the scope of the Release, this Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or any Named Plaintiffs or Settlement Class Members, in connection with or related in any manner to the Litigation, the Settlement, the administration of such Settlement and/or the Released Claims, as well as any and all claims for Service Awards to Named Plaintiffs.

6.      As of the Effective Date, the Released Persons are deemed to have fully released and forever discharged by operation of the entry of the Final Order and Judgment the Named Plaintiffs, the Settlement Class Members, Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or any of them, of and from any claims arising out of the Litigation and/or the Settlement.

7.      As of the Effective Date, the Released Persons are deemed to have fully released and forever discharged each other by operation of entry of the Final Order and Judgment of and from any claims they may have against each other arising from the claims asserted by the Releasing Persons in the Litigation, including any claims arising out of the investigation, defense or Settlement of the Litigation.

8.      The Releasing Persons and the Released Persons expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Notwithstanding California or other law, the Releasing Persons and the Released Persons hereby expressly agree that the provisions, rights and benefits of Section 1542 and all similar federal or state laws, rights, rules or legal principles of any other jurisdiction that may be applicable herein and are hereby knowingly and voluntarily waived, released and relinquished to the fullest extent permitted by law solely in connection with unknown claims that are the same as, substantially similar to, or overlap the Released Claims, and the Releasing Persons and the Released Persons hereby agree and acknowledge that this is an essential term of the Releases.  In connection with the Releases, the Releasing Persons and the Released Persons acknowledge that they are aware that they may hereafter discover claims currently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein, and that such claims, to the extent that they are the same as, substantially similar to, or overlap the Released Claims, are hereby released, relinquished and discharged.

9.      Nothing in the Releases shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed herein.

## XVII.  **WITHDRAWAL FROM OR TERMINATION OF SETTLEMENT**

1.      Within fifteen (15) days after the occurrence of any of the following events and upon written notice to counsel for all Parties, a Party shall have the right to withdraw from the Settlement and terminate this Agreement:

a.      If the Court fails to approve the Agreement as written or if the Court's approval is reversed or modified on any appeal;

b.      If the Court materially alters any of the terms of the Agreement; or

c.      If the Preliminary Approval Order, as described in Section XV, or the Final Order and Judgment, as described in Section XVI, is not entered by the Court or is reversed or modified on appeal, or otherwise fails for any reason.  In the event of a withdrawal pursuant to this Section, any certification of a Settlement Class will be vacated, without prejudice to any Party's position on the issue of class certification and the amenability of the claims asserted in the Litigation to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement.

2.      If Settlement Class Members properly and timely submit requests for exclusion from the Settlement Class as set forth in Section XII, Paragraph 9, thereby becoming Opt-Outs and are in a number more than the confidential number submitted to the Court by the Parties under seal at the time of filing the Motion For Preliminary Approval, then, at the election of Select, Select, acting for itself and all Defendants, may withdraw from the Settlement and terminate this Agreement.  Consistent with the confidential instructions provided to the Court, this provision may be invoked: (a) during the fifteen (15) day period following written notice to Class Counsel and Defense Counsel from the Claims Administrator that the Opt-Out number as submitted confidentially to the Court has been exceeded; and (b) during the fifteen (15) day period after the Opt-Out List has been served on the Parties provided the Opt-Out number as submitted

confidentiality to the Court has been exceeded by the Opt-Out number identified on the Opt-Out List. In that event, all of Defendants' obligations under this Agreement shall cease to be of any force and effect; the certification of the Settlement Class shall be vacated without prejudice to Defendants' position on the issue of class certification; and Defendants shall be restored to their litigation position existing immediately before the execution of this Agreement. To elect to withdraw from the Settlement and terminate this Agreement on the basis set forth in this Section XVII, Select must notify Class Counsel in writing of its election to do so within the fifteen (15) day periods described in this Paragraph. If Select exercises such right, Class Counsel shall have fifteen (15) days following notice or such longer period as agreed to by the Parties to address the concerns of the Opt-Outs. If, as a result of those efforts or otherwise, the total number of members of the Opt-Out List subsequently becomes and remains fewer than the number of Opt-Outs as submitted to the Court under seal at the time of filing the Motion for Preliminary Approval, Select shall withdraw its election to withdraw from the Settlement and terminate the Agreement. In no event, however, shall any Defendant have any further obligation under this Agreement to any Opt-Out unless such Settlement Class Member withdraws his/her request for exclusion. For purposes of this Paragraph, Opt-Outs shall not include (i) persons who are specifically excluded from the Settlement Class under Section III, Paragraph 1(i)-(v) of the Agreement; (ii) Settlement Class Members who elect to withdraw their request for exclusion; and/or (iii) Opt-Outs who agree to sign an undertaking that they will not pursue an individual claim, class claim or any other claim that would otherwise be a Released Claim as defined in this Agreement.

3.      In the event of withdrawal by Defendants in accordance with the terms set forth in this Section XVII, the Agreement shall be null and void, shall have no further force and effect with respect to any Party in the Litigation, and shall not be offered in evidence or used in any litigation

for any purpose, including, without limitation, the existence, certification, or maintenance of any proposed or existing class, or the amenability of these or similar claims to class treatment. In the event of such withdrawal, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to Defendants, the Named Plaintiffs and the Settlement Class Members and shall not be deemed or construed to be an admission or confession in any way by any Party of any fact, matter or proposition of law and shall not be used in any manner for any purpose, and the Parties to the Litigation shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court. In the event of withdrawal by Defendants, Defendants shall be solely responsible for any and all Notice and Administrative Costs incurred on or before the date of withdrawal.

## XVIII.   **EFFECTIVE DATE**

1.      The Effective Date of this Agreement shall be the first business day after each and all of the following conditions have occurred:

      a.      This Agreement has been fully executed by all Parties and their counsel;

      b.      Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Agreement and approving the form of Class Notice and Claim Form, all as provided above;

      c.      The Court-approved Published Notice has been duly published and Settlement Website has been duly created and maintained as ordered by the Court;

      d.      The Court has entered a Final Order and Judgment finally approving this Agreement, as provided above; and

      e.      The Final Order and Judgment has become Final.

2.      If, for any reason, this Agreement fails to become Final pursuant to this Section XVIII, the orders, judgment, and dismissal to be entered pursuant to this Agreement shall be

vacated, and the Parties will be returned to the status *quo ante* with respect to the Litigation as if the Parties had never entered into this Agreement.

## XIX.  ADDITIONAL PROVISIONS

1.  <u>Entire Agreement</u>.  The Recitals and Exhibits to this Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Agreement.

2.  <u>Settlement Purposes Only</u>.   This Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Agreement nor any action taken hereunder shall constitute or be construed as an admission of the validity of any claim or any fact alleged in the Litigation or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendants or any admission by Defendants of any claim or allegation made in any action or proceeding against Defendants or any concession as to the validity of any of the claims asserted by the Named Plaintiffs in the Litigation.  This Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms.  Nothing contained herein is, or shall be construed or admissible as, an admission by Defendants that the Named Plaintiffs' claims or any similar claims are either valid or suitable for class treatment.

3.  <u>Best Efforts</u>.  If there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then the Parties shall confer in good faith regarding such matters; and such matters shall be dealt with as agreed upon by the Parties, and if the Parties cannot reach an agreement, as shall be ordered by the Court.  The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Agreement in order to give this Agreement full force and

effect. The execution of all such documents must take place prior to the Preliminary Approval Hearing.

4. <u>Administration of Agreement</u>. No person shall have any claim against the Named Plaintiffs, Class Counsel, Defendants, Defense Counsel, the Claims Administrator or the Released Persons or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

5. <u>Communications</u>. Class Counsel and all other counsel of record for the Named Plaintiffs and Defense Counsel hereby agree not to engage in any communications with the media or the press, on the internet, or in any public forum, orally or in writing, that relate to this Settlement or the Litigation other than statements that are fully consistent with the Notice or otherwise approved by the Parties.

6. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between and among the Settling Parties with respect to the Settlement of the Litigation. This Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement.

7. <u>Waiver</u>. There shall be no waiver of any term or condition absent an express writing to that effect by the non-waiving Party. No waiver of any term or condition in this Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Agreement.

8.      Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single agreement.

9.      Drafting.  This Agreement shall not be construed more strictly against one Party than another merely because this Agreement may have been drafted or otherwise prepared in full or substantial part by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Agreement.  All terms, conditions and Exhibits are material and necessary to this Agreement and have been relied upon by the Parties in entering into this Agreement.

10.     Governing Law.  This Agreement shall be construed under and governed by the laws of the State of Illinois without regard to its choice of law provisions.

11.     Continuing Jurisdiction.   The Court shall retain continuing and exclusive jurisdiction over the Settling Parties to this Agreement for the purpose of the administration and enforcement of this Agreement.

12.     Confidentiality.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Agreement.

13.     Defendants' Attorneys' Fees and Costs. Defense Counsel shall bear their own attorneys' fees and costs in the Litigation.

14.     Return of Documents. Within thirty (30) days after the Effective Date, Class Counsel will return or destroy all documents, information and material produced by Defendants to the producing Defendant.

15.     Representation by Counsel.  The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Settlement Agreement. Each Party represents that it understands the terms and consequences of executing this Settlement Agreement and executes it and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

16.     Mutual Full Cooperation. The Parties agree to cooperate with each other in good faith to accomplish the terms of this Settlement Agreement, including the execution of such documents and such other action as may reasonably be necessary to implement the terms of this Settlement Agreement and obtain the Court's final approval of the Settlement Agreement, including the entry of an order dismissing the Litigation with prejudice.

17.     No Tax Advice. Neither the Parties nor their counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder.  No Person shall rely on anything in this Settlement Agreement to provide tax advice, and any Person, including, without limitation, Named Plaintiffs and Settlement Class Members, shall obtain his, her, or its own independent tax advice with respect to any payment under this Settlement Agreement.

18.     Extensions.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

19.     Binding Effect.  This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Settling Parties.

20.     No Prior Assignment, Transfer or Conveyance of Released Claims.  The Named Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of

action against the Released Persons that the Named Plaintiffs, or any of them, have or may have arising out of any allegations made in any of the actions comprising the Litigation or pertaining to any of the Released Claims, and no portion of any recovery or settlement to which the Named Plaintiffs, or any of them, may be entitled, has been assigned, transferred, or conveyed by or for the Named Plaintiffs, or any of them, in any manner; and no person other than the Named Plaintiffs has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of the Named Plaintiffs.

21.     <u>Subheadings</u>. The headings used in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.  In construing this Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

22.     <u>Stay of Proceedings</u>.  The Parties stipulate to stay all proceedings in the Litigation until the approval of this Agreement has been finally determined, except the stay of proceedings shall not prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve final judicial approval of this Agreement.

23.     <u>Authority</u>.  Each person executing this Settlement Agreement on behalf of any Party warrants that such person has the authority to do so. This Settlement Agreement shall be binding upon, and inure to the benefit of, each of the Settling Parties' respective agents, heirs, executors, administrators, successors, and assigns.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have executed and caused this Agreement to be executed by their duly authorized attorneys below.

**PLAINTIFFS:**

By: _Terri Birt_
Terri Birt

By: _Carol Cantwell_
Carol Cantwell

By: _Debra French_
Debra French

By: _Karailee Hamilton_
Karai Hamilton

By: _____
Henry Henderson

By: _____
Paula Honeycutt

By: _Michelle Ingrodi_
Michelle Ingrodi

By: _Jae Jones_
Jae Jones

By: _Nabil Khan_
Nabil Khan

By: _Kaye Mallory_
Kaye Mallory

73

By: _____
Christina Parlow

By: _____
Cindy Peters

By: _____
Jenny Rossano

By: _____
David Rothberg

By: _____
Eliana Salzhauer

By: _____
Connie Sandler

By: _____
Diana Tait

By: _____
Demetrios Tsiptsis

By: _____
Arnetta Velez

*Approved as to Form:*

By: _____

Amy E. Keller
**DiCello Levitt Gutzler LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

*Approved as to Form:*

By: _____

Michael R. Reese
**Reese LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

*Approved as to Form:*

By: _____

Melissa S. Weiner
**Pearson, Simon & Warshaw, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600

*Court Appointed Co-Lead Class Counsel*

*Approved as to Form:*

By: _____

Yeremey Krivoshey
**Bursor & Fisher, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

*Counsel for Plaintiff Honeycutt*

75

FAIRLIFE, LLC

By:_____

   Name: _____ ANDREW C ARQUETTE _____

   Title: _____ CFO _____

Date:_____ 4/14/22 _____

*Approved as to form:*

By:_____

   Mark S. Mester
   Robert C. Collins, III
   **Latham & Watkins LLP**
   330 North Wabash Avenue, Suite 2800
   Chicago, Illinois 60611
   Telephone: (312) 876-7700

   *Attorneys for fairlife, LLC*

**FAIR OAKS FARMS, LLC**

By: _____
Name: Mike McCloskey
Title: President

4-11-22
_____
Date

**SELECT MILK PRODUCERS, INC.**

By: _____
Name: Rance C. Miles
Title: Chief Executive Officer

04-07-2022
_____
Date

_____
Mike McCloskey

4-11-22
_____
Date

_____
Sue McCloskey

APRIL 11 '22
_____
Date

*Approved as to Form:*

By: _____    04/13/2022
Timothy B. Hardwicke
Brian P. Borchard
**GoodSmith Gregg & Unruh LLP**
150 S. Wacker Drive, Suite 3150
Chicago, Illinois 60606
Telephone: (312) 322-1981

*Counsel to Fair Oaks Farms, LLC, Select Milk*
*Producers, Inc., and Mike and Sue McCloskey*

77

THE ~~COCA-COLA~~ COMPANY

By: _____

Name: RUSSELL S. BONDS

Title: ASSOCIATE GENERAL COUNSEL

Date: 4/13/2022 _____

*Approved as to form:*

By: _____

Jeffrey S. Cashdan
**King & Spalding LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600

Rachael M. Trummel
**King & Spalding LLP**
110 North Wacker Drive, Suite 3800
Chicago, Illinois 60606
Telephone: (312) 995-6333

*Attorneys for The Coca-Cola Company*

Exhibit A

*In re: fairlife Milk Products Marketing & Sales Litigation*
Class Action Settlement

## CLAIM FORM

<<BARCODE>>                                                    Unique ID:<<UniqueID>>
<<NAME1>>
<<NAME2>>
<<ADDRESS1>>
<<ADDRESS2>>
<<CITY, ST, ZIP>>
<<COUNTRY>>

TO RECEIVE A CASH PAYMENT FROM THIS SETTLEMENT, YOU MUST COMPLETE AND SUBMIT A CLAIM FORM ON OR BEFORE CLAIMS FILING DEADLINE.

Please submit **one (1) Claim Form per household**; multiple claim forms for the same household will not be processed.

You are a Settlement Class Member and are eligible to participate in the settlement if you are in the United States, its territories, or the District of Columbia and purchased, for personal use, any Covered Product included in the eligible product list accompanying this Claim Form on or before Preliminary Approval Date and you are not an Excluded Party. Purchases for resale are not eligible for participation.

"Excluded Parties" include (1) Defendants and their respective subsidiaries and affiliates, employees, officers, directors, agents, and their family members, (2) any party who has submitted a valid Opt-Out, and/or (2) the judges who have presided over these cases.

NOTE: Electronic payment will be initiated through email for eligible claimants if an email address is provided; please keep a valid email address on file with the Claims Administrator. If you do not provide an email address and are deemed eligible, you will receive a check via USPS.

Capitalized terms are defined further in the Notice and Settlement Agreement, both of which are available on the website, [website URL].

## SECTION I: CLAIMANT INFORMATION

Claimant's First Name                    MI    Last Name

OR
Claimant Business' Name (only if claiming for a business and Claimant business' purchases were used by the business/staff, not for resale.)

Claimant Address (address of individual or business claimant, as applicable)
Address 1 (street name and number)

Address 2 (apartment, unit, suite or box number)

City                                        State      ZIP Code

Contact Telephone Number

Contact Email Address

**SECTION II: PURCHASES**

Only purchases made through Preliminary Approval Date are eligible. Purchases made after Preliminary Approval Date are not eligible and should not be claimed. Only products purchased for personal use may be claimed; **purchases made for resale are not eligible**.

"Valid Proof of Purchase" means verifiable documentation of a transaction that reflects the purchase of one or more Covered Products on or before the Preliminary Approval Date. Examples may include but are not limited to store receipts, milk bottles, or any other contemporaneous record of purchase that is objectively verifiable.

You are eligible to receive a 25% Cash Award reimbursement for Covered Purchases with a maximum reimbursement of $100.00. You may receive up to $20.00 without Valid Proof of Purchase. You may separately receive up to $80.00 in reimbursement if you provide Valid Proof of Purchase with your Claim Form.

**You do not need to note the price you paid.** The Product Code Chart below indicates the average price of each Covered Product, which will be used for calculating your award.

You may still file online at [website URL] even if you need to submit Valid Proof of Purchase documentation. A document upload option is available for your convenience on the website. If you submit receipts via US Mail, please send copies, as originals cannot be returned to you.

If your claimed purchases total $80.00 or less based on the average prices for those products and you do not submit any Valid Proof of Purchase, you are eligible for a Cash Award of up to $20.00. You may also provide Valid Proof of Purchase for up to $320.00 in purchases of Covered Products based on the average prices for the products to be eligible to receive a Cash Award of up to $80.00. You can receive both the maximum Cash Award for documented and undocumented purchases for a maximum total Cash Award of $100.00 per household.

For each Product Code you enter below from the Product Code chart on the next page, the Quantity Purchased should include all purchases made on or before Preliminary Approval Date. You do not need to separate purchases by or specify the date of purchase.

| Product Code (see list below) | | | Quantity Purchased | | | Valid Proof of Purchase (Receipt) Provided? Valid Proof of Purchase (ONLY REQUIRED if the sum of the average retail price(s) of the Covered Products included in your claim exceeds $80.00) |
|---|---|---|---|---|---|---|
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |
| | | | | | | ☐ Yes ☐ No |

Questions? Visit [website URL]or call 1-855-604-1865

**PRODUCT CODE CHART**

Please note, the website, [website URL], includes an informational tab with descriptions of the Covered Products below. You may also contact the Claims Administrator by calling toll-free at 1-855-604-1865 to request a list of the Covered Products by mail.

| Product Type | Product Size | Average Retail Price | Product Code |
|---|---|---|---|
| Fair Oaks Farms Milk | Half Pint | $0.79 | F22 |
| | 11.5oz-12oz, 16oz, or Pint | $1.89 | F23 |
| | 1.5 liter, 52 oz, or 64 oz | $3.69 | F24 |
| | Gallon | $3.99 | F25 |
| Fair Oaks Farms Ice Cream | Pint | $6.29 | F26 |
| | 3 Gallon | $49.99 | F27 |
| Fair Oaks Farms Butter | Per Unit | $4.39 | F28 |
| Fair Oaks Farms Yogurt | Small | $2.99 | F29 |
| | Large | $4.99 | F32 |
| Fair Oaks Farms Eggnog | Per Unit | $4.99 | F34 |
| fairlife Ultra-Filtered Milk | 8oz 6-Pack | $6.16 | L22 |
| | 8oz 12-Pack | $10.40 | L23 |
| | 11.5oz Single | $2.09 | L24 |
| | 14oz Single | $2.99 | L25 |
| | 52oz Single | $4.04 | L26 |
| | 52oz 2-Pack | $6.61 | L27 |
| | 52oz 3-Pack | $9.00 | L28 |
| | Any Other UFM Product Not Listed Above | $2.09 | L29 |
| fairlife DHA Milk | 8oz 4-Pack | $5.41 | L32 |
| | 52oz Single | $4.48 | L33 |
| | 52oz 2-Pack | $6.87 | L34 |
| | Any Other DHA Product Not Listed Above | $4.48 | L35 |
| fairlife Core Power Protein Shakes | 8oz Single | $2.50 | L36 |
| | 8oz 4-Pack | $7.05 | L37 |
| | 11.5oz. Single | $3.39 | L38 |
| | 11.5oz 12-Pack | $26.22 | L39 |
| | 14oz Single | $3.25 | L42 |
| | 14oz 12-Pack | $27.20 | L43 |
| | Any Other Core Power Protein Shake Product Not Listed Above | $2.50 | L44 |

**Product Code Chart Continued on Next Page**

**Product Code Chart, Continued:**

| Product Type | Product Size | Average Retail Price | Product Code |
|---|---|---|---|
| fairlife Core Power Elite Protein Shakes | 14oz Single | $4.07 | L45 |
| | 14oz 8-Pack | $22.47 | L46 |
| | 14oz 12-Pack | $38.57 | L47 |
| | Any Other Core Power Elite Protein Shake Product Not Listed Above | $4.07 | L48 |
| fairlife Core Power Light Protein Shakes | 11.5oz Single | $3.25 | L49 |
| | 11.5oz 12-Pack | $24.10 | L52 |
| | Any Other Core Power Light Protein Shake Product Not Listed Above | $3.25 | L53 |
| fairlife Yup! Ultra-Filtered Milk | 14oz Single | $2.17 | L54 |
| | 14 oz 12-Pack | $24.79 | L55 |
| | Any Other Yup! Product Not Listed Above | $2.17 | L56 |
| fairlife Nutrition Plan | 11.5oz Single | $2.71 | L57 |
| | 11.5oz 4-Pack | $7.14 | L58 |
| | 11.5oz 12-Pack | $16.20 | L59 |
| | 11.5oz 18-Pack | $24.99 | L62 |
| | Any Other Nutrition Plan Not Listed Above | $2.71 | L63 |
| fairlife Smart Snacks | 8oz Single | $2.21 | L64 |
| | 8oz 4-Pack | $7.95 | L65 |
| | 8oz 12-Pack | $27.23 | L66 |
| | Any Other Smart Snacks Product Not Listed Above | $2.21 | L67 |
| fairlife Good Moo'd | Per Unit | $4.02 | L68 |
| fairlife Yogurt | Per Unit | $4.93 | L69 |
| fairlife Ice Cream | Per Unit | $4.43 | L72 |
| fairlife Creamer | Per Unit | $3.15 | L73 |

## SECTION III: CERTIFICATION AND SIGNATURE

**AFFIRMATION (required):** By signing below, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, that I purchased the products I have listed in my Claim Form, and that I believe I am a Settlement Class Member entitled to the relief requested by submitting this Claim Form.

Signature of Claimant:

Date:

MM – DD – YY

## SECTION IV: METHODS OF SUBMISSION

**ONLINE**:

To submit a Claim for a payment from the Settlement Fund, you may complete your claim online at [website URL] using the Unique ID above.  The deadline to file a claim online is **Claims Filing Deadline**.

If your claim includes purchases of Covered Products that total $80.00 or more based on average retail price(s), you must upload your receipts while filing online.

**MAILED CLAIM FORM**:

Alternatively, you may complete the Claim Form above and submit it by U.S. Mail addressed to:

In re: fairlife Milk Products Litigation
P.O Box 5569
Portland, OR 97228-5569

If you send in a Claim Form by regular mail, it must be <u>postmarked</u> on or before **Claims Filing Deadline**.

If you submit receipts in support of your claim via US Mail, please send copies as originals cannot be returned to you.

**QUESTIONS**:

For additional information and answers to frequently asked questions, visit [website URL] or call 1-855-604-1865.

# Exhibit B



# If you or your business purchased fa!rlife or Fair Oaks Farms Milk Products, you may be entitled to a Cash Award from a class action settlement.

A settlement has been reached in a class action lawsuit stating Defendants falsely labeled and marketed certain dairy products (sold under the brand names "fa!rlife" or "FOF") produced using milk from cows that were allegedly not treated humanely. Defendants deny all allegations, and the Court has not decided who is right. For a list of the Covered Products, visit www.XXXXXXXXXXXX.com. If you purchased one or more of these products, you are included in the Settlement.

A $21 million Settlement Fund has been created to pay Class Members who submit valid claims. The deadline to file a claim is **MONTH DAY, 20XX**. Claims can be quickly and easily submitted online at www.XXXXXXXXXXXX.com. You can also download a paper claim from the website or by calling the phone number below. If you do not want to be bound by the Settlement you must exclude yourself by **MONTH DAY, 20XX**. If you do not exclude yourself, you may object to the Settlement by **MONTH DAY, 20XX**.

This notice is only a short summary of the lawsuit and your rights. Detailed information about the claims in the lawsuit, the Defendants' reply and all of your rights if you are a Class Member is available at www.XXXXXXXXXXXX.com or by calling toll-free 1-XXX-XXX-XXXX.

Claims Administrator
P.O. Box XXXX
Portland, OR 97XXX-XXXX

**If you or your business purchased fa!rlife or Fair Oaks Farms Milk Products, you may be entitled to a Cash Award from a class action settlement.**

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

**What Is This Notice About?** A settlement has been reached in a class action lawsuit stating Defendants falsely labeled and marketed certain dairy products (sold under the brand names "fa!rlife" or "FOF") produced using milk from cows that were allegedly not treated humanely. Defendants deny all allegations, and the Court has not decided who is right.

**Who's In the Settlement? You are receiving this notice as records indicate you may be a Class Member.** You are a Settlement Class Member if you purchased, for personal use and not for resale, any fa!rlife or FOF Covered Product on or before Month DD, 2022. For a list of the Covered Products, visit www.XXXXXXXXXXXX.com.

**What does the Settlement Provide?** The $21 million Settlement Amount will provide Cash Awards to Settlement Class Members who submit valid claims. Settlement Class Members are eligible to receive a 25% Cash Award reimbursement for Covered Purchases with a maximum reimbursement of $100. Claims with Valid Proof of Purchase may be eligible to receive a maximum of $80 as a Cash Award. Claims without Valid Proof of Purchase may be eligible to receive a maximum of $20 as a Cash Award. Settlement Class Members may submit Claims with and without Valid Proof of Purchase. The cost of notice and administration for the Settlement, attorneys' fees and costs, and service awards to the Named Plaintiffs will also be paid out of the Settlement Amount, if approved by the Court.

**What are Your Options?** If you are a Settlement Class Member, you must fill out and submit a Claim Form to qualify for a Cash Award. You can quickly and easily file your Claim online at www.XXXXXXXXXXXX.com. You can also download a paper Claim Form from the website or get one by calling the Claims Administrator at 1-XXX-XXX-XXXX. The completed Claim Form must be submitted online by **Month DD, 20XX**, or by mail postmarked by **Month DD, 20XX**.

If you do not want a Cash Award, and want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement (get out of the Settlement). This is called "excluding yourself"—or is sometimes referred to as "opting out" of the settlement class. Unless you exclude yourself from the Settlement Class, you will remain in the Settlement Class, and that means you cannot sue, continue to sue or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. Your request for exclusion must be submitted online at www.XXXXXXXXXXXX.com or by mail postmarked by **Month DD, 20XX**. If you do not exclude yourself from the Settlement, you may object to the Settlement if you do not like any part of it. The deadline to object is **Month DD, 20XX**.

The Court will hold a Fairness Hearing at **_:__ _.m. on Month DD, 20XX**, to hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses. If there are objections, the Court will consider them. You may appear at the Fairness Hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

This notice summarizes the proposed Settlement. More information on the lawsuit and your rights are available at www.XXXXXXXXXXXX.com or by calling toll-free 1-XXX-XXX-XXXX.

Email Notice

**To:** <<Class Member Email>>
From: Settlement Administrator <noreply@XXXXXXXXXXXXXXXX.com>
Subject: fa!rlife Milk Products Class Action Settlement

# If you or your business purchased fa!rlife or Fair Oaks Farms Milk Products, you may be entitled to a Cash Award from a class action settlement.

**What Is This Notice About?** A settlement has been reached in a class action lawsuit stating Defendants falsely labeled and marketed certain dairy products (sold under the brand names "fa!rlife" or "FOF") produced using milk from cows that were allegedly not treated humanely. Defendants deny all allegations, and the Court has not decided who is right.

**Who's In the Settlement? You are receiving this email as records indicate you may be a Class Member.** You are a Settlement Class Member if you purchased, for personal use and not for resale, any fa!rlife or FOF Covered Product on or before Month DD, 2022. For a list of the Covered Products, visit the Settlement Website here.

**What does the Settlement Provide?** The $21 million Settlement Amount will provide Cash Awards to Settlement Class Members who submit valid claims. Settlement Class Members are eligible to receive a 25% Cash Award reimbursement for Covered Purchases with a maximum reimbursement of $100. Claims with Valid Proof of Purchase may be eligible to receive a maximum of $80 as a Cash Award. Claims without Valid Proof of Purchase may be eligible to receive a maximum of $20 as a Cash Award. Settlement Class Members may submit Claims with and without Valid Proof of Purchase. The cost of notice and administration for the Settlement, attorneys' fees and costs, and service awards to the Named Plaintiffs will also be paid out of the Settlement Amount, if approved by the Court.

**What are Your Options?** If you are a Settlement Class Member, you must fill out and submit a Claim Form to qualify for a Cash Award. You can quickly and easily file your Claim online here. You can also download a paper Claim Form from the website or get one by calling the Claims Administrator at 1-XXX-XXX-XXXX. The completed Claim Form must be submitted online by **Month DD, 20XX**, or by mail postmarked by **Month DD, 20XX.**

If you do not want a Cash Award, and want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement (get out of the Settlement). This is called "excluding yourself"—or is sometimes referred to as "opting out" of the settlement class. Unless you exclude yourself

from the Settlement Class, you will remain in the Settlement Class, and that means you cannot sue, continue to sue or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. Your request for exclusion must be submitted online here or by mail postmarked by **Month DD, 20XX**. If you do not exclude yourself from the Settlement, you may object to the Settlement if you do not like any part of it. The deadline to object is **Month DD, 20XX.**

The Court will hold a Fairness Hearing at **_:__ _.m. on Month DD, 20XX**, to hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses. If there are objections, the Court will consider them. You may appear at the Fairness Hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

This notice summarizes the proposed Settlement. More information on the lawsuit and your rights are available at the Settlement Website or by calling toll-free 1-XXX-XXX-XXXX.

Exhibit C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

# If you or your business purchased fa!rlife or Fair Oaks Farms Milk Products, you may be entitled to a Cash Award from a class action settlement.

SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB

*A federal court has authorized this Notice. This is not a solicitation from a lawyer. Your legal rights are affected whether you act or do not act. Please read this Notice carefully.*

- A $21 million Settlement has been reached in a class action lawsuit filed against Defendants The Coca-Cola Company ("TCCC"), fairlife, LLC ("fairlife"), Fair Oaks Farms, LLC ("FOF"), Mike McCloskey and Sue McCloskey ("the McCloskeys"), and Select Milk Producers, Inc. ("Select"), relating to fairlife and FOF Milk Products. The lawsuit alleges that Defendants falsely labeled and marketed certain dairy products produced using milk from cows that were allegedly not treated humanely. Defendants deny all allegations and have settled this lawsuit to avoid further litigation. The Court has not decided who is right.

- You may submit a Claim Form to receive 25% of the average retail purchase price, up to $100, for your purchases of fairlife Milk Products and FOF Milk Products, if the products were purchased for personal use and not for resale, and were purchased on or before **Month DD, 2022** (see Question 6 for a complete list of the Covered Products). Claim Forms submitted <u>without</u> Valid Proof of Purchase will be capped at a Cash Award of up to $20 and Claim Forms submitted <u>with</u> Valid Proof of Purchase will be capped at a Cash Award of up to $80, subject to certain adjustments (upward and downward) depending on the number of claims submitted.

- Your legal rights are affected whether or not you act. ***Please read this notice carefully***.

| YOUR RIGHTS AND CHOICES | | DEADLINE |
|---|---|---|
| **Submit a Claim Form** | The only way to get a Cash Award is to submit a Claim Form with and/or without Valid Proof of Purchase. | Submit a Claim Form by: **Month DD, 20YY** |
| **Exclude Yourself (Opt Out)** | Get no Cash Award but keep any right to file your own lawsuit against Defendants about the legal claims in this case. | Request Exclusion by: **Month DD, 2022** |
| **Object** | Tell the Court why you do not like the Settlement. If approved, you will still be bound by the Settlement, and you may still file a Claim Form for a Cash Award. | File an Objection by: **Month DD, 2022** |
| **Attend A Hearing** | Ask to speak in Court about why you do not support the proposed Settlement or any of its provisions. The Fairness Hearing is **Month DD, 2022**. | File Notice of Appearance by: **Month DD, 2022** |
| **Do Nothing** | Get no Cash Award. Give up legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Cash Awards will be sent if the Court approves the Settlement and after appeals are resolved. Please be patient.

**Questions? Call 1-\_\_\_-\_\_\_-\_\_\_\_, or Visit www._____.com**

**WHAT THIS NOTICE CONTAINS**

**BASIC INFORMATION** .........................................................................................**PAGE 3**
    1. Why should I read this Notice?
    2. What is this lawsuit about?
    3. What is a class action?
    4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ............................................................................**PAGE 3**
    5. Am I part of the Settlement?
    6. What are the Covered Products?

**THE SETTLEMENT BENEFITS — WHAT YOU GET** ...........................................**PAGE 6**
    7. What does the Settlement provide?
    8. What can I get from the Settlement?

**HOW TO GET BENEFITS FROM THE SETTLEMENT** ........................................**PAGE 6**
    9. How can I get my Cash Award?
    10. When will I receive my Cash Award?
    11. What am I giving up to receive these Settlement benefits?

**THE LAWYERS REPRESENTING YOU** ................................................................**PAGE 7**
    12. Do I have lawyers in this case?
    13. How will the lawyers be paid?

**YOUR RIGHTS — EXCLUDING YOURSELF FROM THE SETTLEMENT** ...........**PAGE 8**
    14. How do I get out of the Settlement?
    15. If I exclude myself, can I get anything from this Settlement?

**YOUR RIGHTS — OBJECTING TO THE SETTLEMENT** .....................................**PAGE 8**
    16. How do I tell the Court that I do not like the Settlement?
    17. What is the difference between objecting and asking to be excluded?

**YOUR RIGHTS — APPEARING AT THE FAIRNESS HEARING** ..........................**PAGE 9**
    18. When and where will the Court decide whether to approve the Settlement?
    19. Do I have to attend the Fairness Hearing?
    20. May I speak at the Fairness Hearing?

**YOUR RIGHTS — DO NOTHING** ..........................................................................**PAGE 10**
    21. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..........................................................................**PAGE 10**
    22. Are there more details about the Settlement?
    23. How do I get more information?

**Questions? Call 1-___-___-____, or Visit www._____.com**

# BASIC INFORMATION

## 1. Why should I read this Notice?

A Court has preliminarily established, or "certified," this case as a class action lawsuit for purposes of settlement.

This Notice explains the class action lawsuit, the proposed Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get the benefits. If you are a Settlement Class Member, you have legal rights and options before the Court decides whether to give final approval to the proposed Settlement. This Notice explains all of these things. For the precise terms and conditions of the Settlement, please review the Settlement agreement, available at [website URL].

The Court in charge of this case is the United States District Court for the Northern District of Illinois. The lawsuit is known as *In re fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, Lead Case No. 1:19-cv-03924-RMD-MDW.

## 2. What is this lawsuit about?

This lawsuit asserts claims for, among other things, breach of express and implied warranty, unjust enrichment, common law fraud, intentional and negligent misrepresentation, and violations of certain state consumer protection, false advertising, and unfair competition statues.

The lawsuit alleges that Defendants falsely labeled and marketed certain dairy products using milk produced from cows that were allegedly not treated humanely. The Named Plaintiffs allege that they would not have paid as much for the Milk Products had they known that the cows were not treated humanely. Defendants deny all allegations. The Court has not decided who is right.

## 3. What is a class action?

In a class action lawsuit, one or more persons or entities called named plaintiffs sue on behalf of other persons and entities that have similar claims. The people and entities together are a "Settlement Class" or "Settlement Class Members." In this lawsuit, the people who sued are called the "Named Plaintiffs." The company and people they are suing, The Coca-Cola Company, fairlife, LLC, Fair Oaks Farms, LLC, Mike McCloskey and Sue McCloskey, and Select Milk Producers, Inc., are called the "Defendants." One court resolves the issues for everyone in the Settlement Class, except for those people who choose to exclude themselves (opt out) from the Settlement Class.

## 4. Why is there a Settlement?

The Court has not decided in favor of the Named Plaintiffs or the Defendants. Instead, both sides agreed to a Settlement. By agreeing to settle, both sides avoid the cost and risk of a trial, and Settlement Class Members who submit a valid Claim Form will get a Cash Award. The Named Plaintiffs and Class Counsel believe the Settlement is best for the Settlement Class and represents a fair, reasonable and adequate resolution of the lawsuit.

The Defendants deny the claims in the lawsuit; deny all allegations of wrongdoing, fault, liability or damage to the Named Plaintiffs and the Settlement Class; and deny that they acted improperly or wrongfully in any way. Defendants nevertheless recognize the expense and time that would be required to defend the lawsuit through trial and have taken this into account in agreeing to this Settlement.

# WHO IS IN THE SETTLEMENT?

To see if you are eligible for benefits, you first have to determine if you are a Settlement Class Member.

## 5.  Am I part of the Settlement?

You are a Settlement Class Member if you are a Person (as defined below) in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before Month DD, 2022. The fairlife and FOF milk "Covered Products" included in the Settlement include the products listed in Question 6.

"Person" is defined as an individual, corporation, partnership, limited partnership, limited liability company, association, member, joint stock company, estate, legal representative, trust, unincorporated association, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

Excluded from the Settlement are: (i) Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members; (ii) Class Counsel; (iii) the judges who have presided over the Litigation; (iv) local, municipal, state, and federal governmental agencies; and (v) all persons who have timely submitted a request for exclusion (opt-out) from the Settlement Class in compliance with the Court's Orders.

If you are unsure whether you are included, you can call or email the Claims Administrator at 1-___-___-____ or _____@___.com. Epiq Class Action and Claims Solutions, Inc. is the Claims Administrator for the Settlement.

## 6.  What are the Covered Products?

The "Covered Products" are all fairlife Milk Products and all FOF Milk Products, including the following, which lists the container size and the agreed average retail price:

| fairlife Ultra-Filtered Milk (UFM) | | | |
|---|---|---|---|
| All container sizes; all grades; all fat contents, including but not limited to whole, 2%, 1%, and skim; and all flavors, including but not limited to original/plain, chocolate/mocha, vanilla, and strawberry. | | | |
| 8oz 6-Pack | $6.16 | 8oz 12-Pack | $10.40 |
| 11.5oz Single | $2.09 | 14oz Single | $2.99 |
| 52oz Single | $4.04 | 52oz 2-Pack | $6.61 |
| 52oz 3-Pack | $9.00 | Any Other UFM Product Not Listed Above | $2.09 |
| fairlife DHA Milk | | | |
| All container sizes; all grades; all fat contents, including but not limited to whole and 2%; and all flavors, including but not limited to original/plain and chocolate/mocha. | | | |
| 8oz 4-Pack | $5.41 | 52oz Single | $4.48 |
| 52oz 2-Pack | $6.87 | Any Other DHA Product Not Listed Above | $4.48 |
| fairlife Core Power Protein Shakes | | | |
| All container sizes; all grades; and all flavors, including but not limited to banana, chocolate/mocha, coffee, strawberry, vanilla, and honey. | | | |
| 8oz Single | $2.50 | 8oz 4-Pack | $7.05 |
| 11.5oz. Single | $3.39 | 11.5oz 12-Pack | $26.22 |
| 14oz Single | $3.25 | 14oz 12-Pack | $27.20 |
| Any Other Core Power Protein Shake Product Not Listed Above | | | $2.50 |
| fairlife Core Power Elite Protein Shakes | | | |
| All container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, strawberry, and vanilla. | | | |
| 14oz Single | $4.07 | 14oz 8-Pack | $22.47 |
| 14oz 12-Pack | $38.57 | Any Other Core Power Elite Protein Shake Product Not Listed Above | $4.07 |

Questions? Call 1-___-___-____, or Visit www._____.com

- 4 -

| fairlife Core Power Light Protein Shakes | | | |
|---|---|---|---|
| All container sizes; all grades; and all flavors, including but not limited to chocolate/mocha. | | | |
| 11.5oz Single | $3.25 | 11.5oz 12-Pack | $24.10 |
| Any Other Core Power Light Protein Shake Product Not Listed Above | | | $3.25 |

| fairlife Yup! Ultra-Filtered Milk | | | |
|---|---|---|---|
| All container sizes; all grades; all fat contents, including but not limited to 2% and 1%; and all flavors, including but not limited to original/plain, chocolate/mocha, vanilla, cookies & creamiest, and strawberry. | | | |
| 14oz Single | $2.17 | 14 oz 12-Pack | $24.79 |
| Any Other Yup! Product Not Listed Above | | | $2.17 |

| fairlife Nutrition Plan | | | |
|---|---|---|---|
| All container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, coffee, vanilla, salted caramel, and strawberry. | | | |
| 11.5oz Single | $2.71 | 11.5oz 4-Pack | $7.14 |
| 11.5oz 12-Pack | $16.20 | 11.5oz 18-Pack | $24.99 |
| Any Other Nutrition Plan Not Listed Above | | | $2.71 |

| fairlife Smart Snacks | | | |
|---|---|---|---|
| All container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, vanilla, and strawberry. | | | |
| 8oz Single | $2.21 | 8oz 4-Pack | $7.95 |
| 8oz 12-Pack | $27.23 | Any Other Smart Snacks Product Not Listed Above | $2.21 |

| fairlife Good Moo'd | | fairlife Yogurt | |
|---|---|---|---|
| All container sizes; all grades; and all fat contents, including but not limited to whole, 2%, and skim; and all flavors, including but not limited to original/plain. | | All container sizes; all grades; and all flavors, including but not limited to blueberry, peach, plain, strawberry, and vanilla. | |
| Per Unit | $4.02 | Per Unit | $4.93 |

| fairlife Ice Cream | | fairlife Creamer | |
|---|---|---|---|
| All container sizes; all grades; and all flavors, including but not limited to butter pecan, caramel toffee crunch, chocolate, chocolate peanut butter, cookie dough, cookies and cream, dark cherry chunk, double fudge brownie, java chip, mint chip, and vanilla. | | All container sizes; all grades; and all flavors, including but not limited to sweet cream, hazelnut, vanilla, and caramel. | |
| Per Unit | $4.43 | Per Unit | $3.15 |

| FOF Milk | | | |
|---|---|---|---|
| All container sizes, grades, fat contents, and flavors including but not limited to whole, 2%, 1%, skim, and chocolate. | | | |
| FOF Half Pint | $0.79 | FOF 11.5 oz-12.0 oz, 16 oz, Pint | $1.89 |
| FOF 1.5 Liter, 52 oz, 64 oz | $3.69 | FOF Gallon | $3.99 |

| FOF Ice Cream | | | |
|---|---|---|---|
| All container sizes and flavors including but not limited to vanilla, chocolate, strawberry, butter pecan, cookies and cream, and mint. | | | |
| FOF Pint | $6.29 | FOF 3 Gallon | $49.99 |

| FOF Yogurt | | | |
|---|---|---|---|
| Including but not limited to all container sizes and styles including Greek. | | | |
| FOF Small | $2.99 | FOF Large | $4.99 |

| FOF Butter | | FOF Eggnog | |
|---|---|---|---|
| All container sizes and flavors including but not limited to all natural butter, garlic & parsley, honey, and cinnamon. | | FOF Eggnog | $4.99 |
| FOF Butter | $4.39 | | |

**Questions? Call 1-___-___-____, or Visit www._____.com**

# THE SETTLEMENT BENEFITS – WHAT YOU GET

### 7. What does the Settlement provide?

The $21 million Settlement Amount will provide Cash Awards to Settlement Class Members who submit valid claims. Settlement Class Notice and Administrative Costs, Attorneys' Fees and Costs, and Service Awards to the Named Plaintiffs will also be paid out of the Settlement Amount, if approved by the Court.

### 8. What can I get from the Settlement?

**Cash Award:** If you submit a valid Claim Form, you may receive 25% of the average retail purchase price for your purchase of fairlife Milk Products and/or FOF Milk Products (see Question 6 for a list of Covered Products) for a maximum Cash Award of $100 per household, subject to certain capped limits and adjustments (upward or downward) depending on the number of claims filed, so long as the products were purchased for personal use and not for resale and were purchased on or before **Month DD, 2022**.

- **Claims *without* Valid Proof of Purchase:** Claimants who submit a Claim Form without Valid Proof of Purchase may be eligible to receive a maximum of $20 as a Cash Award.

- **Claims *with* Valid Proof of Purchase:** Claimants who submit a Claim Form with Valid Proof of Purchase may be eligible to receive a maximum of $80 as a Cash Award.

- **Claims *with* and *without* Valid Proof of Purchase:** Claim Forms submitted with and without Valid Proof of Purchase are allowed, and claimants who submit such Claim Forms may be eligible to receive a maximum of $100 as a Cash Award. *Note: if you submit Valid Proof of Purchase for all claims, you are still eligible to receive a maximum of $100 as a Cash Award.*

- Valid Proof of Purchase means verifiable documentation of a transaction that reflects the purchase of one or more Covered Products on or before Month DD, 2022. Examples may include but are not limited to store receipts, milk bottles, or any other contemporaneous record of purchase that is objectively verifiable.

**Claims are limited to one Claim Form per household.**

If the total amount of Cash Awards exceed the amount available in the Settlement Fund, then each Cash Award will be proportionately reduced on a *pro rata* basis (equal share) to exhaust the Settlement Fund.

If any funds remain in the Settlement Fund after all Cash Awards are made, Settlement Class Members will be entitled to certain additional *pro rata* (equal share) distributions. After that, subject to the Court's approval, any amount remaining in the Settlement Fund will be donated equally to the U.S. Dairy Education & Training Consortium and The Center for Food Safety.

# HOW TO GET BENEFITS FROM THE SETTLEMENT

### 9. How can I get my Cash Award?

If you are a Settlement Class Member, you must fill out and submit a Claim Form to qualify for a Cash Award. You can file your Claim at [website URL]. You can also download a paper Claim Form from the website or get one by calling the Claims Administrator at 1-___-___-___. The completed Claim Form must be submitted online by **Month DD, 20YY**, or by mail at the address below, **postmarked** by **Month DD, 20YY**.

In re fairlife Milk Products Litigation
P.O. Box ___
Portland, OR ___-___

Upon receiving a completed Claim Form, the Claims Administrator will review the documentation and confirm or deny your eligibility for a Cash Award.

## 10. When will I receive my Cash Award?

The Court will hold a hearing on **Month DD, 2022**, at **_:__ _.m.** (which is subject to change), to decide whether to finally approve the Settlement. Even if the Court finally approves the Settlement, there may be appeals. The appeal process can take time, perhaps more than a year. If you file a valid Claim Form, you will not receive a Cash Award until any appeals are resolved. Please be patient.

## 11. What am I giving up to receive these Settlement benefits?

Unless you exclude yourself ("opt out") from the Settlement Class by timely submitting a request for exclusion from the Settlement Class, you will remain in the Settlement Class, and that means you cannot sue, continue to sue or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. If you sign the Claim Form, you will agree to a Release of claims that describes exactly the legal claims that you give up if you get Settlement benefits. The Release is defined and detailed in the Settlement Agreement, which is available at [website URL].

# THE LAWYERS REPRESENTING YOU

## 12. Do I have lawyers in this case?

The Court has appointed attorneys from the law firms DiCello Levitt Gutzler LLC; Pearson, Simon, & Warshaw, LLP; and Reese LLP to represent you and the other Settlement Class Members. The lawyers are called Class Counsel. They are experienced in handling similar class action cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

You may contact Class Counsel if you have any questions about this Notice or the Settlement. **_Please do not contact the Court_**.

| Amy E. Keller | Melissa S. Weiner | Michael R. Reese |
|---|---|---|
| DiCello Levitt Gutzler LLC | Pearson, Simon & Warshaw, LLP | Reese LLP |
| Ten North Dearborn St., Sixth Fl. | 800 LaSalle Avenue, Suite 2150 | 100 West 93rd Street, 16th Fl. |
| Chicago, IL 60602 | Minneapolis, MN 55402 | New York, NY 10025 |
| Tel: 312-214-7900 | Tel: 612-389-0600 | Tel: 212-643-0500 |
| Email: info@____.com | Email: info@____.com | Email: info@____.com |

## 13. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorneys' fees up to one-third (1/3) ($7 million) of the $21 million Settlement Amount, and in addition to fees, seek reimbursement of litigation costs plus reasonable costs incurred through the Effective Date. Any award of attorneys' fees and costs will be paid from the Settlement Amount. Class Counsel will also ask the Court for Service Awards of $3,500 for each of the Named Plaintiffs. The purpose of the Service Awards is to compensate the

Named Plaintiffs for their time, efforts, and risks taken on behalf of the Settlement Class. Any Service Award payment to the Named Plaintiffs will be paid from the Settlement Amount. The Court may award less than these amounts. Class Counsel's Motion for Attorneys' Fees and Expenses will be available at [website URL] once it has been filed.

## YOUR RIGHTS – EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do *not* want a Cash Award, and want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to exclude yourself from the Settlement (get out of the Settlement). This is called "excluding yourself"—or is sometimes referred to as "opting out" of the settlement class.

### 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a written "request for exclusion" that includes the following:

- Your name;

- Your address;

- Your telephone number;

- A brief statement explaining the Covered Products you purchased to confirm your membership in the Settlement Class;

- Your personal signature; and

- A statement that indicates a desire to exclude yourself from the Settlement Class must be provided.

Your request for exclusion must be submitted online and verified at [website URL] or mailed via U.S. Mail, **postmarked** by **Month DD, 20YY**, to:

In re fairlife Milk Products Litigation
P.O. Box ___
Portland, OR ___-___

Instead of sending a written "request for exclusion", you may exclude yourself from the Settlement by visiting [website URL] and following the instructions provided to exclude yourself.

Only individual requests for exclusion are allowed. "Mass" or "class" requests for exclusion are <u>not</u> allowed according to the terms of the Settlement.

If you do not follow these procedures and deadlines, you will remain a Settlement Class Member and lose any opportunity to exclude yourself from the Settlement. This means that your rights will be determined in this lawsuit by the Settlement Agreement if it receives final approval from the Court.

### 15. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you cannot receive a Cash Award. However, you may sue, continue to sue, or be part of a different lawsuit against the Defendants. If you send in a Request for Exclusion and later change your mind, you may rescind your request by timely submitting a Claim Form to the Claims Administrator to obtain benefits of the Settlement.

## YOUR RIGHTS – OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

## 16. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. You cannot ask the Court for a different Settlement; the Court can only approve or reject the Settlement. If the Court denies approval of the Settlement, no Cash Awards will be sent out, and the lawsuit will continue. If that is what you want to happen, you must object.

To object, you must file a written objection, which includes the following information:

- Your name, address, and telephone number;

- A statement of whether you are represented by counsel and if so, contact information for your counsel;

- Evidence showing you as an objector are a Settlement Class Member;

- A statement as to whether your objection applies to you as a Settlement Class Member or if it applies to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;

- Any other supporting papers, materials, or briefs that you wish the Court to consider when reviewing your objection;

- Your actual written or electronic signature as the objector; and

- A statement regarding whether you and/or your counsel intend to appear at the Fairness Hearing.

Your objection must be submitted to the Court either by filing it with the Court or by mailing it via U.S. Mail to the Court postmarked by **Month DD, 2022**, to the following address:

Class Action Clerk
United States District Court
Northern District of Illinois Eastern Division
219 S. Dearborn Street
Chicago, IL 60604

If you file a timely objection, it will be considered by the Court at the Fairness Hearing. You do not need to attend the Fairness Hearing for the Court to consider your objection.

## 17. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because you are no longer part of the case.

# YOUR RIGHTS – APPEARING AT THE FAIRNESS HEARING

The Court will hold a "Fairness Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

## 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at _:___.m. on **Month XX, 2022**, at the United States District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn Street, Chicago, IL 60604, in Courtroom 2303.

**Questions? Call 1-___-___-____, or Visit www._____.com**

- 9 -

At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses. If there are objections, the Court will consider them. You do not need to attend this hearing. You also do not need to attend to have a comment or objection considered by the Court. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

<u>Note</u>: The date and time of the Fairness Hearing are subject to change by Court Order. Any change will be posted [website URL]. You should check the website to confirm that the date and/or time have not changed.

## 19. Do I have to attend the Fairness Hearing?

No. Class Counsel will answer all questions the Judge may have. However, you are welcome to attend the hearing at your own expense. If you submit an objection, you do not have to attend the hearing to talk about your objection. As long as you postmarked or filed your written objection by the deadline, the Judge will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 20. May I speak at the Fairness Hearing?

If you wish to appear at the Fairness Hearing and orally present your objection to the Court, your written objection must include your statement of intent to appear at the Fairness Hearing.

# YOUR RIGHTS – DO NOTHING

## 21. What happens if I do nothing at all?

If you fit the Settlement Class definition described above and do nothing, you will be part of the Settlement Class, but you will not get a Cash Award from the Settlement. Unless you request to exclude yourself from the Settlement, you will <u>not</u> be permitted to continue to assert claims about the issues in this case or subject to the Release in any other lawsuit against Defendants ever again.

# GETTING MORE INFORMATION

## 22. Are there more details about the Settlement?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at [website URL], or by contacting Class Counsel (see contact information in Question 12).

## 23. How do I get more information?

You can call toll-free 1-___-___-____, write to In re fairlife Milk Products Litigation, P.O. Box ___, Portland, OR ___-___; or go to [website URL], where you will find answers to common questions about the Settlement, a Claim Form, motions for approval of the Settlement and Class Counsel's request for attorneys' fees and expenses (once it is filed), and other important documents in the case.

You may also contact Class Counsel.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

# Exhibit D

**FAIR OAKS FARMS, LLC**
**COVERED PRODUCTS AND PRICES**

I.  **FOF MILK** (all container sizes, grades, fat contents, and flavors including but not limited to whole, 2%, 1%, skim, and chocolate)

| Container Size | Agreed Average Retail Price |
|---|---|
| FOF Half Pint | $0.79 |
| FOF 11.5 oz-12.0 oz | $1.89 |
| FOF 16 oz | |
| FOF Pint | |
| FOF 1.5 Liter | $3.69 |
| FOF 52 oz | |
| FOF 64 oz | |
| FOF Gallon | $3.99 |

II.  **FOF ICE CREAM** (all container sizes and flavors including but not limited to vanilla, chocolate, strawberry, butter pecan, cookies and cream, and mint)

| Container Size | Agreed Average Retail Price |
|---|---|
| FOF Pint | $6.29 |
| FOF 3 Gallon | $49.99 |

III.  **FOF BUTTER** (all container sizes and flavors including but not limited to all natural butter, garlic & parsley, honey, and cinnamon)

| | |
|---|---|
| FOF Butter | $4.39 |

IV.  **FOF YOGURT** (including but not limited to all container sizes and styles including Greek)

| Container Size | Agreed Average Retail Price |
|---|---|
| FOF Small | $2.99 |
| FOF Large | $4.99 |

V.  **FOF EGGNOG**

| | |
|---|---|
| FOF Eggnog | $4.99 |

**FAIRLIFE, LLC**
**COVERED PRODUCTS AND PRICES**

**I.**   **FAIRLIFE ULTRA-FILTERED MILK (UFM)** (all container sizes; all grades; all fat contents, including but not limited to whole, 2%, 1%, and skim; and all flavors, including but not limited to original/plain, chocolate/mocha, vanilla, and strawberry)

| Container Size | Agreed Average Retail Price |
|---|---:|
| 8oz 6-Pack | $6.16 |
| 8oz 12-Pack | $10.40 |
| 11.5oz Single | $2.09 |
| 14oz Single | $2.99 |
| 52oz Single | $4.04 |
| 52oz 2-Pack | $6.61 |
| 52oz 3-Pack | $9.00 |
| Any Other UFM Product Not Listed Above | $2.09 |

**II.**   **FAIRLIFE DHA MILK** (all container sizes; all grades; all fat contents, including but not limited to whole and 2%; and all flavors, including but not limited to original/plain and chocolate/mocha)

| Container Size | Agreed Average Retail Price |
|---|---:|
| 8oz 4-Pack | $5.41 |
| 52oz Single | $4.48 |
| 52oz 2-Pack | $6.87 |
| Any Other DHA Product Not Listed Above | $4.48 |

**III.**   **FAIRLIFE CORE POWER PROTEIN SHAKES** (all container sizes; all grades; and all flavors, including but not limited to banana, chocolate/mocha, coffee, strawberry, vanilla, and honey)

| Container Size | Agreed Average Retail Price |
|---|---:|
| 8oz Single | $2.50 |
| 8oz 4-Pack | $7.05 |

| **Container Size** | **Agreed Average Retail Price** |
|---|---|
| 11.5oz. Single | $3.39 |
| 11.5oz 12-Pack | $26.22 |
| 14oz Single | $3.25 |
| 14oz 12-Pack | $27.20 |
| Any Other Core Power Protein Shake Product Not Listed Above | $2.50 |

IV.   **FAIRLIFE CORE POWER ELITE PROTEIN SHAKES** (all container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, strawberry, and vanilla)

| **Container Size** | **Agreed Average Retail Price** |
|---|---|
| 14oz Single | $4.07 |
| 14oz 8-Pack | $22.47 |
| 14oz 12-Pack | $38.57 |
| Any Other Core Power Elite Protein Shake Product Not Listed Above | $4.07 |

V.   **FAIRLIFE CORE POWER LIGHT PROTEIN SHAKES** (all container sizes; all grades; and all flavors, including but not limited to chocolate/mocha)

| **Container Size** | **Agreed Average Retail Price** |
|---|---|
| 11.5oz Single | $3.25 |
| 11.5oz 12-Pack | $24.10 |
| Any Other Core Power Light Protein Shake Product Not Listed Above | $3.25 |

VI.   **FAIRLIFE YUP! ULTRA-FILTERED MILK** (all container sizes; all grades; all fat contents, including but not limited to 2% and 1%; and all flavors, including but not limited to original/plain, chocolate/mocha, vanilla, cookies & creamiest, and strawberry)

| **Container Size** | **Agreed Average Retail Price** |
|---|---|
| 14oz Single | $2.17 |

| Container Size | Agreed Average Retail Price |
|---|---|
| 14 oz 12-Pack | $24.79 |
| Any Other Yup! Product Not Listed Above | $2.17 |

VII.  **FAIRLIFE NUTRITION PLAN** (all container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, coffee, vanilla, salted caramel, and strawberry)

| Container Size | Agreed Average Retail Price |
|---|---|
| 11.5oz Single | $2.71 |
| 11.5oz 4-Pack | $7.14 |
| 11.5oz 12-Pack | $16.20 |
| 11.5oz 18-Pack | $24.99 |
| Any Other Nutrition Plan Not Listed Above | $2.71 |

VIII.  **FAIRLIFE SMART SNACKS** (all container sizes; all grades; and all flavors, including but not limited to chocolate/mocha, vanilla, and strawberry)

| Container Size | Agreed Average Retail Price |
|---|---|
| 8oz Single | $2.21 |
| 8oz 4-Pack | $7.95 |
| 8oz 12-Pack | $27.23 |
| Any Other Smart Snacks Product Not Listed Above | $2.21 |

IX.  **FAIRLIFE GOOD MOO'D** (all container sizes; all grades; and all fat contents, including but not limited to whole, 2%, and skim; and all flavors, including but not limited to original/plain)

| Container | Agreed Average Retail Price |
|---|---|
| Per Unit | $4.02 |

**X.** **FAIRLIFE YOGURT** (all container sizes; all grades; and all flavors, including but not limited to blueberry, peach, plain, strawberry, and vanilla)

| Container | Agreed Average Retail Price |
|---|---|
| Per Unit | $4.93 |

**XI.** **FAIRLIFE ICE CREAM** (all container sizes; all grades; and all flavors, including but not limited to butter pecan, caramel toffee crunch, chocolate, chocolate peanut butter, cookie dough, cookies and cream, dark cherry chunk, double fudge brownie, java chip, mint chip, and vanilla)

| Container | Agreed Average Retail Price |
|---|---|
| Per Unit | $4.43 |

**XII.** **FAIRLIFE CREAMER** (all container sizes; all grades; and all flavors, including but not limited to sweet cream, hazelnut, vanilla, and caramel)

| Container | Agreed Average Retail Price |
|---|---|
| Per Unit | $3.15 |

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: FAIRLIFE MILK** ) | **MDL No. 2909** |
| **PRODUCTS MARKETING AND** ) | |
| **SALES PRACTICES LITIGATION** ) | **Master Case No. 1:19-cv-03924** |
| ) | |
| ) | **Hon. Robert M. Dow, Jr.** |
| ) | |
| ) | **This Document Relates To All Cases** |
| ) | |

## PRELIMINARY APPROVAL ORDER

Named plaintiffs Terri Birt, Carol Cantwell, Debra French, Karai Hamilton, Henry Henderson, Paula Honeycutt, Michelle Ingrodi, Jae Jones, Nabil Khan, Kaye Mallory, Christina Parlow, Cindy Peters, Jenny Rossano, David Rothberg, Eliana Salzhauer, Connie Sandler, Diana Tait, Demetrios Tsiptsis, and, Arnetta Velez, (collectively, the "Named Plaintiffs," and, collectively, with the members of the Settlement Class, the "Settlement Class Members"), on the one hand, and fairlife, LLC ("fairlife"), The Coca-Cola Company ("TCCC"), Select Milk Producers, Inc. ("Select"), Fair Oaks Farms, LLC ("FOF"), and Mike McCloskey and Sue McCloskey ("the McCloskeys") (collectively, "Defendants"), on the other hand, have entered into a Class Action Settlement Agreement and Release entered into as of April 14, 2022 (the "Settlement Agreement") to settle the above-captioned litigation ("Litigation"). The Settlement Agreement, together with its exhibits incorporated herein, sets forth the terms and conditions for a proposed settlement and dismissal with prejudice of the Litigation. Additionally, Class Counsel has filed a Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification, and Approval of Notice Plan Pursuant to Federal Rule of Civil Procedure 23(e)(1).

Having reviewed the Settlement Agreement and its exhibits, the Motion, the pleadings and other papers on file in this action, and statements of counsel, the Court finds that the Motion should be GRANTED and that this Preliminary Approval Order should be entered. Terms and phrases used in this Preliminary Approval Order not otherwise defined herein shall have the same meanings ascribed to them in the Settlement Agreement.

NOW, THEREFORE, THE COURT HEREBY FINDS, CONCLUDES AND ORDERS THE FOLLOWING:

1.      For purposes of preliminary approval, this Court assesses the Settlement Agreement under Fed. R. Civ. P. 23(e).  Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner" to proposed Settlement Class Members "if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

**Likely Approval as Fair, Reasonable and Adequate**

2.      To determine whether the Settlement Agreement is fair, reasonable and adequate, Rule 23(e)(2) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

3.      The Settlement Class representatives are adequately representing the proposed Settlement Class: they share the same alleged injury (that they purchased products with allegedly

false or misleading labeling) and the same interest (maximizing recovery). Amy E. Keller of DiCello Levitt Gutzler LLC, Michael R. Reese of Reese LLP, and Melissa S. Weiner of Pearson, Simon & Warshaw, LLP are also adequately representing the proposed Settlement Class.

4. There is no question that the Parties are at arm's length. The Settlement Agreement appears to be the result of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through mediation-related discovery and whose negotiations were supervised by respected class-action mediator the Honorable Wayne R. Andersen (Ret.) of JAMS.

5. The Settlement Agreement provides adequate relief to the proposed Settlement Class. As part of the settlement, Defendants have agreed to pay $21 million dollars to cover Cash Awards, Notice and Administration Costs, Attorneys' Fees and Costs, and Service Awards. From that amount, Settlement Class Members are eligible to receive 25% of their purchase price of Covered Products, up to a maximum Cash Award of $20.00 with no Valid Proof of Purchase and up to a maximum Cash Award of $80.00 with Valid Proof of Purchase for a cumulative Cash Award of $100. In addition, Defendants have agreed to implement significant injunctive relief aimed at animal welfare. If the Settlement Agreement had not been reached, the Parties planned to vigorously litigate this matter, including Defendants' expected motions dismiss as well as class certification, and Plaintiffs' chances at trial also would have been uncertain. In light of the costs, risks and delay of trial and appeal, this compensation is at least adequate for purposes of Rule 23(e)(1).

6. There is no reason to doubt the effectiveness of distributing relief under the Settlement Agreement. As further addressed below, the Parties propose a notice plan, which is detailed in the Declaration of Cameron R. Azari, Esq. on Class Notice Program and Class Notice,

3

filed concurrently with Plaintiffs' Motion for Preliminary Approval, which the Court finds provides "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

7.      This Court will fully assess the request of Class Counsel for the Attorneys' Fees and Costs and Service Awards after receiving their motion supporting such request.  At this stage, the Court finds that the plan to request attorneys' fees and costs to be paid from the Settlement Amount creates no reason not to direct notice to the proposed Settlement Class.  In particular, should the Court find any aspect of the requested Attorneys' Fees and Costs unsupported or unwarranted, such funds would not be returned to Defendants, and therefore the Settlement Class would not be prejudiced by directing notice at this time.

8.      No agreements exist between the Parties aside from those referred to in the Settlement Agreement and/or submitted to the Court.

9.      The Settlement Agreement treats members of the proposed Settlement Class equitably relative to each other because all members of the proposed Settlement Class are eligible for the same award of 25% of their purchase price.  These are equitable terms.

10.     Having thoroughly reviewed the Settlement Agreement, the supporting exhibits and the Parties' arguments, this Court finds that the Settlement Agreement is fair, reasonable and adequate to warrant providing notice to the Settlement Class, and thus likely to be approved, subject to further consideration at the Final Approval Hearing to be conducted as described below.

11.     The Court preliminarily approves the Settlement Agreement subject to the Fairness Hearing for purposes of deciding whether to grant final approval to the Settlement.  This determination permitting notice to the Settlement Class is not a final finding, but a determination that there is probable cause to submit the proposed Settlement Agreement to the Settlement Class

Members and to hold a Fairness Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement

## **Likely Certification of Settlement Class**

12.     The Court assesses the likelihood that it will be able to certify the proposed Settlement Class under Rules 23(a) and 23(b)(3) (because this Settlement Class seeks damages). *See* Fed. R. Civ. P. 23(a)-(b).  The Court makes this assessment for the purposes of settlement only at this time.

13.     The proposed Settlement Class is sufficiently numerous under Rule 23(a)(1) because there are at least thousands of estimated purchasers of the Covered Products.

14.     Resolution of the Litigation would depend on the common answers to certain common questions, including whether Defendants engaged in deceptive or misleading marketing techniques.

15.     Plaintiffs' claims are typical of the claims of the members of the proposed Settlement Class because they challenge the same conduct—product labeling—and make the same legal arguments.  Typicality under Rule 23(a)(3) is satisfied.

16.     The proposed Settlement Class representatives and Class Counsel will fairly and adequately protect the interests of the proposed Settlement Class.

17.     At least for purposes of settlement, the common issues in the Litigation predominate over individual issues under Rule 23(b)(3).  Key elements of Plaintiffs' claims involve the allegedly misleading product labeling.

18.     The settlement would be superior under Rule 23(b)(3) to many individual actions. Many, if not most, members of the proposed Settlement Class may not have suffered sufficient damages to justify the costs of expensive litigation.  The Settlement Agreement ensures that all Settlement Class Members will have the opportunity to be compensated through cash payments.

19.     For these reasons, pursuant to Rule 23, and for settlement purposes only, the Court finds it will likely certify the Settlement Class defined below in paragraph 20 of this Order. This finding is subject to further consideration at the Final Approval Hearing to be conducted as described below.

20.     The Court conditionally certifies for settlement purposes only the following Settlement Class:

> All Persons in the United States, its territories, and the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before the Preliminary Approval Date.

Excluded from the Settlement Class are the following persons:

    i.   Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;

    ii.   Class Counsel;

    iii.   The judges who have presided over the Litigation;

    iv.   Local, municipal, state, and federal government agencies; and

    v.   All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

The Court expressly reserves the right to determine, should the occasion arise, whether Plaintiffs' proposed claims may be certified as a class action for purposes other than settlement, and Defendants hereby retain all rights to assert that Plaintiffs' proposed claims may not be certified as a class action except for settlement purposes.

### **Additional Orders and Deadlines**

21.     The Court appoints the following attorneys to act as Class Counsel:

> Amy E. Keller
> DiCello Levitt Gutzler LLC
> Ten North Dearborn Street, Sixth Floor
> Chicago, Illinois 60602

Telephone: (312) 214-7900

Michael R. Reese
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Melissa S. Weiner
Pearson, Simon & Warshaw, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600

22. The Court appoints Named Plaintiffs as representatives of the Settlement Class.

23. The Court appoints Epiq Class Action & Claims Solutions, Inc. as Claims Administrator in accordance with the provisions of Section XI of the Settlement Agreement.

24. The Court approves the Published Notice, the content of which is without material alteration from Exhibit B to the Settlement Agreement and directs that Published Notice be published in accordance with the provisions of the Settlement Agreement.

25. The Court approves the Official Notice, the content of which is without material alteration from Exhibit C to the Settlement Agreement, and directs that Official Notice be distributed in accordance with the provisions of the Settlement Agreement.

26. The Court approves the Claim Form, the content of which is without material alteration from Exhibit A to the Settlement Agreement and directs that the Claim Form be available for request (either by letter, telephone, or email) from the Claims Administrator and downloadable from the Settlement Website as provided in Section XI, Paragraph 9(d) of the Settlement Agreement.

27. The Court approves the creation of the Settlement Website, as defined in Section I, Paragraph 76 of the Settlement Agreement, that shall include, at a minimum, copies of the Settlement

Agreement, the Notice of Settlement, and the Claim Form, and shall be maintained in accordance with the provisions of Section XI, Paragraph 9(d) of the Settlement Agreement.

28.     The Court finds that, the Notice Plan memorialized in the Declaration of Cameron R. Azari, Esq. on Class Notice Program and Class Notice, filed concurrently with Plaintiffs' Motion for Preliminary Approval, including the Published Notice and Official Notice  (i) is the best practicable notice, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation and of their right to object or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law.

29.     The Court orders the Claims Administrator to file proof of publication of the Published Notice and proof of maintenance of the Settlement Website at or before the Fairness Hearing.

30.     The Court orders any Settlement Class Member who wishes to exclude himself or herself from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked or submitted online through the claims portal and verified no later than ninety (90) days after the Notice Date to the Claims Administrator at the address on the Notice.  The request for exclusion must be personally signed by the Settlement Class Member requesting exclusion and contain the Settlement Class Member's name, address, telephone number, a brief statement explaining the Covered Products the Settlement Class Member purchased to confirm membership in the Settlement Class, and a statement that indicates a desire to be excluded from the Settlement Class. Opt-Outs submitted online must verify the request to exclude via a link sent to the Settlement Class Member who wishes to opt-out prior to the Opt-Out and Objection Date.  A Settlement

Class Member may opt out on an individual and personal basis only; so-called "mass" or "class" opt-outs shall not be allowed.

31.     The Court enjoins all Settlement Class Members unless and until they have timely excluded themselves from the Settlement Class from (i) filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; (ii) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims; and (iii) attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims.

32.     The Court orders that any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class (*i.e.*, becomes an Opt-Out) will be bound by all proceedings, orders, and judgments in the Litigation, even if such Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release.

33.     The Court orders that each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the

proposed Settlement or to the Attorneys' Fees and Costs must file with the Court and serve on Class Counsel no later than one hundred twenty (120) days after the Preliminary Approval Date, or as the Court may otherwise direct, a statement of the objection signed by the Settlement Class Member containing all of the following information:

      a.     The objector's full name, address, and telephone number;

      b.     whether the objector is represented by counsel and, if so, contact information for his or her counsel;

      c.     evidence showing that the objector is a Settlement Class Member;

      d.     whether the objection applies to that Settlement Class Member or to a specific subset of the Settlement Class, or to the entire Settlement Class, and state with specificity the grounds for the objection;

      e.     any other supporting papers, materials, or briefs that the objector wishes the Court to consider when reviewing the objection;

      f.     the actual written or electronic signature of the objector making the objection; and

      g.     a statement on whether the objecting objector and/or his or her counsel intend to appear at the Fairness Hearing.

34.     Any response to an objection shall be filed with the Court no later than seven (7) days prior to the Fairness Hearing.

35.     The Court orders that any Settlement Class Member who does not file a timely written objection to the Settlement or who fails to otherwise comply with the requirements of Paragraph 33 of this order shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

36.     The Court orders that any attorney hired by a Settlement Class Member for the purpose of objecting to the Settlement Agreement or to the proposed Settlement or to the Attorneys' Fees and Costs will be at the Settlement Class Member's expense.

37.     The Court orders that any attorney hired by a Settlement Class Member for the purpose of objecting to the proposed Settlement or to the Attorneys' Fees and Costs and who intends to make an appearance at the Fairness Hearing must provide to the Claims Administrator (who shall forward it to Class Counsel and Defense Counsel) and must file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date.

38.     The Court orders that any Settlement Class Member who files a written objection and who intends to make an appearance at the Fairness Hearing must file with the Clerk of the Court a notice of intention to appear no later than the Opt-Out and Objection Date.

39.     The Court orders the Claims Administrator to establish a post office box in the name of the Claims Administrator to be used for receiving requests for exclusion, objections, notices of intention to appear, and any other communications. The Court further orders that only the Claims Administrator, Class Counsel, Defense Counsel, Defendants, the Court, the Clerk of the Court, and their designated agents shall have access to this post office box, except as otherwise provided in the Settlement Agreement.

40.     The Court orders that the Claims Administrator must promptly furnish Class Counsel and Defense Counsel with copies of any and all written requests for exclusion, notices of intention to appear, or other communications that come into its possession, except as expressly provided in the Settlement Agreement.

41.     The Court orders that Class Counsel shall file their applications for Attorneys' Fees and Costs and Named Plaintiffs' Service Awards in accordance with the terms set forth in Section XIII of the Settlement Agreement.

42.     The Court orders the Claims Administrator to provide Class Counsel and Defendants' Counsel with copies of all requests for exclusion to counsel for the Parties on a weekly basis by email and will provide the Opt-Out List on or before one hundred and forty days (140) after the Preliminary Approval Date.

43.     The Court orders that a Fairness Hearing shall be held on _____ at _____ before the undersigned to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court pursuant to a final approval order and judgment.

44.     The Court reserves the right to adjourn or continue the Fairness Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Fairness Hearing or at any adjournment or continuance thereof, and to approve the settlement with modifications, if any, consented to by the counsel for the Settlement Class and Defendants without further notice.

45.     All pretrial proceedings in the Litigation are stayed and suspended until further order of this Court.

46.     As stated in this Order, and consistent with the Settlement Agreement, the following dates and deadlines shall apply to the approval of this Settlement:

| Date | Deadline |
| --- | --- |
| _____/_____/_____<br>*Preliminary Approval + 85 days* | Deadline to file Motion for Approval of Attorneys' Fees and Costs, and Service Awards and Deadline to file Motion for Final Approval of Settlement |
| _____/_____/_____<br>*Preliminary Approval + 120 Days* | Opt-Out and Objection Deadline |
| _____/_____/_____<br>*Preliminary Approval + 143 Days* | Parties to provide Opt-Out List to the Court |
| _____/_____/_____<br>*7 days before Fairness Hearing* | Deadline to Respond to Objections |
| _____/_____/_____<br>at ___:____ __.M. | Fairness Hearing |

Dated: _____

_____
Hon. Robert M. Dow, Jr.
U.S. District Judge

Exhibit F

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **IN RE: FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION** | ) ) ) ) ) ) ) ) ) | **MDL No. 2909** <br><br> **Master Case No. 1:19-cv-03924** <br><br> **Hon. Robert M. Dow, Jr.** <br><br> **This Document Relates To All Cases** |

## <u>STIPULATED INJUNCTION</u>

This matter, having come before the Court on Plaintiffs' Motion for Final Approval, Defendants fairlife, LLC ("fairlife"), Select Milk Producers, Inc. ("Select"), The Coca-Cola Company ("TCCC"), Fair Oaks Farms, LLC ("FOF"), and Mike McCloskey and Sue McCloskey ("the McCloskeys") (collectively, "Defendants") having agreed in the Settlement Agreement to the entry of this Stipulated Injunction, and the Court, after conducting a fairness hearing, considering all arguments in support of and/or in opposition to the Settlement Agreement including the Stipulated Injunction, hereby orders as follows:[1]

1. <u>Term</u>. The term of the Stipulated Injunction shall be three (3) years, which shall commence on the date on which the Final Order and Judgment becomes Final.

2. <u>Third-Party Audit of Select Farms</u>. Validus Verification Services ("Validus"), an independent third-party auditor mutually agreed upon by the Parties, shall conduct annual audits during the term of the Stipulated Injunction of each Select Member Farm Supplier to fairlife that supplies milk to fairlife during the one-year period covered by the annual audit, except as

---

[1] Unless defined otherwise herein, terms and phrases used in this Stipulated Injunction shall have the same meanings ascribed to them in the Settlement Agreement.

1

provided in Sections 4(h) and (i) below relating to transition periods and supply disruptions. The audits shall determine whether each such Select Member Farm Supplier to fairlife substantially complies with the following obligations:

a. Subject to its obligations under local, state, and federal law (and in the case of existing employees, subject to the consent of such employee), each such Select Member Farm Supplier to fairlife shall conduct preliminary criminal background screenings on all Employees with Direct and Regular Animal Contact. Each such Select Member Farm Supplier to fairlife shall also institute a policy barring the hiring of individuals with criminal records for animal abuse or animal cruelty into positions that would involve Direct and Regular Animal Contact.

b. Each such Select Member Farm Supplier to fairlife shall provide animal welfare training to all Employees with Direct and Regular Animal Contact. Such training will consist of instructions and guidance regarding proper and safe animal handling in accordance with the training standards established by Farmers Assuring Responsible Management ("FARM"). Such training will be available in English and Spanish. Each such Select Member Farm Supplier to fairlife shall also provide each such employee with annual animal welfare refresher training in accordance with FARM standards. Such training shall focus on topics such as animal handling (all such Employees with Direct and Regular Animal Contact), as well as down cattle care, euthanasia, calf care, and/or fitness for transport as applicable for those employees who have such responsibilities.

c. Each such Select Member Farm Supplier to fairlife shall provide cooperation to law enforcement relating to the prosecution of any farm employee charged with acts of animal cruelty or criminal neglect.

    d.  Each such Select Member Farm Supplier to fairlife shall have a written

Veterinarian-Client-Patient Relationship ("VCPR") that is signed by the farm owner/manager

and Veterinarian of Record annually.

    e.  Each such Select Member Farm Supplier to fairlife shall maintain a

written herd health plan, as approved no less frequently than annually by each such farm's

Veterinarian of Record.

    f.  Each Veterinarian of Record or such licensed veterinarian designated by

the Veterinarian of Record for each such Select Member Farm Supplier to fairlife shall make

regular welfare visits to each such farm. The frequency of farm visits shall be determined by the

Veterinarian of Record based on his or her professional judgment, the well-being of the cows,

and the type and size of the operation.  Veterinary visits are intended to proactively monitor the

health and well-being of the herd and should include the prevention, treatment, and control of

diseases along with the treatment of physical conditions affecting the herd, including lameness,

locomotion issues, body condition concerns, behavioral issues, and any other areas of veterinary

concern.

    g.  Each such Select Member Farm Supplier to fairlife shall provide

protection from typical climatic heat and cold, taking into account geography, for all age classes

of animals, including appropriate care and protection from heat and cold stress for calves.  Care

and protection strategies shall be consistent with each such farm's written herd health plan, as

approved no less frequently than annually by each such farm's Veterinarian of Record.

    h.  Each such Select Member Farm Supplier to fairlife shall provide: (a)

access to clean, fresh water as necessary to maintain proper hydration to all age classes of

animals (including milk-fed dairy calves); and (b) access to sufficient quantities of feed for

3

maintenance, health, and growth to all age classes of animals. Unless emergency circumstances arise making performance not reasonably practicable (*e.g.*, blizzard, tornado, floods, fire, unforeseen hazards), no such farm shall allow an animal to go without food or water for any period exceeding 24 hours unless authorized by the herd manager acting under the supervision of a veterinarian.

      i.    Each such Select Member Farm Supplier to fairlife shall immediately euthanize or provide care for any cattle identified as having a serious, painful, or life-threatening condition, including, but not limited to, prolapses, non-ambulatory conditions, or difficult deliveries. Non-ambulatory animals will be cared for pursuant to FARM guidelines. All care will be provided pursuant to a current Veterinarian-Client Relationship Agreement. Each such Select Member Farm Supplier to fairlife shall euthanize all animals that are required to be euthanized only through the use of methods approved by the American Association of Bovine Practitioners ("AABP") or American Veterinary Medical Association ("AVMA").

      j.    Each such Select Member Farm Supplier to fairlife shall refrain from dragging animals except for emergency cases where an animal must be moved a few feet before an appropriate movement device can be used. Non-ambulatory animals shall be handled with dignity and in a manner that minimizes pain and discomfort. Non-ambulatory animals may be moved using sleds, belting with reinforced sides, slings, skidsteer buckets (so long as the bucket lip is padded, and it is large enough to hold the entire animal), float tanks, and palleted forklifts (so long as exposed forks are never used). In all situations, animals shall be restrained appropriately so as not to risk or cause additional injury.

      k.    Each such Select Member Farm Supplier to fairlife shall prohibit its employees from kicking, punching, or beating any animals or subjecting them to any act of

cruelty or instance of gross negligence. Any employee caught committing such acts will be immediately terminated, and egregious or repeated acts shall be referred to law enforcement and the Monitor. "Gross negligence" means an act or course of action, or inaction, which denotes a lack of reasonable care and a conscious disregard or indifference to the rights, safety, or welfare of others, including animals.

l.     Each such Select Member Farm Supplier to fairlife shall maintain milking parlors and equipment in a commercially reasonable manner designed to prevent animal injury or death.

m.     Each such Select Member Farm Supplier to fairlife shall disbud calves before eight (8) weeks of age and provide pain mitigation for disbudding or dehorning.

3.     <u>Monitor</u>.

a.     <u>Appointment of Monitor.</u>  The Honorable Wayne R. Andersen (Ret.), a retired federal judged selected by the Parties, shall serve as an independent, third party, Court-appointed Monitor to monitor compliance with this Stipulated Injunction.  Defendants shall pay or cause to be paid the Monitor Costs from their own funds and not from the Settlement Amount.

b.     <u>Annual Reports</u>.  The Monitor shall issue an annual report, which shall be based upon the Monitor's review of the annual third-party audits for each year during the term of the Stipulated Injunction.  Upon determining that each such farm is in substantial compliance, the Monitor shall confirm the same by denoting such farm to be "Compliant."

c.     <u>Reporting Periods</u>.  The reporting period for the Monitor shall be coterminous with the audit period.

d.     <u>The Monitor's Follow-Up on Reports</u>.  Final audit reports will be provided to each audited Select Member Farm Supplier to fairlife, Select, fairlife, and the Monitor only.

The Monitor shall have 30 days to review the audits to ensure substantial compliance with the Stipulated Injunction and to identify any compliance issues. Within that 30-day period, the Monitor must identify in writing any areas of compliance that the Monitor believes require further attention or otherwise appear to demonstrate non-compliance with the Stipulated Injunction. Areas of non-compliance noted by the Monitor will be addressed and/or corrected within 30 days thereafter. If the issues of non-compliance raised by the Monitor are not resolved within this 30-day period, the Monitor shall notify both Class Counsel and Defense Counsel of any unresolved issues.

    e. <u>Counsel's Follow-Up on Reports</u>. To the extent the Monitor notifies Class Counsel and Defense Counsel of any unresolved issues of non-compliance as provided in the Paragraph above, Class Counsel may seek Court intervention to enforce the terms of the Stipulated Injunction. In such instances of unresolved issues of non-compliance, Class counsel reserve the right to request the Court to extend the term of the Stipulated Injunction; Defendants reserve the right to oppose any such request.

    f. <u>Confidentiality</u>. The Parties and the Monitor agree that the Monitor Communications constitute highly confidential and proprietary business information under the Protective Order.

   4. <u>Additional Terms</u>.

    a. The costs to perform the practices necessary to comply with the obligations subject to the third-party audits shall be borne by Defendants and shall not be paid from the Settlement Amount.

    b. The costs of the audits, including all auditor fees and expenses, shall be borne by Defendants and shall not be paid from the Settlement Amount.

c. Class Counsel may review the third-party audit checklist prior to approval, which the third-party auditor will use to determine whether a violation has occurred.

d. The Parties agree that this Court retains ongoing jurisdiction to enforce the terms of the Stipulated Injunction.

e. The Select member farm identified in the Consolidated Class Action Complaint as "Fair Oaks Farms" may resume milk shipments to fairlife only upon substantial compliance with the terms of this Stipulated Injunction.

f. The Parties acknowledge that following the initiation of this litigation on June 11, 2019, fairlife revised the labels on the bottles or containers of its products that were in use as of June 11, 2019 to remove the remaining statements of a "promise" of "extraordinary care and comfort for [its] cows," "exceptional quality milk standards," "traceability back to [its] farms," and "continual pursuit of sustainable farming." fairlife will not modify the labels on the bottles or containers of its products in use at the time this Agreement is executed in any way that is inconsistent with governing consumer protection and/or product liability laws.

g. fairlife agrees not to publicly represent, suggest, warrant, or convey in any way that its practices are endorsed by Animal Outlook or the Animal Legal Defense Fund.

h. In the event that fairlife, during the term of the Stipulated Injunction, seeks to accept shipments of milk on a regular basis supplied by a farm that is a member of the Select cooperative that is not a Select Member Farm Supplier to fairlife as of the commencement date of the Stipulated Injunction, each such farm shall have one hundred twenty (120) days to come into compliance with the terms set forth herein. Notwithstanding the foregoing, if any such farm is ultimately unable to come into substantial compliance within the 120-day period, fairlife shall notify Class Counsel as soon as practicable, and the parties shall negotiate an extension or other

7

resolution in good faith, with the assistance of the Monitor if necessary. fairlife shall notify any such new and/or additional farms of the requirements set forth herein as soon as practicable and before such farm begins supplying milk to fairlife. This paragraph is in addition to and does not alter the rights afforded by Section 4(i) below.

i.      In the event of an emergency or other temporary disruption in the supply of milk from any Select Member Farm Supplier to fairlife, fairlife may, to the extent necessary, use milk supplied from other farms that are members of the Select cooperative that have not been confirmed to be in compliance with the terms of the Stipulated Injunction until the emergency or temporary disruption has been resolved, but in no event longer than sixty (60) days. Notwithstanding the foregoing, if the emergency or temporary disruption in the supply of milk from the Select Member Farm Supplier to fairlife has not been resolved within the 60-day period notwithstanding good faith efforts to do so, and if fairlife continues to require milk supplied from other farms that are members of the Select cooperative that have not been confirmed to be in compliance with the terms of the Stipulated Injunction in light of the emergency or temporary disruption in the supply of milk from the Select Member Farm Supplier to fairlife, fairlife shall notify Class Counsel as soon as practicable, and the parties shall negotiate an extension or other resolution in good faith, with the assistance of the Monitor if necessary.

Dated: _____          _____
                                  Hon. Robert M. Dow, Jr.
                                  U.S. District Judge

Exhibit G

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) ) ) ) ) | MDL No. 2909 |
|  |  | Master Case No. 1:19-cv-03924 |
|  |  | Hon. Robert M. Dow, Jr. |
|  |  | This Document Relates To All Cases |

**DECLARATION OF CAMERON R. AZARI, ESQ.**
**ON CLASS NOTICE PROGRAM AND CLASS NOTICE**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally-recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am the Senior Vice-President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.  Hilsoft Notifications is a business unit of Epiq.[1]

4.      Epiq is an industry leader in class action settlement administration, having implemented more than a thousand successful class action notice and settlement administration matters.  Epiq has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below.  My team and I have experience in more than 500 cases, including more than 45 multidistrict litigations, and have prepared notices which

---

[1] All references to Epiq within this declaration include Hilsoft Notifications.

have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world. Courts have recognized and approved numerous notice plans developed by Epiq, and those decisions have invariably withstood appellate and collateral review.

### RELEVANT EXPERIENCE

5.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many large and significant cases, including: *In re Takata Airbag Products Liability Litigation*, No. 1:15-md-02599-FAM (S.D. Fla); *Hale v. State Farm Mutual Automobile Insurance Company, et al.*, No. 12-cv-00660 (S.D. Ill.); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*; *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.); *In Re: Premera Blue Cross Customer Data Security Breach Litigation*, No. 3:15-md-2633 (D. Ore.); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.); and *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.).

6.      Numerous court opinions and comments regarding my testimony and the adequacy of our notice efforts are included in Hilsoft's curriculum vitae attached hereto as **Attachment 1**. In performing our work, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Epiq since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Overall, I have more than 22 years of experience

in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

7.    The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

## OVERVIEW

8.    This declaration will describe the Class Notice Program, and notices (the "Notice" or "Notices") proposed here for the Settlement *In re fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, Lead Case No. 1:19-cv-03924, in the United States District Court for the Northern District of Illinois.  Epiq designed the Class Notice Program based on our prior experience and research into the notice issues in this case.  We have analyzed and proposed the most effective method practicable of providing notice to the Settlement Class.

## NOTICE PLANNING METHODOLOGY

9.    Federal Rule of Civil Procedure, Rule 23 directs that notice must be the best notice practicable under the circumstances and must include "individual notice to all members who can be identified through reasonable effort."[2]  The proposed Class Notice Program satisfies this requirement.

10.    It is my understanding from counsel for the parties that data will be provided to Epiq for identified Settlement Class Members (to the extent physical and email addresses are available to the parties).  The Settlement Class Member data will be used to provide individual notice.  An Email Notice will be sent to all identified Settlement Class Members for whom a valid email address is available, and a Postcard Notice will be sent via United States Postal Service

---

[2] Fed. R. Civ. P. 23(c)(2)(B).

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

("USPS") first class mail to all identified Settlement Class Members for whom a valid mailing address is available.

11.     Given our experience with similar notice efforts, we expect that the proposed Class Notice Program will reach 80% of the Settlement Class with a combination of individual notice to the identified Settlement Class Members and a digital/internet notice program (consumer print publication, digital notice, and/or social media). The Class Notice Program will provide notice both nationwide in the continental United States and in the U.S. Territories (in English and Spanish). The reach will be further enhanced by internet sponsored search listings, an informational release, and a Settlement Website, which are not included in the estimated reach calculation. In my experience, the projected reach of the Notice Program is consistent with other court-approved notice programs, and the Notice Program has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[3] In my opinion, the proposed Class Notice Program is designed to reach the greatest practicable number of Settlement Class Members.

12.     Data sources and tools that are commonly employed by experts in this field were used to analyze and develop the media portion of this Class Notice Program. These include MRI-Simmons data[4], which provides statistically significant readership and product usage data, and

---

[3] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950).

[4] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry. MRI-Simmons is the new name for the joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research. MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, Internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States. MRI-Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

Comscore[5], and Alliance for Audited Media ("AAM")[6] statements, which certify how many readers buy or obtain copies of publications. These tools, along with demographic breakdowns indicating how many people use each media vehicle, as well as computer software that take the underlying data and factor out the duplication among audiences of various media vehicles, allow us to determine the net (unduplicated) reach of a particular mailing and media schedule. We combine the results of this analysis to help determine notice plan sufficiency and effectiveness.

13.     Virtually all of the nation's largest advertising agency media departments utilize, scrutinize, and rely upon such independent, time-tested data and tools, including net reach and de-duplication analysis methodologies, to guide the billions of dollars of advertising placements that we see today, providing assurance that these figures are not overstated. These analyses and similar planning tools have become standard analytical tools for evaluations of notice programs and have been regularly accepted by courts. In fact, advertising and media planning firms around the world have long relied on audience data and techniques: AAM data has been relied on since 1914; 90 to 100% of media directors use reach and frequency planning; all the leading advertising and communications textbooks cite the need to use reach and frequency planning. Ninety of the top

---

[5] Comscore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data. Comscore maintains a proprietary database of more than two million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. Comscore panelists also participate in survey research that captures and integrates their attitudes and intentions.

[6] Established in 1914 as the Audit Bureau of Circulations ("ABC") and rebranded as Alliance for Audited Media ("AAM") in 2012, AAM is a non-profit cooperative formed by media, advertisers, and advertising agencies to audit the paid circulation statements of magazines and newspapers. AAM is the leading third-party auditing organization in the U.S. It is the industry's leading, neutral source for documentation on the actual distribution of newspapers, magazines, and other publications. Widely accepted throughout the industry, it certifies thousands of printed publications as well as emerging digital editions read via tablet subscriptions. Its publication audits are conducted in accordance with rules established by its Board of Directors. These rules govern not only how audits are conducted, but also how publishers report their circulation figures. AAM's Board of Directors is comprised of representatives from the publishing and advertising communities.

one hundred media firms use MRI data, and Comscore is used by the major holding company agencies worldwide which includes Dentsu Aegis Networking, GroupM, IPG and Publicis, in addition to independent agencies for TV and digital media buying and planning, and at least 25,000 media professionals in 100 different countries use media planning software.

<u>**CLASS NOTICE PROGRAM DETAIL**</u>

14. The Class Notice Program was designed to provide notice to the following "Settlement Class" as defined in the Settlement Agreement and Release:

> All persons in the United States, its territories, and/or the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before the Preliminary Approval Date.

> Specifically excluded from the Settlement Class are the following persons:

> (i) Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members;

> (ii) Class Counsel;

> (iii) The judges who have presided over the Litigation;

> (iv) Local, municipal, state, and federal governmental agencies; and

> (v) All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.

15. I have reviewed the Settlement Agreement and I fully understand the defined terms used in the definition of the Settlement Class mean the following:

- "<u>Person</u>" means "an individual, corporation, partnership, limited partnership, limited liability company, association, member, joint stock company, estate, legal representative, trust, unincorporated association, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees."

- "<u>Covered Products</u>" or "<u>Covered Product</u>" or "<u>Milk Products</u>" or "<u>Milk Product</u>" means "the fairlife Milk Products and the FOF Milk Products. The Covered Products are listed on Exhibit D of the Settlement Agreement.

- "fairlife Milk Products" means "all milk and dairy products, including ultra-filtered milk, protein shakes, creamers, beverages, yogurt, and ice cream produced, processed, marketed and/or sold by fairlife at any time up to and including the Preliminary Approval Date. The fairlife Milk Products include, without limitation, ULM and CP products."

- "UFM" products means "ultra-filtered milk."

- "CP" products means "fairlife Core Power Flavored High Protein Milk Shakes and all other products from fairlife's Core Power brand."

- "FOF Milk Products" means "all the fluid milk products (including all flavors, fat contents, and container sizes), produced, processed, marketed and/or sold by FOF and/or any of its wholly-owned affiliated entities (including but not limited to Farmers Foods LLC) at any time up to and including the Preliminary Approval Date. The FOF Milk Products include but are not limited to milk, yogurt, ice cream, butter, and eggnog."

- "FOF" means "Fair Oaks Farms, LLC, an Indian limited liability company."

## CLASS NOTICE PROGRAM

### *Individual Notice*

16.     I have reviewed the Settlement Agreement, and it is my understanding that Defense Counsel will provide data to Epiq for identified Settlement Class Members (to the extent physical and email addresses are available to Defendants). The Settlement Class Member data will be used to provide individual notice.

### *Individual Notice - Email*

17.     Epiq will send an Email Notice to all identified Settlement Class Members for whom a valid email address is available to Defendants. The following industry standard best practices will be followed for the Email Notice efforts. The Email Notice will be drafted in such a way that the subject line, the sender, and the body of the message overcome SPAM filters and ensure readership to the fullest extent reasonably practicable. For instance, the Email Notice will use an embedded html text format. This format will provide easy to read text without graphics,

tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. The Email Notices will be sent from an IP address known to major email providers as one not used to send bulk "SPAM" or "junk" email blasts. Each Email Notice will be transmitted with a digital signature to the header and content of the Email Notice, which will allow ISPs to programmatically authenticate that the Email Notices are from our authorized mail servers. Each Email Notice will also be transmitted with a unique message identifier. The Email Notice will include an embedded link to the Settlement Website. By clicking the link, recipients will be able to easily file an online claim, access the Long Form Notice, Settlement Agreement, and other information about the Settlement.

18.     If the receiving email server cannot deliver the message, a "bounce code" will be returned along with the unique message identifier. For any Email Notice for which a bounce code is received indicating that the message was undeliverable for reasons such as an inactive or disabled account, the recipient's mailbox was full, technical autoreplies, etc., at least two additional attempts will be made to deliver the Notice by email.

### *Individual Notice - Direct Mail*

19.     Epiq will send a Postcard Notice to all identified Settlement Class Members for whom a valid mailing address is available to Defendants. The Postcard Notice will be sent via USPS first class mail. The Postcard Notice will clearly and concisely summarize the case and the legal rights of the Settlement Class Members. The Postcard Notice will also direct the recipients to the Settlement Website where they can access additional information.

20.     Prior to sending the Postcard Notice, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure Settlement

Class Member address information is up-to-date and accurately formatted for mailing.[7]  In addition, the addresses will be certified via the Coding Accuracy Support System (CASS) to ensure the quality of the zip code, and will be verified through Delivery Point Validation (DPV) to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

21.    Postcard Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service.  Upon successfully locating better addresses, Postcard Notices will be promptly remailed.

### *Media Plan*

### *National Consumer Publication*

22.    A Publication Notice will appear once in the national edition of the weekly magazine *People*, as a 1/3 page ad unit.  According to MRI-Simmons data, adults who buy "fairlife branded milk products" are 9% more likely than the general population to read *People* magazine.[8]

---

[7] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery point coded addresses, for matches made to the NCOA file for individual, family, and business moves.

[8] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry. MRI-Simmons is the new name for the joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research. MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, Internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States. MRI-

*People* magazine's circulation is approximately 3.4 million and its readership is approximately 26 million readers per week.

### Internet Notice Campaign

23.     Internet advertising has become a standard component in legal notice programs, especially for settlements which allow for the submission of claims forms online.  The internet has proven to be an efficient and cost-effective method to target and provide measurable reach of persons covered by a settlement.  According to MRI-Simmons data, 94% of all adults are online, 96% of "fairlife branded milk product purchasers" are online, and 87% of fairlife branded milk product purchasers use social media.[9]

24.     The Class Notice Program includes targeted Banner Notice advertising on the selected advertising networks *Google Display Network* and the *Yahoo Audience Network*, which together represent thousands of digital properties across all major content categories.  Banner Notices will be targeted to selected targeted audiences, and are designed to encourage participation by Settlement Class Members—by linking directly to the Settlement Website, allowing visitors easy access to relevant information and documents and to file a Claim Form.  Consistent with best practices, the Banner Notices will use language from the notice headline, which will allow users to identify themselves as potential Settlement Class Members.  As an additional way to draw the interest of the Settlement Class Members, and to be consistent with FJC recommendations that a picture or graphic may help class members self-identify, the Banner Notices may prominently feature high-resolution image(s).  The Banner Notices will also be placed on the social media sites

---

Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the United States.

[9] MRI-Simmons 2021 Survey of the American Consumer®.

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

*Facebook* and *Instagram*. *Facebook* is the leading social networking site in the United States and combined with *Instagram* covers over 300 million users in the United States. The *Facebook* and *Instagram* internet Banner Notices will be distributed to a variety of target audiences relevant to an individual's demonstrated interests and/or likes.

25.     All Banner Notices will appear on desktop, mobile, and tablet devices and will be distributed to the selected targeted audiences nationwide (including U.S. Territories) and will be available in both English and Spanish. Internet Banner Notices will also be targeted (remarketed) to people who visit the Settlement Website.

26.     More details regarding the target audiences, distribution, and specific ad sizes of the Banner Notices are included in the following table.

| Network/Property | Target | Ad Sizes | Estimated Impressions |
|---|---|---|---|
| *Google Display Network* | Adults 18+ | 728x90, 300x250, 300x600, 970x250 | 106,650,000 |
| *Google Display Network* | Custom Affinity[10]/Intent: Milk Products | 728x90, 300x250, 300x600, 970x250 | 80,000,000 |
| *Google Display Network* | Custom Affinity/Intent: Protein Shakes | 728x90, 300x250, 300x600, 970x250 | 13,350,000 |
| *Google Display Network* | Custom Affinity: Primary Grocery Shopper | 728x90, 300x250, 300x600, 970x250 | 40,000,000 |
| *Google Display Network* | Custom Intent: fairlife | 728x90, 300x250, 300x600, 970x250 | 5,000,000 |
| *Yahoo Audience Network* | Adults 18+ | 728x90, 300x250, 300x600, 970x250 | 55,000,000 |
| *Facebook* | Adults 18+ | Newsfeed & Right Hand Column | 99,245,000 |
| *Facebook* | Interests: Milk | Newsfeed & Right Hand Column | 50,000,000 |
| *Facebook* | Interests: Dairy Products | Newsfeed & Right Hand Column | 50,000,000 |

[10] Custom Affinity Audiences allow Banner Notices to be targeted to specific website content, here meaning websites, blogs, etc. that include milk products, protein shakes, fairlife, and grocery shoppers. Custom Intent Audiences allow Banner Notices to be targeted to specific individuals who have searched and/or researched these specific topics.

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

| Network/Property | Target | Ad Sizes | Estimated Impressions |
|---|---|---|---|
| Facebook | Interests: fairlife | Newsfeed & Right Hand Column | 1,000,000 |
| Facebook | Interests: Protein Shake | Newsfeed & Right Hand Column | 5,755,000 |
| Instagram | Adults 18+ | Newsfeed | 45,685,000 |
| Instagram | Interests: Milk | Newsfeed | 25,000,000 |
| Instagram | Interests: Dairy Products | Newsfeed | 25,000,000 |
| Instagram | Interests: fairlife | Newsfeed | 500,000 |
| Instagram | Interests: Protein Shake | Newsfeed | 4,315,000 |
| **TOTAL** | | | **606,500,000** |

27. Combined, more than 606.5 million impressions will be generated by the Banner Notices, nationwide.[11] The internet advertising campaign will run for approximately 40 days. Clicking on the Banner Notices will link the readers to the Settlement Website, where the readers can easily obtain detailed information about the Settlement.

### Internet Sponsored Search Listings

28. To facilitate locating the Settlement Website, sponsored search listings will be acquired online through the highly-visited internet search engines: *Google*, *Yahoo!*, and *Bing*. When search engine visitors search on common keyword combinations to identify the Settlement, the sponsored search listing generally will be displayed at the top of the page prior to the search results or in the upper right-hand column of the web-browser screen. A list of keywords will be

---

[11] The third-party ad management platform, ClickCease, will be used to audit any digital Banner Notice ad placements. This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses. This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

developed in conjunction with counsel. The sponsored search listings will be displayed nationwide, including the U.S. Territories. All sponsored search listing ads will link directly to the Settlement Website.

### *Informational Release*

29. To build additional reach and extend exposures, a party-neutral Information Release will be issued broadly over PR Newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the continental United States and U.S. Territories as well as approximately 4,500 websites, online databases, internet networks and social networking media.

30. The Informational Release will include the address of the Settlement Website and the toll-free telephone number. Although there is no guarantee that any news stories will result, the Informational Release will serve a valuable role by providing additional notice exposures beyond that which was provided by the paid media.

### *Settlement Website*

31. Epiq will create and maintain a dedicated website for the Settlement with an easy to remember domain name. Epiq has already reserved several domain names which will also auto-forward to the Settlement Website to avoid any possible Settlement Class Member confusion. The Settlement Website will contain relevant documents and information including: (i) information concerning deadlines for filing a Claim Form, and the dates and locations of relevant Court proceedings, including the Fairness Hearing; (ii) the toll-free telephone number applicable to the Settlement; (iii) documents, including the Settlement Agreement, the Class Notices, the Claim Form, Court Orders regarding this Settlement, and other relevant Court documents, including Co-

Lead Class Counsel's Motion for Approval of Attorneys' Fees, Cost, and Service Awards; and (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically. In addition, the Settlement Website will include answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Claims Administrator, and how to obtain other case-related information. The Settlement Website address will be prominently displayed in all notice documents.

### *Toll-Free Telephone Number*

32.     A toll-free telephone number will be established for the Settlement. Callers will be able to hear an introductory message. Callers will also have the option to learn more about the Settlement in the form of recorded answers to FAQs. The toll-free telephone number will be prominently displayed in all notice documents. The automated phone system will be available 24 hours per day, 7 days per week.

33.     A postal mailing address will be provided, allowing Settlement Class Members the opportunity to request additional information or ask questions.

### *Claim Stimulation Notice*

34.     After the completion of individual notice and the substantial implementation of the media notice efforts described above, the Parties have agreed to meet and confer, and with the assistance of the mediator, Judge Wayne Andersen (ret.) of JAMS, if necessary, to determine if a claim stimulation notice effort may be implemented to increase the claim filing rate and maximize participation in the Settlement by Settlement Class Members. If it is determined that a claim stimulation notice effort will be implemented, it will likely involve a combination of reminder noticing via individual notice and media. If agreed upon, a simple reminder notice will likely be

sent to identified Settlement Class Members with a valid email address and/or deliverable physical mailing address who have not already filed a Claim at the time of the claim stimulation notice efforts. Any media portion of a reminder notice, if agreed upon by the parties, will be informed by the elements of the initial media notice efforts that were most successful in driving activity to the Settlement Website, and may include some or all of the following: digital banner notices on prominent ad networks and social media (in English and Spanish), possible audio and/or video ads, and outreach to third-party consumer organizations. The Reminder Notices will use concise text (stressing the impending Claim filing deadline) and include links directly to the Claim filing page on the Settlement Website.

### *Estimated Cost of Notice and Claims Administration*

35. Based on reasonably high activity levels projected by the parties, Epiq's "not-to-exceed" cost to implement the Notice Plan and handle all aspects of settlement and claims administration is $2,108,514 (this is not a minimum or a cap). While the notice portions of the total cost are mostly fixed, the actual total cost for providing settlement administration is dependent upon variables such as the number of claims received, total calls to the toll-free telephone line, number of undeliverable notices, and the number of Settlement Class Members ultimately sent a payment (and specifically, how many Settlement Class Members elect a digital payment versus a check). All costs are subject to the Service Contract under which Epiq will be retained as the Claims Administrator, and the terms and conditions of that agreement.

### **PLAIN LANGUAGE NOTICE DESIGN**

36. The Notices and Claim Form are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. The design of the Notices follows the principles embodied in the Federal Judicial Center's illustrative

"model" notices posted at www.fjc.gov. Many courts, and the FJC itself, have approved notices that we have written and designed in a similar fashion. The Notices contain substantial, albeit easy-to-read summaries of all key information about Settlement Class Members' rights and options. Consistent with our normal practice, all notice documents will undergo a final edit prior to actual mailing and publication for grammatical errors and accuracy.

37.     The Long Form Notice will provide substantial information to Settlement Class Members. The Long Form Notice will include (i) details regarding the Settlement Class Members' ability to opt-out or object to the Settlement Agreement, (ii) instructions on how to submit a Claim Form, (iii) the deadline to submit a Claim Form, opt-out, or object, and (iv) the date, time, and location of the Fairness Hearing, among other information.

### *Distribution Options*

38.     The Settlement provides Settlement Class Members the option of filing a Claim Form online or submitting a Claim Form by mail. The Notices contain a detailed summary of the relevant information about the Settlement, including the Settlement Website address and how Settlement Class Members can file a Claim Form online or by mail. The Email Notice will include a link directly to the claim filing portal on the Settlement Website, where Settlement Class Members can file an online Claim Form. Regardless of how a Claim is filed, after Final Approval all Claimants with a Valid Claim will be given the option of receiving a digital payment (such as PayPal, Digital Mastercard, or other options). Settlement Class Members will also be able to elect to receive a traditional paper check.

39.     The fewer barriers Settlement Class Members experience to filing Claim Forms, the more likely they are to participate in the Settlement. Accordingly, the Claim Form and Settlement Website are designed to ensure that Settlement Class Members experience little

difficulty in filing claims in order to increase the participation of Settlement Class Members in the Settlement.

## CONCLUSION

40.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements will be met in this case.

41.     The proposed Class Notice Program includes a combination of individual notice to the identified Settlement Class Members and a digital/internet publication notice program (consumer print publication, digital notice, and/or social media), which we expect will reach 80% of the Settlement Class. The reach will be further enhanced by internet sponsored search listings, an informational release, and a Settlement Website, which are not included in the estimated reach calculation. The Class Notice Program will provide notice both nationwide in the continental United States and in the U.S. Territories (in English and Spanish).

42.     The Class Notice Program will provide the best notice practicable under the circumstances of this case, conform to all aspects of Federal Rules of Civil Procedure, Rule 23 regarding notice, and comport with the guidance for effective notice articulated in the *Manual for Complex Litigation* 4th Ed. and FJC guidance, and exceed the requirements of due process, including its "desire to actually inform" requirement.

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

43.     The Class Notice Program schedule will afford enough time to provide full and proper notice to Settlement Class Members before any opt-out and objection deadline.

44.     At the conclusion of the Class Notice Program, we will provide a final report verifying the effective implementation of the Class Notice Program.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 13, 2022.

_____
Cameron R. Azari, Esq.

DECLARATION OF CAMERON R. AZARI, ESQ. ON
CLASS NOTICE PROGRAM AND CLASS NOTICE

# Attachment 1

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications ("Hilsoft") is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, and notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq"). Hilsoft has been retained by defendants or plaintiffs for more than 500 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts. Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags. The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and other behaviorally targeted digital media. Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each. *In re: Takata Airbag Products Liability Litigation* **(OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford)**, MDL No. 2599 (S.D. Fla.).

➢ For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent, superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication insertions and banner notices, which generated more than 689 million adult impressions. *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each. *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts. *In re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.).

➢ Hilsoft provided notice for the $113 million lithium-ion batteries antitrust litigation settlements, which included individual notice via email to millions of class members, banner and social media ads, an informational release, and a settlement website. *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No. 2420 (N.D. Cal.).

➢ Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles. The notice program reached approximately 96.5% of all class members. *Callaway v. Mercedes-Benz USA, LLC*, 8:14-cv-02011 (C.D. Cal.).

➢ Hilsoft provided notice for a $520 million settlement, which involved utility customers (residential, commercial, industrial, etc.) who paid utility bills. The notice program included individual notice to more than 1.6 million known class members via postal mail or email and a supplemental publication notice in local newspapers, banner notices, and a settlement website. The individual notice efforts alone reached more than 98.6% of the class. *Cook, et al. v. South Carolina Public Service Authority, et al.*, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.).

➢ For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members. The combined measurable notice effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads. *Vergara, et al., v. Uber Technologies, Inc.*, 1:15-CV-06972 (N.D. Ill.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented a comprehensive notice plan, which included individual notice via an oversized postcard notice to more than 740,000 class members as well as email notice to class members. Combined the individual notice efforts delivered notice to approximately 98% of the class. Supplemental newspaper notice in four large-circulation newspapers and a settlement website further expanded the notice efforts. *Lusnak v. Bank of America, N.A.*, CV 14-1855 (C.D. Cal.).

➢ Hilsoft provided notice for both the class certification and the settlement phases of the case. The individual notice efforts included sending postcard notices to more than 2.3 million class members, which reached 96% of the class. Publication notice in a national newspaper, targeted internet banner notices and a settlement website further extended the reach of the notice plan. *Waldrup v. Countrywide Financial Corporation, et al.*, 2:13-cv-08833 (C.D. Cal.).

➢ An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website. *In re: Kaiser Gypsum Company, Inc., el al.*, 16-31602 (Bankr. W.D. N.C.).

➢ Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes. The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings and a case website further enhanced reach. *Miner v. Philip Morris USA, Inc.*, 60CV03-4661 (Ark. Cir. Ct.).

➢ A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. *In re: Energy Future Holdings Corp., et al.*, 14-10979 (Bankr. D. Del.).

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice, and in some cases paid media efforts. Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M& I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Epiq (Hilsoft). *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.).

➢ For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion-dollar settlement. *In re: Residential Schools Class Action Litigation*, 00-CV-192059 CPA (Ont. Super. Ct.).



➢ BP's $7.8 billion settlement related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history. Hilsoft drafted and opined on all forms of notice. The 2012 dual notice program to "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice. Subsequently, Hilsoft designed and implemented one of the largest claim deadline notice campaigns ever implemented, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➢ Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. *Vereen v. Lowe's Home Centers*, SU10-CV-2267B (Ga. Super. Ct.).

## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Epiq Senior Vice President, Hilsoft Director of Legal Notice*

Cameron Azari, Esq. has more than 21 years of experience in the design and implementation of legal notice and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, In re: Checking Account Overdraft Litigation,* and *In re: Residential Schools Class Action Litigation.* He is an active author and speaker on a broad range of legal notice and class action topics ranging from FRCP Rule 23 to email noticing, response rates, and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

### *Kyle Bingham, Manager of Strategic Communications*

Kyle Bingham has 15 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases. Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In re: Checking Account Overdraft Litigation.* Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives. He received his B.A. from Willamette University. Kyle can be reached at kbingham@epiqglobal.com.



### ARTICLES AND PRESENTATIONS

- **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." November 18, 2020.

- **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, October 29, 2019.

- **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference." American Conference Institute, Chicago, IL, July 18, 2019.

- **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.

- **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.

- **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

- **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts. Clyde & Co LLP, San Francisco, CA, June 22, 2018.

- **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice*. E-book, published, May 2017.

- **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

- **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

- **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

- **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

- **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

- **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

- **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

- **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



## JUDICIAL COMMENTS

**Judge Anne-Christine Massullo,** ***Morris v. Provident Credit Union*** (June 23, 2021) CGC-19-581616, Sup. Ct. Cal. Cty. of San Fran.:

> *The Notice approved by this Court was distributed to the Classes in substantial compliance with this Court's Order Certifying Classes for Settlement Purposes and Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") and the Agreement. The Notice met the requirements of due process and California Rules of Court, rules 3.766 and 3.769(f). The notice to the Classes was adequate.*

**Judge Esther Salas,** ***Sager, et al. v. Volkswagen Group of America, Inc., et al.*** (June 22, 2021) 18-cv-13556 (D.N.J.):

> *The Court further finds and concludes that Class Notice was properly and timely disseminated to the Settlement Class in accordance with the Class Notice Plan set forth in the Settlement Agreement and the Preliminary Approval Order (Dkt. No. 69). The Class Notice Plan and its implementation in this case fully satisfy Rule 23, the requirements of due process and constitute the best notice practicable under the circumstances.*

**Judge Josephine L. Staton,** ***In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.*** (June 10, 2021) 8:17-CV-00838 & 18-cv-02223 (C.D. Cal.):

> *The Class Notice was disseminated in accordance with the procedures required by the Court's Orders … in accordance with applicable law, and satisfied the requirements of Rule 23(e) and due process and constituted the best notice practicable for the reasons discussed in the Preliminary Approval Order and Final Approval Order.*

**Judge Harvey Schlesinger,** ***In re: Disposable Contact Lens Antitrust Litigation*** (ABB Concise Optical Group, LLC) (May 31, 2021) 3:15-md-02626 (M.D. Fla.):

> *The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Haywood S. Gilliam, Jr.** ***Richards, et al. v. Chime Financial, Inc.*** (May 24, 2021) 4:19-cv-06864 (N.D. Cal.):

> *The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B)… The Court ordered that the third-party settlement administrator send class notice via email based on a class list Defendant provided… Epiq Class Action & Claims Solutions, Inc., the third-party settlement administrator, represents that class notice was provided as directed… Epiq received a total of 527,505 records for potential Class Members, including their email addresses…. If the receiving email server could not deliver the message, a "bounce code" was returned to Epiq indicating that the message was undeliverable…. Epiq made two additional attempts to deliver the email notice… As of Mach 1, 2021, a total of 495,006 email notices were delivered, and 32,499 remained undeliverable… In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.*

**Judge Henry Edward Autrey,** ***Pearlstone v. Wal-Mart Stores, Inc.*** (Apr. 22, 2021) 4:17-cv-02856 (C.D. Cal.):

> *The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.*



**Judge Lucy H. Koh, *Grace v. Apple, Inc.* (Mar. 31, 2021) 17-CV-00551 (N.D. Cal.):**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Court finds that the Notice Plan, which was direct notice sent to 99.8% of the Settlement Class via email and U.S. Mail, has been implemented in compliance with this Court's Order (ECF No. 426) and complies with Rule 23(c)(2)(B).

**Judge Gary A. Fenner, *In re: Pre-Filled Propane Tank Antitrust Litigation* (Mar. 30, 2021) MDL No. 2567, 14-2567 (W.D. Mo.):**

Based upon the Declaration of Cameron Azari, on behalf of Epiq, the Administrator appointed by the Court, the Court finds that the Notice Program has been properly implemented. That Declaration shows that there have been no requests for exclusion from the Settlement, and no objections to the Settlement. Finally, the Declaration reflects that AmeriGas has given appropriate notice of this settlement to the Attorney General of the United States and the appropriate State officials under the Class Action Fairness Act, 28 U.S.C. § 1715, and no objections have been received from any of them.

**Judge Richard Seeborg, *Bautista v. Valero Marketing and Supply Company* (Mar. 17, 2021) 3:15-cv-05557 (N.D. Cal.):**

The Notice given to the Settlement Class in accordance with the Notice Order was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge James D. Peterson, *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* (Mar. 4, 2021) 18-cv-327 (W.D. Wis.):**

The approved Notice plan provided for direct mail notice to all class members at their last known address according to UnityPoint's records, as updated by the administrator through the U.S. Postal Service. For postcards returned undeliverable, the administrator tried to find updated addresses for those class members. The administrator maintained the Settlement website and made Spanish versions of the Long Form Notice and Claim Form available upon request. The administrator also maintained a toll-free telephone line which provides class members detailed information about the settlement and allows individuals to request a claim form be mailed to them.

The Court finds that this Notice (i) constituted the best notice practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class members of the Settlement, the effect of the Settlement (including the release therein), and their right to object to the terms of the settlement and appear at the Final Approval Hearing; (iii) constituted due and sufficient notice of the Settlement to all reasonably identifiable persons entitled to receive such notice; (iv) satisfied the requirements of due process, Federal Rule of Civil Procedure 23(e)(1) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all applicable laws and rules.

**Judge Larry A. Burns, *Trujillo, et al. v. Ametek, Inc., et al.* (Mar. 3, 2021) 3:15-cv-01394 (S.D. Cal.):**

The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 181-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.



**Judge Sherri A. Lydon,** *Fitzhenry v. Independent Home Products, LLC* (Mar. 2, 2021) 2:19-cv-02993 (D.S.C.):

> *Notice was provided to Class Members in compliance with Section VI of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.*

**Judge James V. Selna,** *Alvarez v. Sirius XM Radio Inc.* (Feb. 9, 2021) 2:18-cv-8605 (C.D. Cal.):

> *The Court finds that the dissemination of the Notices attached as Exhibits to the Settlement Agreement: (a) was implemented in accordance with the Notice Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the Releases to be provided thereunder); (v) Named Plaintiffs' application for the payment of Service Awards; (vi) Class Counsel's motion for an award an attorneys' fees and expenses; (vii) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for attorneys' fees and expenses (including a Service Award to the Named Plaintiffs and Mr. Wright); and (viii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

**Judge Jon S .Tigar,** *Elder v. Hilton Worldwide Holdings, Inc.* (Feb. 4, 2021) 16-cv-00278 (N.D. Cal.):

> *"Epiq implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court." ECF No. 162 at 9-10. Epiq sent initial notice by email to 8,777 Class Members and by U.S. Mail to the remaining 1,244 Class members. Id. at 10. The Notice informed Class Members about all aspects of the Settlement, the date and time of the fairness hearing, and the process for objections. ECF No. 155 at 28-37. Epiq then mailed notice to the 2,696 Class Members whose emails were returned as undeliverable. Id. "Of the 10,021 Class Members identified from Defendants' records, Epiq was unable to deliver the notice to only 35 Class Members. Accordingly, the reach of the notice is 99.65%." Id. (citation omitted). Epiq also created and maintained a settlement website and a toll-free hotline that Class Members could call if they had questions about the settlement. Id.*

> *The Court finds that the parties have complied with the Court's preliminary approval order and, because the notice plan complied with Rule 23, have provided adequate notice to class members.*

**Judge Michael W. Jones,** *Wallace, et al, v. Monier Lifetile LLC, et al.* (Jan. 15, 2021) SCV-16410 (Sup. Ct. Cal.):

> *The Court also finds that the Class Notice and notice process were implemented in accordance with the Preliminary Approval Order, providing the best practicable notice under the circumstances.*

**Judge Kristi K. DuBose,** *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (Dec. 23, 2020) 1:19-cv-00563 (S.D. Ala.):

> *The Court finds that the Notice and the claims procedures actually implemented satisfy due process, meet the requirements of Rule 23(e)(1), and the Notice constitutes the best notice practicable under the circumstances.*

**Judge Haywood S. Gilliam, Jr.,** *Izor v. Abacus Data Systems, Inc.* (Dec. 21, 2020) 19-cv-01057 (N.D. Cal.):

> *The Court finds that the notice plan previously approved by the Court was implemented and that the notice thus satisfied Rule 23(c)(2)(B). [T]he Court finds that the parties have sufficiently provided the best practicable notice to the class members.*



**Judge Christopher C. Conner,** *AI's Discount Plumbing, et al. v. Viega, LLC* (Dec. 18, 2020) 19-cv-00159 (M.D. Pa.):

> The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Fed. R. Civ. P. 23(c)(2)(B) and due process. Specifically, the Court ordered that the third-party Settlement Administrator, Epiq, send class notice via email, U.S. mail, by publication in two recognized industry magazines, Plumber and PHC News, in both their print and online digital forms, and to implement a digital media campaign. (ECF 99). Epiq represents that class notice was provided as directed. See Declaration of Cameron R. Azari, ¶¶ 12-15 (ECF 104-13).

**Judge Naomi Reice Buchwald,** *In re: Libor-Based Financial Instruments Antitrust Litigation* (Dec. 16, 2020) MDL No. 2262 1:11-md-2262 (S.D.N.Y.):

> Upon review of the record, the Court hereby finds that the forms and methods of notifying the members of the Settlement Classes and their terms and conditions have met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all members of the Settlement Classes of these proceedings and the matters set forth herein, including the Settlements, the Plan of Allocation and the Fairness Hearing. Therefore, the Class Notice is finally approved.

**Judge Larry A. Burns,** *Cox, et al. Ametek, Inc., et al.* (Dec 15, 2020) 3:17-cv-00597 (S.D. Cal.):

> The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 129-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing… The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

**Judge Timothy J. Sullivan,** *Robinson v. Nationstar Mortgage LLC* (Dec. 11, 2020) 8:14-cv-03667 (D. Md.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the United States Constitution, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The Class Notice fully satisfied the requirements of Due Process.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Dec. 10, 2020) 4:13-md-02420, MDL No. 2420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.



**Judge Katherine A. Bacal,** *Garvin v. San Diego Unified Port District* (Nov. 20, 2020) 37-2020-00015064 (Sup. Ct. Cal.):

> *Notice was provided to Class Members in compliance with the Settlement Agreement, California Code of Civil Procedure §382 and California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing notice to all individual Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The Notice fully satisfied the requirements of due process.*

**Judge Catherine D. Perry,** *Pirozzi, et al. v. Massage Envy Franchising, LLC* (Nov. 13, 2020) 4:19-cv-807 (E.D. Mo.):

> *The COURT hereby finds that the CLASS NOTICE given to the CLASS: (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the time and manner by which CLASS MEMBERS could submit a CLAIM under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances, constituted a reasonable manner of notice to all class members who would be bound by the SETTLEMENT, and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Robert E. Payne,** *Skochin, et al. v. Genworth Life Insurance Company, et al.* (Nov. 12, 2020) 3:19-cv-00049 (E.D. Vir.):

> *For the reasons set forth in the Court's Memorandum Opinion addressing objections to the Settlement Agreement, . . . the plan to disseminate the Class Notice and Publication Notice, which the Court previously approved, has been implemented and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process.*

**Judge Jeff Carpenter,** *Eastwood Construction LLC, et al. v. City of Monroe* (Oct. 27, 2020) 18-cvs-2692 and *The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe* (Oct. 27, 2020) 19-cvs-1825 (Sup. Ct. N.C.):

> *Therefore, the Court GRANTS the Final Approval Motion, CERTIFIES the class as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS the Fee Motion…*
> *The Settlement Agreement and the Settlement Notice are found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of the Court is directed to enter and docket this Order and Final Judgement in the Actions.*

**Judge M. James Lorenz,** *Walters, et al. v. Target Corp.* (Oct. 26, 2020) 3:16-cv-1678 (S.D. Cal.):

> *The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Maren E. Nelson,** *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* (Oct. 26, 2020) BC 579498 (Sup. Ct Cal.):

> *Distribution of Notice directed to the Settlement Class Members as set forth in the Settlement has been completed in conformity with the Preliminary Approval Order, including individual notice to all Settlement Class members who could be identified through reasonable effort, and the best notice practicable under the circumstances. The Notice, which reached 99.9% of all Settlement Class Members, provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to Notice, and the Notice and its distribution fully satisfied the requirements of due process.*



**Judge Vera M. Scanlon, *Lashambae v. Capital One Bank, N.A.*** (Oct. 21, 2020) 1:17-cv-06406 (E.D.N.Y.):

> *The Class Notice, as amended, contained all of the necessary elements, including the class definition, the identifies of the named Parties and their counsel, a summary of the terms of the proposed Settlement, information regarding the manner in which objections may be submitted, information regarding the opt-out procedures and deadlines, and the date and location of the Final Approval Hearing. Notice was successfully delivered to approximately 98.7% of the Settlement Class and only 78 individual Settlement Class Members did not receive notice by email or first class mail.*

> *Having reviewed the content of the Class Notice, as amended, and the manner in which the Class Notice was disseminated, this Court finds that the Class Notice, as amended, satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules. The Class Notice, as amended, provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and provided this Court with jurisdiction over the absent Settlement Class Members. See Fed. R. Civ. P. 23(c)(2)(B).*

**Chancellor Walter L. Evans, *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals*** (Oct. 14, 2020) CH-13-04871-1 (30th Jud. Dist. Tenn.):

> *Based upon the filings and the record as a whole, the Court finds and determines that dissemination of the Class Notice as set forth herein complies with Tenn. R. Civ. P. 23.03(3) and 23.05 and (i) constitutes the best practicable notice under the circumstances, (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of Class Settlement, their rights to object to the proposed Settlement, (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, (iv) meets all applicable requirements of Due Process; (v) and properly provides notice of the attorney's fees that Class Counsel shall seek in this action. As a result, the Court finds that Class Members were properly notified of their rights, received full Due Process . . . .*

**Judge Sara L. Ellis, *Nelson v. Roadrunner Transportation Systems, Inc.*** (Sept. 15, 2020) 1:18-cv-07400 (N.D. Ill.):

> *Notice of the Final Approval Hearing, the proposed motion for attorneys' fees, costs, and expenses, and the proposed Service Award payment to Plaintiff have been provided to Settlement Class Members as directed by this Court's Orders,*

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge George H. Wu, *Lusnak v. Bank of America, N.A.*** (Aug. 10, 2020) CV 14-1855 (C.D. Cal.):

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

**Judge James Lawrence King, *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.*** (Aug. 10, 2020) 1:10-cv-22190 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

> *The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.*



**Judge Jeffrey S. Ross,** *Lehman v. Transbay Joint Powers Authority, et al.* (Aug. 7, 2020) CGC-16-553758 (Sup. Ct. Cal.):

> *The Notice approved by this Court was distributed to the Settlement Class Members in compliance with this Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 8, 2020. The Notice provided to the Settlement Class Members met the requirements of due process and constituted the best notice practicable in the circumstances. Based on evidence and other material submitted in conjunction with the final approval hearing, notice to the class was adequate.*

**Judge Jean Hoefer Toal,** *Cook, et al. v. South Carolina Public Service Authority, et al.* (July 31, 2020) 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.):

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

**Judge Peter J. Messitte,** *Jackson, et al. v. Viking Group, Inc., et al.* (July 28, 2020) 8:18-cv-02356 (D. Md.):

> *[T]he Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order as amended. The Court finds that the Notice Plan: (i) constitutes the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Lawsuit and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.*

**Judge Michael P. Shea,** *Grayson, et al. v. General Electric Company* (July 27, 2020) 3:13-cv-01799 (D. Conn.):

> *Pursuant to the Preliminary Approval Order, the Settlement Notice was mailed, emailed and disseminated by the other means described in the Settlement Agreement to the Class Members. This Court finds that this notice procedure was (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Civil Action and of their right to object to or exclude themselves from the proposed Settlement; and (iii) reasonable and constitutes due, adequate, and sufficient notice to all entities and persons entitled to receive notice.*

**Judge Gerald J. Pappert,** *Rose v. The Travelers Home and Marine Insurance Company, et al.* (July 20, 2020) 19-cv-00977 (E.D. Pa.):

> *The Class Notice . . . has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. Such Class Notice (i) constituted the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency and nature of this Action, the definition of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class to exclude themselves from the settlement or to object to any part of the settlement, the rights of the Settlement Class to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Settlement Agreement on all persons who do not exclude themselves from the Settlement Class, (iii) provided due, adequate, and sufficient notice to the Settlement Class; and (iv) fully satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

**Judge Christina A. Snyder,** *Waldrup v. Countrywide Financial Corporation, et al.* (July 16, 2020) 2:13-cv-08833 (C.D. Cal.):

> *The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members*



*and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

**Judge James Donato, *Coffeng, et al. v. Volkswagen Group of America, Inc.*** (June 10, 2020) 17-cv-01825 (N.D. Cal.):

*The Court finds that, as demonstrated by the Declaration and Supplemental Declaration of Cameron Azari, and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with FED. R. CIV. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Michael W. Fitzgerald*, Behfarin v. Pruco Life Insurance Company, et al.*** (June 3, 2020) 17-cv-05290 (C.D. Cal.):

*The Court finds that the requirements of Rule 23 of the Federal Rule of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been satisfied . . . .*

*This Court finds that the Claims Administrator caused notice to be disseminated to the Class in accordance with the plan to disseminate Notice outlined in the Settlement Agreement and the Preliminary Approval Order, and that Notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23.*

**Judge Nancy J. Rosenstengel, *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.*** (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

*The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger, *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.)** (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant, *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the*



*Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon,** *In re: Premera Blue Cross Customer Data Security Breach Litigation* (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney,** *McKinney-Drobnis, et al. v. Massage Envy Franchising* (Mar. 2, 2020) 3:16-cv-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber,** *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr.,** *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final*



*Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks,** *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D.S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2019) MDL No. 1720, 05-md-1720 (E.D.N.Y.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.*

**Judge Brian McDonald,** *Armon, et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate*



*instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford,** ***In re: Wells Fargo Collateral Protection Insurance Litigation*** (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney,** ***Burch v. Whirlpool Corporation*** (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Gene E.K. Pratter,** ***Tashica Fulton-Green, et al. v. Accolade, Inc.*** (Sept. 24, 2019) 2:18-cv-00274 (E.D. Pa.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres,** ***Burrow, et al. v. Forjas Taurus S.A., et al.*** (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*

**Judge Amos L. Mazzant,** ***Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Karon Owen Bowdre,** ***In re: Community Health Systems, Inc. Customer Data Security Breach Litigation*** (Aug. 22, 2019) MDL No. 2595, 2:15-cv-222 (N.D. Ala.):

*The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.*

*The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.*



**Judge Christina A. Snyder,** *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.

**Judge Brian M. Cogan,** *Luib v. Henkel Consumer Goods Inc.* (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

> The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Aug. 16, 2019) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.

**Judge Jon Tigar,** *McKnight, et al. v. Uber Technologies, Inc., et al.* (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

> The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28. In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.

**Judge Gary W.B. Chang,** *Robinson v. First Hawaiian Bank* (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

> This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.

**Judge Karin Crump,** *Hyder, et al. v. Consumers County Mutual Insurance Company* (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

> Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.

**Judge Wendy Bettlestone,** *Underwood v. Kohl's Department Stores, Inc., et al.* (July 24, 2019) 2:15-cv-00730 (E.D. Pa.):

> The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.



**Judge Andrew G. Ceresia, J.S.C.,** *Denier, et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary, et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement. The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.

**Judge John C. Hayes III,** *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.

**Judge Stephen K. Bushong,** *Scharfstein v. BP West Coast Products, LLC* (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.

**Judge Cynthia Bashant,** *Lloyd, et al. v. Navy Federal Credit Union* (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.

**Judge Robert W. Gettleman,** *Cowen v. Lenny & Larry's Inc.* (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order. Adequate notice of the amended settlement and the final approval hearing has also been given. Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.


HILSOFT NOTIFICATIONS

**Judge Edward J. Davila,** *In re: HP Printer Firmware Update Litigation* (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

**Judge Claudia Wilken,** *Naiman v. Total Merchant Services, Inc., et al.* (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.

**Judge Paul Gardephe,** *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.

**Judge Alison J. Nathan,** *Pantelyat, et al. v. Bank of America, N.A., et al.* (Jan. 31, 2019) 16-cv-08964 (S.D.N.Y.):

> The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.

**Judge Kenneth M. Hoyt,** *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> [T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.

**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817, 18-cv-00864 (N.D. Ill.):

> The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation (Ford)* (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States



*Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company, et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

*The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge William L. Campbell, Jr.,** *Ajose, et al. v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

*The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.*

**Judge Joseph C. Spero,** *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

*[T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)…The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.*

**Judge Marcia G. Cooke,** *Dipuglia v. US Coachways, Inc.* (Sept. 28, 2018) 1:17-cv-23006 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Beth Labson Freeman,** *Gergetz v. Telenav, Inc.* (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

*The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons*



*entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.*

**Judge M. James Lorenz,** *Farrell v. Bank of America, N.A.* (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

*The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Dean D. Pregerson,** *Falco, et al. v. Nissan North America, Inc., et al.* (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

*Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Lynn Adelman,** *In re: Windsor Wood Clad Window Product Liability Litigation* (July 16, 2018) MDL No. 2688, 16-md-02688 (E.D. Wis.):

*The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.*

**Judge Stephen K. Bushong,** *Surrett, et al. v. Western Culinary Institute, et al.* (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

*This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman,** *Larson v. John Hancock Life Insurance Company (U.S.A.)* (May 8, 2018) RG16813803 (Sup. Ct. Cal.):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*



**Judge Federico A. Moreno,** ***Masson v. Tallahassee Dodge Chrysler Jeep, LLC*** (May 8, 2018) 17-cv-22967 (S.D. Fla.):

> The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Chancellor Russell T. Perkins,** ***Morton v. GreenBank*** (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

> The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.

**Judge James V. Selna,** ***Callaway v. Mercedes-Benz USA, LLC*** (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

> The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

> The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.

> The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator

**Judge Thomas M. Durkin,** ***Vergara, et al., v. Uber Technologies, Inc.*** (Mar. 1, 2018) 1:15-cv-06972 (N.D. Ill.):

> The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.

**Judge Federico A. Moreno,** ***In re: Takata Airbag Products Liability Litigation*** **(Honda & Nissan)** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

> The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Susan O. Hickey,** ***Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

> Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval



*Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes,** *Glaske v. Independent Bank Corporation* (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald,** *Orlander v. Staples, Inc.* (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood,** *T.A.N. v. PNI Digital Media, Inc.* (Dec. 1, 2017) 2:16-cv-132 (S.D. Ga.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg,** *Gottlieb v. Citgo Petroleum Corporation* (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks,** *Mahoney v. TT of Pine Ridge, Inc.* (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh,** *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* (Nov. 8, 2017) 2:14-cv-04464 (E.D. Pa.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* (BMW, Mazda, Toyota, & Subaru) (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether*



*favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale,** *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.* (May 15, 2017) CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers,** *Bias v. Wells Fargo & Company, et al.* (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al.* (Dec. 14, 2016) 2:12-cv-02247 and *Gary, LLC v. Deffenbaugh Industries, Inc., et al.* 2:13-cv-02634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*



**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (Nov. 21, 2016) 60CV03-4661 (Ark. Cir. Ct.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A.,* **as part of** *In re: Checking Account Overdraft Litigation* (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (Sept. 20, 2016) MDL No. 2540 (D.N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (Apr. 11, 2016) 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) 4:13-md-02420 MDL No. 2420 (N.D. Cal.):

> From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.* (July 30, 2015) 14-10979 (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D.S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and



*preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.*

**Judge Robert W. Gettleman,** *Adkins, et al. v. Nestlé Purina PetCare Company, et al.* (June 23, 2015) 1:12-cv-02871 (N.D. Ill.):

*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.):

*The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.* (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, et al.* (Aug. 29, 2014) 5:11-cv-02390 and 5:12-cv-0400 (N.D. Cal.):

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong, et al. v. Alacer Corp.* (June 27, 2014) CGC-12-519221 (Sup. Ct. Cal.):

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*



**Judge John Gleeson,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2013) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al.* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation* (Apr. 5, 2013) 3:08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re: Zurn Pex Plumbing Products Liability Litigation* (Feb. 27, 2013) MDL No. 1958, 08-md-1958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*

> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele, et al. v. Jack in the Box, Inc.* (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement)* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.) All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*



*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program. (Azari Supp. Decl. ¶ 12.) The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort. Likewise, the Notice and Notice Plan satisfied the requirements of Due Process. The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement)* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris,** *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King,** *Sachar v. Iberiabank Corporation* (Apr. 26, 2012) as part of *In re: Checking Account Overdraft* MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re: Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class*



*Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters, *Vereen v. Lowe's Home Centers*** (Apr. 13, 2012) SU10-cv-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal, *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*** (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re: Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates, *Trombley v. National City Bank*** (Dec. 1, 2011) 1:10-cv-00232 (D.D.C.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr., *Schulte v. Fifth Third Bank*** (July 29, 2011) 1:09-cv-06655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle, *Williams v. Hammerman & Gainer Inc.*** (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court*



*to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill,** ***Mathena v. Webster Bank, N.A.*** (Mar. 24, 2011) 3:10-cv-01448 (D. Conn.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart,** ***Miller v. Basic Research, LLC*** (Sept. 2, 2010) 2:07-cv-00871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** ***Pavlov v. Continental Casualty Co.*** (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

## LEGAL NOTICE CASES

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| ***Yamagata et al. v. Reckitt Benckiser LLC*** | N.D. Cal., No. 3:17-cv-03529 |
| ***Thompson et al. v. Community Bank, N.A.*** **(Overdraft)** | N.D.N.Y., No. 8:19-cv-0919 |
| ***Silveira v. M&T Bank*** | C.D. Cal., No. 2:19-cv-06958 |
| ***In re Toll Roads Litigation; Borsuk et al. v. Foothill/Eastern Transportation Corridor Agency, et al.*** **(OCTA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |
| ***In Re: Toll Roads Litigation*** **(3M/TCA Settlement)** | C.D. Cal., No. 8:16-cv-00262 |



| | |
|---|---|
| *Pearlstone v. Wal-Mart Stores, Inc.* **(Sales Tax)** | C.D. Cal., No. 4:17-cv-02856 |
| *Zanca, et al. v. Epic Games, Inc.* **(Fortnite or Rocket League Video Games)** | Sup Ct. Wake Cnty., N.C., No. 21-CVS-534 |
| *In re: Flint Water Cases* | E.D. Mich., No. 5:16-cv-10444 |
| *Kukorinis, et al. v. Walmart, Inc.* | S.D. Fla., No. 1:19-cv-20592 |
| *Grace v. Apple, Inc.* | N.D. Cal., No. 17-CV-00551 |
| *Alvarez v. Sirius XM Radio Inc.* | C.D. Cal., No. 2:18-cv-8605 |
| *In re: Pre-Filled Propane Tank Antitrust Litigation* | W.D. Mo., No. MDL No. 2567, No. 14-2567 |
| *In re: Disposable Contact Lens Antitrust Litigation* **(ABB Concise Optical Group, LLC)** | M.D. Fla., No. 3:15-md-02626 |
| *Bally v. State Farm Insurance Company* | N.D. Cal., No. 3:18-cv-04954 |
| *Morris v. Provident Credit Union* **(Overdraft)** | Sup. Ct. Cal. Cty. of San Fran., No. CGC-19-581616 |
| *Pennington v. Tetra Tech, Inc. et al.* | N.D. Cal., No. 3:18-cv-05330 |
| *Maldonado et al. v. Apple Inc, et al.* | N.D. Cal., No. 3:16-cv-04067 |
| *UFCW & Employers Benefit Trust v. Sutter Health, et al.* | Sup. Ct. of Cal., Cnty of San Fran., No. CGC 14-538451 Consolidated with CGC-18-565398 |
| *Fitzhenry v. Independent Home Products, LLC* **(TCPA)** | D.S.C., No. 2:19-cv-02993 |
| *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc., et al.* | C.D. Cal., Nos. 8:17-CV-00838 & 18-cv-02223 |
| *Sager, et al. v. Volkswagen Group of America, Inc., et al.* | D.N.J., No. 18-cv-13556 |
| *Bautista v. Valero Marketing and Supply Company* | N.D. Cal., No. 3:15-cv-05557 |
| *Snee Farm Lakes Homeowner's Association Inc. v. The Commissioners of Public Works for the Town of Mount Pleasant d/b/a Mount Pleasant Waterworks* | Ct. of Com. Pleas., S.C., No. 2018-CP-10-2764 |
| *Richards, et al. v. Chime Financial, Inc.* | N.D. Cal., No. 4:19-cv-06864 |
| *In re: Health Insurance Innovations Securities Litigation* | M.D. Fla., No. 8:17-cv-02186 |
| *Fox, et al. v. Iowa Health System d.b.a. UnityPoint Health* **(Data Breach)** | W.D. Wis., No. 18-cv-327 |
| *Smith v. Costa Del Mar, Inc.* | M.D. Fla., No. 3:18-cv-1011 |
| *Al's Discount Plumbing, et al. v. Viega, LLC* **(Building Products)** | M.D. Pa., No. 19-cv-00159 |
| *The Weinstein Company Holdings, LLC* | Bankr. D. Del., No. 18-10601 |
| *Rose v. The Travelers Home and Marine Insurance Company, et al.* | E.D. Pa., No. 19-cv-00977 |
| *Paris et al. v. Progressive American Insurance Company, et al.* | S.D. Fla., No. 19-cv-21761 |
| *Chinitz v. Intero Real Estate Services* | N.D. Cal., No. 5:18-cv-05623 |
| *Eastwood Construction LLC, et al. v. City of Monroe The Estate of Donald Alan Plyler Sr., et al. v. City of Monroe* | Sup. Ct. N.C., Nos. 18-CVS-2692 & 19-CVS-1825 |

| | |
|---|---|
| *Garvin v. San Diego Unified Port District* | Sup. Ct. Cal., No. 37-2020-00015064 |
| *Consumer Financial Protection Bureau v. Siringoringo Law Firm* | C.D. Cal., No. 8:14-cv-01155 |
| *Robinson v. Nationstar Mortgage LLC* | D. Md., No. 8:14-cv-03667 |
| *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (TCPA) | S.D. Ala., No. 1:19-cv-00563 |
| *In re: Libor-Based Financial Instruments Antitrust Litigation* | S.D.N.Y., MDL No. 2262, No. 1:11-md-2262 |
| *Izor v. Abacus Data Systems, Inc.* (TCPA) | N.D. Cal., No. 19-cv-01057 |
| *Cook, et al. v. South Carolina Public Service Authority, et al.* | Ct. of Com. Pleas. 13th Jud. Cir. S.C., No. 2019-CP-23-6675 |
| *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* | 30th Jud. Dist. Tenn., No. CH-13-04871-1 |
| *In re: Roman Catholic Diocese of Harrisburg* | Bank. Ct. M.D. Pa., No. 1:20-bk-00599 |
| *Denier, et al. v. Taconic Biosciences, Inc.* | Sup Ct. N.Y., No. 00255851 |
| *Robinson v. First Hawaiian Bank* (Overdraft) | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| *Burch v. Whirlpool Corporation* | W.D. Mich., No. 1:17-cv-00018 |
| *Armon, et al. v. Washington State University* (Data Breach) | Sup. Ct. Wash., No. 17-2-23244-1 consolidated with No. 17-2-25052-0 |
| *Wilson, et al. v. Volkswagen Group of America, Inc., et al.* | S.D. Fla., No. 17-cv-23033 |
| *Prather v. Wells Fargo Bank, N.A.* (TCPA) | N.D. Ill., No. 1:17-cv-00481 |
| *In re: Wells Fargo Collateral Protection Insurance Litigation* | C.D. Cal., No. 8:17-ml-02797 |
| *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.* | D. Ore., No. 3:16-cv-00580 |
| *Coffeng, et al. v. Volkswagen Group of America, Inc.* | N.D. Cal., No. 17-cv-01825 |
| *In re: Disposable Contact Lens Antitrust Litigation* (CooperVision, Inc.) | M.D. Fla., No. 3:15-md-02626 |
| *Audet, et al. v. Garza, et al.* | D. Conn., No. 3:16-cv-00940 |
| *Hyder, et al. v. Consumers County Mutual Insurance Company* | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:19-cv-00248 |
| *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | D.S.C., MDL No. 2613, No. 6:15-MN-02613 |
| *Liggio v. Apple Federal Credit Union* | E.D. Vir., No. 1:18-cv-01059 |
| *Garcia v. Target Corporation* (TCPA) | D. Minn., No. 16-cv-02574 |
| *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* | N.D. Ill., No. 1:18-cv-1061 |
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | N.D. Cal., No. 3:16-cv-6450 |



| | |
|---|---|
| *In re: Optical Disk Drive Products Antitrust Litigation* | N.D. Cal., MDL No. 2143, No. 3:10-md-2143 |
| *Stone, et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:17-cv-00001 |
| *In re: Kaiser Gypsum Company, Inc., el al.* **(Asbestos)** | Bankr. W.D. N.C., No. 16-31602 |
| *Kuss v. American HomePatient, Inc., et al.* **(Data Breach)** | M.D. Fla., No. 8:18-cv-2348 |
| *Lusnak v. Bank of America, N.A.* | C.D. Cal., No. 14-cv-1855 |
| *In re: Premera Blue Cross Customer Data Security Breach Litigation* | D. Ore., No. 3:15-md-2633 |
| *Elder v. Hilton Worldwide Holdings, Inc.* **(Hotel Stay Promotion)** | N.D. Cal., No. 16-cv-00278 |
| *Grayson, et al. v. General Electric Company* **(Microwaves)** | D. Conn., No. 3:13-cv-01799 |
| *Harris, et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup. Ct Cal., No. BC 579498 |
| *Lashambae v. Capital One Bank, N.A.* **(Overdraft)** | E.D.N.Y., No. 1:17-cv-06406 |
| *Trujillo, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No.3:15-cv-01394 |
| *Cox, et al. v. Ametek, Inc., et al.* **(Toxic Leak)** | S.D. Cal., No. 3:17-cv-00597 |
| *Pirozzi, et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-CV-807 |
| *Lehman v. Transbay Joint Powers Authority, et al.* **(Millennium Tower)** | Sup. Ct. Cal., No. GCG-16-553758 |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., MDL No. 2744 & No. 16-md-02744 |
| *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A., as part of In re: Checking Account Overdraft* | S.D. Fla., No. 1:10-CV-22190, as part of MDL No. 2036 |
| *Behfarin v. Pruco Life Insurance Company, et al.* | C.D. Cal., No. 17-cv-05290 |
| *In re: Renovate America Finance Cases* | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| *Nelson v. Roadrunner Transportation Systems, Inc.* **(Data Breach)** | N.D. Ill., No. 1:18-cv-07400 |
| *Skochin, et al. v. Genworth Life Insurance Company, et al.* | E.D. Vir., No. 3:19-cv-00049 |
| *Walters, et al. v. Target Corp.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-1678 |
| *Jackson, et al. v. Viking Group, Inc., et al.* | D. Md., No. 8:18-cv-02356 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Burrow, et al. v. Forjas Taurus S.A., et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Sup. Ct., No. 2762-16cp |
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Pa., No. 2:09-md-02034 |
| *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |

| *Rabin v. HP Canada Co., et al.* | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| *McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.* | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| *Di Filippo v. The Bank of Nova Scotia, et al.* (Gold Market Instrument) | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | Sup. Ct. Cal., No. BC589243 |
| *Lloyd, et al. v. Navy Federal Credit Union* | S.D. Cal., No. 17-cv-1280 |
| *Luib v. Henkel Consumer Goods Inc.* | E.D.N.Y., No. 1:17-cv-03021 |
| *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (TCPA) | C.D. Cal., No. 5:15-cv-02190 |
| *In re: HP Printer Firmware Update Litigation* | N.D. Cal., No. 5:16-cv-05820 |
| *In re: Dealer Management Systems Antitrust Litigation* | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| *Mosser v. TD Bank, N.A. and Mazzada, et al. v. TD Bank, N.A.,* as part of *In re: Checking Account Overdraft* | E.D. Pa., No. 2:10-cv-00731, S.D. Fla., No. 10-cv-21386 and S.D. Fla., No. 1:10-cv-21870, as part of S.D. Fla., MDL No. 2036 |
| *Naiman v. Total Merchant Services, Inc., et al.* (TCPA) | N.D. Cal., No. 4:17-cv-03806 |
| *In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation* | Sup. Ct. Cal., No. CV2016-013446 |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (Data Breach) | N.D. Cal., No. 3:16-cv-05387 |
| *Stahl v. Bank of the West* | Sup. Ct. Cal., No. BC673397 |
| *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* | S.D.N.Y., No. 15-cv-9924 |
| *Tashica Fulton-Green, et al. v. Accolade, Inc.* | E.D. Pa., No. 2:18-cv-00274 |
| *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation* | N.D. Ala., MDL No. 2595, No. 2:15-CV-222 |
| *Al's Pals Pet Card, LLC, et al. v. Woodforest National Bank, N.A., et al.* | S.D. Tex., No. 4:17-cv-3852 |
| *Cowen v. Lenny & Larry's Inc.* | N.D. Ill., No. 1:17-cv-01530 |
| *Martin v. Trott* (MI - Foreclosure) | E.D. Mich., No. 2:15-cv-12838 |
| *Knapper v. Cox Communications, Inc.* (TCPA) | D. Ariz., No. 2:17-cv-00913 |
| *Dipuglia v. US Coachways, Inc.* (TCPA) | S.D. Fla., No. 1:17-cv-23006 |
| *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (TCPA) | N.D. Cal., No. 3:16-cv-05486 |
| *First Impressions Salon, Inc., et al. v. National Milk Producers Federation, et al.* | S.D. Ill., No. 3:13-cv-00454 |
| *Raffin v. Medicredit, Inc., et al.* | C.D. Cal., No. 15-cv-4912 |



| | |
|---|---|
| *Gergetz v. Telenav, Inc.* **(TCPA)** | N.D. Cal., No. 5:16-cv-04261 |
| *Ajose, et al. v. Interline Brands Inc.* **(Plumbing Fixtures)** | M.D. Tenn., No. 3:14-cv-01707 |
| *Underwood v. Kohl's Department Stores, Inc., et al.* | E.D. Pa., No. 2:15-cv-00730 |
| *Surrett, et al. v. Western Culinary Institute, et al.* | Ore. Cir., County of Multnomah, No. 0803-03530 |
| *Vergara, et al., v. Uber Technologies, Inc.* **(TCPA)** | N.D. Ill., No. 1:15-CV-06972 |
| *Watson v. Bank of America Corporation, et al.;*<br>*Bancroft-Snell et al. v. Visa Canada Corporation, et al.;*<br>*Bakopanos v. Visa Canada Corporation, et al.;*<br>*Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank, et al.;*<br>*Hello Baby Equipment Inc. v. BofA Canada Bank and others*<br>*(Visa and Mastercard Canadian Interchange Fees)* | Sup. Ct. of B.C., No. VLC-S-S-112003;<br>Ontario Sup. Ct., No. CV-11-426591;<br>Sup. Ct. of Quebec, No. 500-06-00549-101;<br>Ct. of QB of Alberta, No. 1203-18531;<br>Ct. of QB of Saskatchewan, No. 133 of 2013 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – BMW, Mazda, Subaru, and Toyota)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEMs – Honda and Nissan)** | S.D. Fla., MDL No. 2599 |
| *In re: Takata Airbag Products Liability Litigation* **(OEM – Ford)** | S.D. Fla., MDL No. 2599 |
| *Poseidon Concepts Corp., et al.* **(Canadian Securities Litigation)** | Ct. of QB of Alberta, No. 1301-04364 |
| *Callaway v. Mercedes-Benz USA, LLC* **(Seat Heaters)** | C.D. Cal., No. 8:14-cv-02011 |
| *Hale v. State Farm Mutual Automobile Insurance Company, et al.* | S.D. Ill., No. 3:12-cv-0660 |
| *Farrell v. Bank of America, N.A.* **(Overdraft)** | S.D. Cal., No. 3:16-cv-00492 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 2688, No. 16-MD-02688 |
| *Wallace, et al, v. Monier Lifetile LLC, et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-0940 |
| *Pantelyat, et al. v. Bank of America, N.A., et al.* **(Overdraft / Uber)** | S.D.N.Y., No. 16-cv-08964 |
| *Falco et al. v. Nissan North America, Inc., et al.* **(Engine – CA & WA)** | C.D. Cal., No. 2:13-cv-00686 |
| *Alaska Electrical Pension Fund, et al. v. Bank of America N.A., et al.* **(ISDAfix Instruments)** | S.D.N.Y., No. 14-cv-7126 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Sup. Ct. Cal., No. RG16813803 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Orlander v. Staples, Inc.* | S.D.N.Y., No. 13-cv-0703 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* **(TCPA)** | S.D. Fla., No. 1:17-cv-22967 |
| *Gordon, et al. v. Amadeus IT Group, S.A., et al.* | S.D.N.Y., No. 1:15-cv-05457 |
| *Alexander M. Rattner v. Tribe App., Inc., and*<br>*Kenneth Horsley v. Tribe App., Inc.* | S.D. Fla., Nos. 1:17-cv-21344 & 1:14-cv-2311 |

| | |
|---|---|
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* | E.D. Pa., No. 2:14-cv-04464 |
| *Mahoney v. TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Ma, et al. v. Harmless Harvest Inc.* (Coconut Water) | E.D.N.Y., No. 2:16-cv-07102 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. Ga., No. 2:16-cv-132 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *McKnight, et al. v. Uber Technologies, Inc., et al.* | N.D. Cal., No. 14-cv-05615 |
| *Gottlieb v. Citgo Petroleum Corporation* (TCPA) | S.D. Fla., No. 9:16-cv-81911 |
| *Farnham v. Caribou Coffee Company, Inc.* (TCPA) | W.D. Wis., No. 16-cv-00295 |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al.* (FirstMerit Overdraft Fees) | Ohio C.P., No. 11CV000090 |
| *Morton v. Greenbank* (Overdraft Fees) | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Ratzlaff, et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al.* (Overdraft Fees) | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Klug v. Watts Regulator Company* (Product Liability) | D. Neb., No. 8:15-cv-00061 |
| *Bias v. Wells Fargo & Company, et al.* (Broker's Price Opinions) | N.D. Cal., No. 4:12-cv-00664 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al.* (Data Breach) | N.D. Ill., No. 1:15-cv-02228 |
| *Hawkins v. First Tennessee Bank, N.A., et al.* (Overdraft Fees) | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch Settlement) | N.D. Cal., MDL No. 2672 |
| *In re: HSBC Bank USA, N.A.* | Sup. Ct. N.Y., No. 650562/11 |
| *Glaske v. Independent Bank Corporation* (Overdraft Fees) | Cir. Ct. Mich., No. 13-009983 |
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| *In re: Lithium Ion Batteries Antitrust Litigation* | N.D. Cal., MDL No. 2420, No. 4:13-MD-02420 |
| *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* | S.D. Fla., No. 14-cv-23120 |
| *Small v. BOKF, N.A.* | D. Colo., No. 13-cv-01125 |
| *Forgione v. Webster Bank N.A.* (Overdraft Fees) | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |



| | |
|---|---|
| *Swift v. BancorpSouth Bank*, as part of *In re: Checking Account Overdraft* | N.D. Fla., No. 1:10-cv-00090, as part of S.D. Fla, MDL No. 2036 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., No. 2:12-cv-02247<br>D. Kan., No. 2:13-cv-02634 |
| *In re: Citrus Canker Litigation* | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D.N.J., MDL No. 2540 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599 |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., No. 13-C-5380 |
| *Russell Minoru Ono v. Head Racquet Sports USA* | C.D. Cal., No. 2:13-cv-04222 |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., No. 13-C-3212 |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., No. 14-cv-5731 |
| *In re: Energy Future Holdings Corp., et al.* (Asbestos Claims Bar Notice) | Bankr. D. Del., No. 14-10979 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| *Steen v. Capital One, N.A.*, as part of *In re: Checking Account Overdraft* | E.D. La., No. 2:10-cv-01505 and 1:10-cv-22058, as part of S.D. Fla., MDL No. 2036 |
| *Childs, et al. v. Synovus Bank, et al.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: MI Windows and Doors Inc. Products Liability Litigation* (Building Products) | D.S.C., MDL No. 2333 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Scharfstein v. BP West Coast Products, LLC* | Ore. Cir., County of Multnomah, No. 1112-17046 |
| *Adkins, et al. v. Nestlé Purina PetCare Company, et al.* | N.D. Ill., No. 1:12-cv-02871 |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |
| *Hawthorne v. Umpqua Bank* (Overdraft Fees) | N.D. Cal., No. 11-cv-06700 |
| *Gulbankian, et al. v. MW Manufacturers, Inc.* | D. Mass., No. 1:10-cv-10392 |
| *Costello v. NBT Bank* (Overdraft Fees) | Sup. Ct. Del Cnty., N.Y., No. 2011-1037 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., MDL No. 2221, No. 11-MD-2221 |



| | |
|---|---|
| *Wong, et al. v. Alacer Corp.* **(Emergen-C)** | Sup. Ct. Cal., No. CGC-12-519221 |
| *Mello et al. v. Susquehanna Bank*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill., No. 09-CV-7666 |
| *Simpson v. Citizens Bank* **(Overdraft Fees)** | E.D. Mich., No. 2:12-cv-10267 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| *Simmons v. Comerica Bank, N.A.*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McGann, et al., v. Schnuck Markets, Inc.* **(Data Breach)** | Mo. Cir. Ct., No. 1322-CC00800 |
| *Rose v. Bank of America Corporation, et al.* **(TCPA)** | N.D. Cal., Nos. 5:11-cv-02390 & 5:12-cv-0400 |
| *Johnson v. Community Bank, N.A., et al.* **(Overdraft Fees)** | M.D. Pa., No. 3:12-cv-01405 |
| *National Trucking Financial Reclamation Services, LLC, et al. v. Pilot Corporation, et al.* | E.D. Ark., No. 4:13-cv-00250 |
| *Price v. BP Products North America* | N.D. Ill., No. 12-cv-06799 |
| *Yarger v. ING Bank* | D. Del., No. 11-154-LPS |
| *Glube, et al. v. Pella Corporation, et al.* **(Building Products)** | Ont. Super. Ct., No. CV-11-4322294-00CP |
| *Fontaine v. Attorney General of Canada* **(Mistassini Hostels Residential Schools)** | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 |
| *Miner v. Philip Morris Companies, Inc., et al.* **(Light Cigarettes)** | Ark. Cir. Ct., No. 60CV03-4661 |
| *Williams v. SIF Consultants of Louisiana, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Evans, et al. v. TIN, Inc., et al.* **(Environmental)** | E.D. La., No. 2:11-cv-02067 |
| *Anderson v. Compass Bank*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank* **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Blahut v. Harris, N.A.*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Zurn Pex Plumbing Products Liability Litigation* | D. Minn., MDL No. 1958, No. 08-md-1958 |
| *Saltzman v. Pella Corporation* **(Building Products)** | N.D. Ill., No. 06-cv-4481 |
| *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* **(Mastercard & Visa)** | E.D.N.Y., MDL No. 1720, No. 05-MD-1720 |
| *RBS v. Citizens Financial Group, Inc.*, **as part of** *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |



| *Gessele, et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-960 |
| --- | --- |
| *Vodanovich v. Boh Brothers Construction* (Hurricane Katrina Levee Breaches) | E.D. La., No. 05-cv-4191 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement) | E.D. La., MDL No. 2179 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic & Property Damages Settlement) | E.D. La., MDL No. 2179 |
| *Marolda v. Symantec Corporation* (Software Upgrades) | N.D. Cal., No. 3:08-cv-05701 |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Fontaine v. Attorney General of Canada* (Stirland Lake and Cristal Lake Residential Schools) | Ont. Super. Ct., No. 00-CV-192059 CP |
| *Nelson v. Rabobank, N.A.* (Overdraft Fees) | Sup. Ct. Cal., No. RIC 1101391 |
| *Case v. Bank of Oklahoma*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McKinley v. Great Western Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Lawson v. BancorpSouth* (Overdraft Fees) | W.D. Ark., No. 1:12cv1016 |
| *LaCour v. Whitney Bank* (Overdraft Fees) | M.D. Fla., No. 8:11cv1896 |
| *Sachar v. Iberiabank Corporation*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Williams v. S.I.F. Consultants* (CorVel Corporation) | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Gwiazdowski v. County of Chester* (Prisoner Strip Search) | E.D. Pa., No. 2:08cv4463 |
| *Williams v. Hammerman & Gainer, Inc.* (SIF Consultants) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Risk Management) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Hammerman) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gunderson v. F.A. Richard & Assocs., Inc.* (First Health) | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Delandro v. County of Allegheny* (Prisoner Strip Search) | W.D. Pa., No. 2:06-cv-00927 |
| *Mathena v. Webster Bank, N.A.*, as part of *In re: Checking Account Overdraft* | D. Conn, No. 3:10-cv-01448, as part of S.D. Fla., MDL No. 2036 |
| *Vereen v. Lowe's Home Centers* (Defective Drywall) | Ga. Super. Ct., No. SU10-CV-2267B |
| *Trombley v. National City Bank*, as part of *In re: Checking Account Overdraft* | D.D.C., No. 1:10-CV-00232, as part of S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| *Schulte v. Fifth Third Bank* **(Overdraft Fees)** | N.D. Ill., No. 1:09-cv-06655 |
| *Satterfield v. Simon & Schuster, Inc.* **(Text Messaging)** | N.D. Cal., No. 06-CV-2893 |
| *In re: Heartland Data Payment System Inc. Customer Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Coyle v. Hornell Brewing Co.* **(Arizona Iced Tea)** | D.N.J., No. 08-CV-2797 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., No. 3:07-CV-03018 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., No. 07-CV-08742 |
| *Gunderson v. F.A. Richard & Assocs., Inc.* **(Cambridge)** | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Miller v. Basic Research, LLC* **(Weight-loss Supplement)** | D. Utah, No. 2:07-cv-00871 |
| *In re: Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No. 1998 |
| *Boone v. City of Philadelphia* **(Prisoner Strip Search)** | E.D. Pa., No. 05-CV-1851 |
| *Little v. Kia Motors America, Inc.* **(Braking Systems)** | N.J. Super. Ct., No. UNN-L-0800-01 |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| *Steele v. Pergo* **(Flooring Products)** | D. Ore., No. 07-CV-01493 |
| *Pavlov v. Continental Casualty Co.* **(Long Term Care Insurance)** | N.D. Ohio, No. 5:07-cv-2580 |
| *Dolen v. ABN AMRO Bank N.V.* **(Callable CD's)** | Ill. Cir. Ct., Nos. 01-L-454 & 01-L-493 |
| *In re: Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *In re: Katrina Canal Breaches Consolidated Litigation* | E.D. La., No. 05-4182 |

Hilsoft-cv-146

